**UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**
**KANSAS CITY DIVISION**

| | |
|---|---|
| CRAIG PARKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SUN LIFE ASSURANCE COMPANY | ) Case No. |
| OF CANADA | ) |
| | ) |
| and | ) |
| | ) |
| GARMIN INTERNATIONAL INC. | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

1. The Plaintiff, Craig Parker, by and through the undersigned counsel, Talia Ravis, files this Complaint against Defendants Sun Life Assurance Company of Canada (hereinafter "Sun Life") and Garmin International Inc. (hereinafter ("The Plan")

2. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001. The Court has jurisdiction over this case pursuant to 28 U.S.C. §1331, in that this action arises under the laws of the United States. Specifically, Craig Parker brings this action to enforce his rights under ERISA as authorized by 29 U.S.C. §1332(a)(1)(B).

3. The Plaintiff, Craig Parker, has at all times material hereto, been a citizen of Olathe, Kansas.

4. Sun Life is a Massachusetts corporation doing business in this judicial district. Therefore, pursuant to 29 U.S.C. §1332(e)(2), venue is proper in this judicial district.

5. Sun Life issued the Plan, group policy number 231948-001, to Garmin International, Inc. for the benefit of its employees, agreeing to pay Plaintiff, as a participant of the Plan, long-term disability ("LTD") benefits in the event he became disabled and unable to work.

6. The Plan is a long-term disability employee benefit plan that provides LTD benefits to participants of the Plan in the event they become disabled on a long-term basis. The LTD benefit pays 60% of the employee's former salary. The benefits are payable as long as the participant remains totally and permanently disabled, through age 65 or the Employee's Normal Retirement Age under the 1983 amendments to the Federal Social Security act, whichever is longer.

7. Plaintiff requests a trial on all issues triable, and designates Kansas City, Kansas as the place of trial for this action.

## FACTUAL ALLEGATIONS

**A. Vocational Information**

8. Plaintiff began employment with Garmin International in January of 2000.

9. Plaintiff worked as a Design Engineering Supervisor. According to his job description, in this position, Plaintiff's role included a number of responsibilities, including, but not limited to:

   - *Leading a team of Electrical Engineers and Technicians to design new products, enhance existing designs, improve production techniques, and develop test procedures.*

- *Directly supervise Engineers and Technicians on the design team with daily observation, assuring appropriate attendance, and providing assistance to team members*
- *Work with Human Resources to address employee relations issues as needed including writing and conducting annual performance evaluations*
- *Interview and hire new associates as directed by engineering management*
- *Mentor and train new associates in the arts of Electrical Engineering and project management*
- *Participate in design reviews, assuring proper attendees and proper coverage of topics, imparting lessons learned and good design practices to all that attend*
- *Create Product Development Plans as directed by engineering management*
- *Ensure the team meets overall design goals in accordance with the product development plan or market requirements*
- *Ensure the design is partitioned appropriately and assigned to qualified engineers*
- *Monitor progress of the design team in meeting product requirements and schedule compliance products*
- *Mentor and evaluate the Design Engineers and Technicians ability to design and troubleshoot circuits and products*
- *Ensure appropriate lab and field testing is performed*
- *Assist Design Engineers and Technicians in performing tradeoff analysis of difference circuit options*
- *Understand production needs and ensure that engineers are working effectively with the production group*

- *Facilitate team work with other groups both inside and outside of Garmin (software, mechanical, sales, QA…)*

*[Garmin International, Inc. Job Description, Design Engineering Team Leader]*

### B. The Definition of "Disability" Under the Plan.

10. The Plan defines "Total Disability or Totally Disabled" as the following:

*"**Total Disability** or **Totally Disabled** means during the Elimination Period and the next 24 months, the Employee, because of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation.  After Total or Partial Disability benefits combined have been paid for 24 months, the Employee will continue to be Totally Disabled if he is unable to perform with reasonable continuity any Gainful Occupation for which he is or becomes reasonably qualified for by education, training or experience.*

*The loss of a professional or occupational license or the inability to obtain or qualify for a license for any reason does not, in itself, constitute Total Disability.*

*To qualify for benefits, the Employee must satisfy the Elimination Period with the required number of days Total Disability, Partial Disability or a combination of days of Total and Partial Disability.*

***Own Occupation** means the usual and customary employment, business, trade, profession or vocation that the Employee performed as it is generally recognized in the national economy immediately prior to the first date Total or Partial Disability began.  Own Occupation is not limited to the job or position the Employee performed for the Employer or performed at any specific location.*

***Material and Substantial Duties** means, but is not limited to, the essential tasks, functions, skills or responsibilities required by employers for the performance of the Employee's Own Occupation.  Material and Substantial Duties does not include any tasks, functions, skills or responsibilities that could be reasonably modified or omitted from the Employee's Own Occupation."*
**[LTD Plan document, pgs. 19-20]**

### C. Medical Information Supporting Plaintiff's Disability.

11. In April of 2014, Plaintiff was forced to stop working due to the disabling effects of disseminated Lyme disease, in combination with Chronic Inflammatory Response Syndrome (CIRS) from mold toxicity caused by mold exposure, chronic fatigue syndrome and fibromyalgia.

4

12. As a result of these conditions, Plaintiff suffers from chronic sinus inflammation, chronic asthma, recurrent flu-like symptoms with flushing, chills, and sweats, headaches, bouts of tachycardia and anxiety, fatigue, muscle and joint pain and difficulty concentrating or making decisions.

13. Plaintiff, together with his physicians, has attempted to treat his several disabling conditions with medications but nothing has provided enough relief to allow him to return to work.

14. Plaintiff's physicians have consistently held that he has remained totally disabled from performing the material duties of his own occupation, or any other, since he was forced to stop working in April of 2014, and that he remains totally and permanently disabled from working in any occupation to date.

**D. Claim Information Under the Plan.**

15. In April of 2014, Plaintiff was no longer able to work due to the severity of his conditions.

16. Plaintiff applied for LTD benefits under the Plan in October of 2014.

17. In a letter dated March 10, 2015, in recognition of his total disability, Sun Life approved Plaintiff's claim and began paying him accordingly, after he satisfied the Plan's 180-day elimination period by remaining totally disabled throughout that period.

18. Only 4 months later, in July of 2015, Sun Life determined that benefits were not payable beyond March 31, 2015 stating that the Plaintiff no longer met the definition of Total Disability.

19. In October of 2015 Plaintiff's former counsel submitted a letter of representation and a letter of appeal, noting additional information would be forthcoming.

20. In February of 2016, with the help of former counsel, Plaintiff submitted the additional documents and letter of appeal of the termination of his LTD benefits.

21. As part of Plaintiff's appeal, Plaintiff submitted to Sun Life evidence supporting the fact that he remains totally disabled from performing the material duties of his own occupation, or any other, and that his condition has not significantly improved in any way, including:

    - Supportive letters from three of the Plaintiff's treating physicians;
    - A statement from Dr. Michael Brown supporting Plaintiff's total disability;
    - Updated medical records;
    - A list of Plaintiff's current medications;
    - Literature about chronic Lyme disease

22. Despite this, Sun Life finally denied Plaintiff's claim for benefits in a letter dated April 11, 2016, rendering his claim ripe for litigation.

23. His physicians have consistently reported to Sun Life that he continues to be totally disabled from working in any occupation.

24. The Social Security Administration recently awarded Plaintiff's Social Security Disability Insurance Benefits. Under the Social Security Act, the term disability means:

    (A) Inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months.

Social Security Act, § 223(d), 42 U.S.C. §423(d).

25. Plaintiff provided significant medical proof of his disability to Sun Life. Despite this, Defendants refused to pay Plaintiff his disability benefits.

6

26. In determining Plaintiff's LTD benefits, SunLife acts as a fiduciary in the administration of Plaintiff's claim.

27. SunLife, acting under a conflict of interest, breached its fiduciary duties set forth in ERISA § 404, 29 U.S.C. § 1104, in failing to act for the exclusive benefit of Plaintiff and in failing to act in accordance with the terms of the Plan.

## CLAIMS FOR RELIEF

28. The foregoing paragraphs are hereby re-alleged, and are incorporated herein by reference.

29. From April of 2014 until the present, Plaintiff has remained unable to perform the material duties of his own occupation, or any other.

30. Plaintiff has provided Defendants with substantial medical evidence verifying his total disability and eligibility for LTD benefits under the Plan.

31. Plaintiff's physicians have reported that he is unable to work in any occupation due to the seriousness of his conditions.

32. Defendants wrongfully terminated Plaintiff's claim for long-term disability benefits in violation of the Plan and ERISA.

33. Defendants have breached the Plan and violated ERISA by failing to pay disability benefits to Plaintiff at a time when the Plan knew, or should have known, that Plaintiff was entitled to those benefits under the terms of the Plan.

34. Plaintiff is informed and thereon alleges that Defendants wrongfully denied his LTD benefits under the Plan by other acts or omissions of which Plaintiff is presently unaware, but which may be discovered in this future litigation and which Plaintiff will immediately make Defendants aware of once said acts or omissions are discovered by Plaintiff.

35. Following the denial of benefits under the Plan, Plaintiff exhausted all administrative remedies required under ERISA, and/or as demonstrated by Defendants' actions herein, an attempt to pursue further administrative remedies would have been futile. Plaintiff has performed all duties and obligations on Plaintiff's part to be performed under the Plan.

36. As a proximate result of the aforementioned wrongful conduct by the Plan, Plaintiff has damages for loss of LTD benefits in a total sum to be shown at the time of trial.

37. The wrongful conduct of Sun Life and the Plan has created uncertainty where none should exist; therefore, Plaintiff is entitled to enforce his rights under the terms of the Plan.

38. Defendant Sun Life abused its discretion by wrongfully terminating Plaintiff's LTD benefits.

39. By terminating Plaintiff's claim despite a plethora of evidence supporting his eligibility for benefits under the Plan, Defendants denied Plaintiff's claim in bad faith.

WHEREFORE, the Plaintiff, Craig Parker, requests that this Honorable Court enter Judgment:

A. Finding that Craig Parker is entitled to long-term disability benefits and order the Defendants to pay all past due benefits and pay for future monthly benefits as they become due.

B. Award the Plaintiff interest on the amount of past due benefits, which remain unpaid.

C. Award the Plaintiff his attorney's fees and costs.

D. Award all other relief as may be just and appropriate.

Respectfully Submitted,

/s/Talia Ravis
Talia Ravis
KS Bar #22212
Law Office of Talia Ravis, P.A.
9229 Ward Parkway, Suite 370

8

        Kansas City, MO 64114
        816-333-8955 (tel)
        1-800-694-3016 (fax)
        travis@erisakc.com
        *Attorney for Plaintiff, Craig Parker*