Print

| | | | | | |
|---|---|---|---|---|---|
| Claim Control #: | 091014-05930-00 | Claim Status: | Terminated | Claim Type: | LTD |
| Policy #: | 231948 | Cert #: | 514781613 | Group Office: | LOWER MIDWEST |
| Last Name: | PARKER | First Name: | CRAIG | Claim Office: | Boston |
| Last Payment Date: | 03/31/2015 | | | | |
| Start Date: | 08/23/2016 | Due Date: | 08/23/2016 | Priority: | 1 |

Route Instructions

Jillian Croteau  [08/23/2016]
Please convert entire file to PDF and email to me (Jillian Croteau). Thanks, Jillian

# D-MAP

**Claim Control #** 091014-05930-00

---

08/29/2016 4:22:25 PM                                              Norma Charles - FE

PRINTED FILE AS REQUESTED

08/23/2016 10:25:00 AM                                             Jillian Croteau

Rec'd copy of complaint

04/25/2016 2:18:53 PM                                              Jillian Croteau

Rec'd duplicate copy of C/A's letter requesting documentation added to claim file prior to denial of July 30, 2015. No action taken b/c information was mailed to C/A on 4/21/2016

04/21/2016 3:35:58 PM                                              Jillian Croteau

Rec'd letter from c/a requesting SLF provide a copy of all documents added to the claim file since the prior denial of July 30, 2015.

Sent file documentation to C/A which includes letters sent by SLF, medical reports, and DMAP. Did not send information that C/A submitted on client's behalf. Sent information and letter to C/A this date

04/11/2016 3:06:13 PM                                              Jillian Croteau

Reaffirm letter sent to c/a this date

04/07/2016 2:08:12 PM                                              Jillian Croteau

*** Appeal Review Complete ***

C/A's letter of appeal dated 10.1.2015 was rec'd by SLF on 10.1.2015. The following information was received for appeal review:

- Letter from Keith Berndtson, MD
- Progress note from Keith Berndtson, MD
- Letter from P. James Seberger, MD, Ph.D.
- Medical records from Healthy Life Family Medicine
- Medical records from Performance Health
- Letter from Charles L. Crist, MD, PC
- Progress notes from unknown provider
- Problem list completed by Craig Parker
- Instructions for New Patients
- Recommendations and Observations from Questionnaires
- Options to help symptoms
- Doctor's notes and records from Charles L. Crist, M.D.
- Medical records from Kansas City Holistic Centre (Dr. Jude LaClaire, LCPC)
- Medical records from The University of Kansas Hospital
- Medical records from College Park IMG
- Office notes from Andrew Green, MD
- Copy of photo ID
- Copy of Insurance Card
- Medical records from LabCorp
- Medical records from KCIM – St. Joe
- Medical records from College Park Family Care Center, P.A.
- Office notes from Bruce L. Pfuetze, MD
- Head & Neck Surgery of Kansas City, P.A. office notes

-      Medical records from The University of Kansas Physicians
-      Office notes from Naturae's Path, LLC
-      Office notes from Michael Brown
-      Medical records from IGenex, Inc.
-      Article titled 'Lyme disease – carrying ticks are now half of all U.S. counties' by Claire Asher – January 18, 2016
-      Medication List
-      Statement from Michael Brown, MD dated February 1, 2016

Independent medical records assessment completed by Kevin Trangle, M.D., M.B.A., Board Certified: American Board of Internal Medicine and Board Certified: American Board of Preventive Medicine, Occupational Medicine. Dr. Trangle's report concludes that there are no functionally impairing physical conditions which would result in restrictions and limitations. Dr. Trangle's report does note that EE has mental health conditions; however, he defers to an appropriate specialist to comment on mental health condition(s).

Neuropsychological file review completed by Robert P. Odgers, PhD, ABPP, Clinical Neuropsychologist. Dr. Odgers opined in his report that EE has a normal cognitive profile and there is no objective data to support functional limitations. The report notes EE complains of "brain fog" and cognitive dysfunction to multiple physicians but there is nothing in the record to support this other than subjective reports. EE is followed by a therapist, Dr. LaClaire, and diagnosed with Dysthymia and Adjustment Disorder with anxiety. Supporting symptoms include speaking in monotone, expressed feelings of hopelessness, poor appetite, low energy, fatigue, low self-esteem, poor concentration, difficulty making decisions, worry, nervousness, and anxious feelings. There is nothing to indicate the level of severity of these symptoms and it is unlikely they are functionally limiting.

Dr. Odgers reports notes that from a neuropsychological perspective, the only objective data available from Dr. Pearson's neuropsychological evaluation done 12/19/2015. Test scores across multiple cognitive domains including attention and concentration, memory, and higher level processing of information, were normal. The only significant finding was relatively mild impairment on verbal fluency measures. While Dr. Pearson acknowledged that this could correlate with decreased perfusion in frontal lobes seen on the SPECT scan, he also suggested that this could easily reflect chance variability. Memory scores were normal and there was no correlation with the decreased perfusion in the temporal lobes as indicated by the SPECT scan. In Dr. Odgers opinion, this is a normal cognitive profile and there is nothing to support the claimant's subjective cognitive complaints.

The decision to deny benefits effective March 31, 2015 b/c EE is not TD own occ is reaffirmed at this time.

04/07/2016 2:03:30 PM                                                Jillian Croteau

Neuropsychological file review completed by Robert P. Odgers, PhD, ABPP, Clinical Neuropsychologist. Dr. Odgers opined in his report that EE has a normal cognitive profile and there is no objective data to support functional limitations. The report notes EE complains of "brain fog" and cognitive dysfunction to multiple physicians but there is nothing in the record to support this other than subjective reports. EE is followed by a therapist, Dr. LaClaire, and diagnosed with Dysthymia and Adjustment Disorder with anxiety. Supporting symptoms include speaking in monotone, expressed feelings of hopelessness, poor appetite, low energy, fatigue, low self-esteem, poor concentration, difficulty making decisions, worry, nervousness, and anxious feelings. There is nothing to indicate the level of severity of these symptoms and it is unlikely they are functionally limiting.

Dr. Odgers reports notes that from a neuropsychological perspective, the only objective data available from Dr. Pearson's neuropsychological evaluation done 12/19/2015. Test scores across multiple cognitive domains including attention and concentration, memory, and higher level processing of information, were normal. The only significant finding was relatively mild impairment on verbal fluency measures. While Dr. Pearson acknowledged that this could correlate with decreased perfusion in frontal lobes seen on the SPECT scan, he also suggested that this could easily reflect chance variability. Memory scores were normal and there was no correlation with the decreased perfusion in the temporal lobes as indicated by the SPECT scan. In Dr. Odgers opinion, this is a normal cognitive profile and there is nothing to support the claimant's subjective cognitive complaints.

03/31/2016 9:15:54 AM                                                Jillian Croteau

Independent medical records assessment completed by Kevin Trangle, M.D., M.B.A., Board Certified: American Board of Internal Medicine and Board Certified: American Board of Preventive Medicine, Occupational Medicine. Dr. Trangle's report concludes that there are no functionally impairing physical conditions which would result in restrictions and limitations. Dr. Trangle's report does note that EE has mental health conditions; however, he defers to an appropriate specialist to comment on mental health condition(s).

Referred file for independent medical records assessment through PsyBar this date to address mental health condition(s).

Full and fair review to follow

03/15/2016 4:15:02 PM                                    Jillian Croteau

45th day is 3/15/2016; independent medical records assessment report is pending. Sent 45 day ext letter to c/a this date.

Full and fair review to follow

03/07/2016 11:38:13 AM                                    Jillian Croteau

Referred file for independent medical records assessment through MLS this date.

Full and fair review to follow

03/03/2016 5:16:01 PM                                    Norma Charles - FE

PRINTED FILE AS REQUESTED

03/01/2016 2:02:17 PM                                    Jillian Croteau

In error, Appeal Consultant did not request PDF print file on 2.19.2016. Requested PDF print file this date.

Rec'd fax from c/a which included a statement from Michael Brown, MD dated 2.1.2016. Sent letter to c/a this date confirming receipt of the statement.

Full and fair review to follow

02/19/2016 2:51:17 PM                                    Jillian Croteau

Rec'd fax from c/a which included the following:
• Letter from Keith Berndtson, MD
• Progress note from Keith Berndtson, MD
• Letter from P. James Seberger, MD, Ph.D.
• Medical records from Healthy Life Family Medicine
• Medical records from Performance Health
• Letter from Charles L. Crist, MD, PC
• Progress notes from unknown provider
• Problem list completed by Craig Parker
• Instructions for New Patients
• Recommendations and Observations from Questionnaires
• Options to help symptoms
• Doctor's notes and records from Charles L. Crist, M.D.
• Medical records from Kansas City Holistic Centre (Dr. Jude LaClaire, LCPC)
• Medical records from The University of Kansas Hospital
• Medical records from College Park IMG
• Office notes from Andrew Green, MD
• Copy of photo ID
• Copy of Insurance Card
• Medical records from LabCorp
• Medical records from KCIM – St. Joe
• Medical records from College Park Family Care Center, P.A.
• Office notes from Bruce L. Pfuetze, MD
• Head & Neck Surgery of Kansas City, P.A. office notes
• Medical records from The University of Kansas Physicians
• Office notes from Naturae's Path, LLC

- Office notes from Michael Brown
- Medical records from IGenex, Inc.
- Article titled 'Lyme disease – carrying ticks are now half of all U.S. counties' by Claire Asher – January 18, 2016
- Medication List

Based on the letter from c/a it does not appear any additional information is forthcoming. C/A's letter and documents were rec'd by SLF on 2.11.2016; therefore, tolling will end this date.

Requested PDF print file this date.

Full and fair review to follow

01/28/2016 2:40:48 PM                                                    Jillian Croteau

180 days has past, as of 1.26.2016, since claim was denied. Sent letter to c/a this date requesting additional documentation for appeal review be submitted in approx. 30 days or by 2.29.2016; noted SLF will proceed with appeal review as of 3.1.2016.

Tolling continues

Full and fair review to follow

11/23/2015 5:18:39 PM                                                    Michelle Doucette

Of note she indicated she has also filed for Mr. Parkers SSD and feels this will be awarded

11/23/2015 5:17:38 PM                                                    Michelle Doucette

Attorney would like clarification of my denial letter.  I spoke with C/A Theresa we discussed my denial letter of July.  She questioned that our medical review found he had sustained sedentary function and his occupation is light, I referred her back to my letter and the medical review questions, we acknowledge his sustained sedentary function we were unable to obtain any objective evidence which supported that EE would no longer be precluded from performing the Material and Substantial Duties of his Own Occupation as of 03/31/15; the current last payment date. Based on the medical evidence provided by his doctor he was found to be "Fit for Duty"

She advised that Mr. Parker has been seen by several doctors since this time and she will be the process of obtaining these records, I advised if she has additional medical that should be submitted to our Appeals unit, BA is Jillian Croteau and I gave her Jillians direct phone contact

11/23/2015 4:16:16 PM                                                    Jillian Croteau

Called and spoke with C/A Theresa. She found the claim file; she was out of the office and it was buried under mail. No need to resend.

C/A did state that EE continues to treat and he has an appointment in Chicago in early January. She would like this information to be considered in the appeal review. C/A requested we allow her to send in additional info until Jan 2016. Agreed to allow this and call ended pleasantly.

Tolling continues

11/23/2015 12:10:52 PM                                                   Michelle Doucette

Rec'd call from Theresa at law office for Craig Parker, appears she did not receive copy of file.  Advised my computer was down at the moment and would have to call back.

Referred to BA-Jillian in appeals to call back (913-649-1747)

10/12/2015 12:44:43 PM                                                   Jillian Croteau

Rec'd printed claim file.

Sent appeal ack letter to c/a this date with a copy of the file.

DMAP entry dated 10/5/2015 notes tolling will begin on that date. Tolling will begin today 10/12/2015 b/c this is the date I am able to mail copy of file to c/a.

Full and fair review to follow

10/08/2015 3:06:17 PM                                                        Daniel Ajjouri

Printed file as requested.

10/05/2015 1:24:51 PM                                                        Jillian Croteau

New on appeal on assignment

Letter of representation along with letter of appeal rec'd from c/a. C/A has requested a copy of the claim file and noted additional information may be forthcoming.

Requested file be printed this date.

Once file is printed and rec'd will send file along with appeal ack letter.

Tolling begins today, 10/05/2015

Full and fair review to follow

10/01/2015 4:27:16 PM                                                        Michelle Doucette

Received letter of representation as well as letter requesting appeal from Law office of Teresa Meagher
Sent to Appeal Department

07/30/2015 11:15:54 AM                                                       Michelle Doucette

Closed CHESS, denial
Mailed letter of Denial to EE
Mailed ER's redacted letter

07/30/2015 11:14:35 AM                                                       Michelle Doucette

I placed a call to Mr. Parker, (913-829-9311) I explained that my evaluation was complete and that I was not able to support ongoing benefits beyond 3/31/15. I explained that we could not identify the r/l's that continued to prevent him from doing the material and substantial duties of his own occupation. He did not understand how we could come to this conclusion when he has flu like symptoms everyday and is in bed most days. He feels there is a major disconnect to come to this conclusion. I advised I have written a detailed letter and I will send a copy of this to him via his email so he can review. I went over the appeal process, which he felt he would need an attorney to do this, I explained that an attorney is not necessary unless he chooses to have one, the process to appeal is quite simple with a brief letter dated and signed expressing he doesn't agree with my determination of 7/30/15 and wants to appeal. It would then be set up as a new review with our appeal department and they would review all that I had as well as any additional documentation he would like to submit. However, I will send the letter to his email today and he can review and call me back to discuss. He thanked me for that and the call ended pleasantly

07/30/2015 7:58:33 AM                                                        David Cairns

Received Manager referral for Denial of Ongoing LTD Benefits due to EE no longer being disabled from Own Occupation.

I reviewed claim in regards to recommending Denial.

I am in agreement with recommendation.  Please see Manager response dated 07/30/2015 for additional next step recommendations.

07/29/2015 3:40:44 PM                                          Michelle Doucette

PLAN: The medical review to evaluate TD beyond 3/31/15 is complete.  It is opinion that at the present time the claimant's condition has stabilized.  He has undergone appropriate sinus surgery.  He has been seen by an infectious disease specialist and a pulmonologist, and it is apparent that his condition is such that he would be capable of carrying out full-time sedentary activities. It is also noted the claimant's mental status had improved significantly to the point where he was able to relate in significant detail the various aspects of his past medical history, clearly demonstrating that his mental status was not impaired, and it has been Clarified by Mr. Parker that there was no Neuro Psych. Testing done and the notes from Dr. LaClair are all that is available which have been review and commented on by our Behavioral Health consultant.  There were no restrictions or limitations that could be identified that would prevent Mr. Parker from doing the material and substantial duties of his own occupation and therefore, it is opinion that the claimant at the current time is "fit for duty. "  Will close CHESS denial of benefits beyond 3/31/15, EE is not TD from Own Occ, send letter of explanation of denial

07/22/2015 11:05:04 AM                                        Michelle Doucette

sent to Medical Consultant for review

07/22/2015 9:40:12 AM                                         Michelle Doucette

sent status letter

07/20/2015 7:45:37 AM                                         Michelle Doucette

rec'd email from Mr. Parker:
Hi Michelle,
Daily flu symptoms continue, and my sinus infection/inflammation is returning yet again.  So I will unfortunately be seeing Dr. Ellis again on July 28.  His office assures me that you should now have all records that were requested. Please let me know if you need anything else in order to approve benefit payment.  I am working with your team on paperwork for social security disability.
Thanks,
Craig Parker

07/09/2015 4:49:34 PM                                         Kerri Rodgers

**Desk Coverage**
Rec'd duplicate notes from EMSI for Dr. Ellis.  5/27/15-6/23/15.  Nothing beyond 6/23/15.  6/23/15 visit included debridement of both nostrils in the office w/out complication.

07/06/2015 8:27:47 AM                                         Michelle Doucette

7/6/15 still waiting records from Dr. Ellis's office

07/02/2015 8:45:18 AM                                         Michelle Doucette

checked EMSI: Dr. Ellis' records work in progress, 7/1/2015 1:34:55 PM  Other  Made a credit card payment with Copy Service, records will be uploaded to portal tomorrow
 7/1/2015 1:33:50 PM  Fee Activity  Credit card payment requested for assigned copy service.
 7/1/2015 12:33:51 PM  Other  Left a message for Sherry to call me back. Calling Copies FYI to confirm as well

06/30/2015 2:26:49 PM                                         Jesica Partin

Reviewed file and called EE to discuss application for SSDI. Introduced myself and my role in the Company Explained the benefits of applying for SSDI at this juncture as well as benefits of assistance by a vendor. Completed warm transfer to SSDI Vendor

06/30/2015 1:38:38 PM                                    Michelle Doucette

email from EE: 06/26/2015  06:51:40 pm

Hi Michelle,
I understand from Sherry that all the latest records from Dr. Ellis were provided to EMSI this week.  I have some sort
of recurring sinus infection and nasal polyps which is already returning following my latest surgery on June 4.  The
pathogen causing it cannot be identified using aerobic culture – which would be consistent with the Lyme diagnosis.
Dr. Brown has run a cytokine test to try and identify the trigger of my inflammation – no results yet.
Thanks,
Craig Parker

06/30/2015 1:32:41 PM                                    Michelle Doucette

Checked EMSI, Dr. Ellis records are still outstanding no update since 6/23/15 sent email to EMSI to please obtain
status of records

06/24/2015 8:08:35 AM                                    Michelle Doucette

EE provided Operative report from Dr. Ellis 6/4/15

06/24/2015 8:05:03 AM                                    Michelle Doucette

Checked EMSI: Dr. Ellis records still work in progress: 6/23/2015 1:50:20 PM  Other  Faxing request back to Dr's
office, I will follow up to confirm receipt
6/23/2015 1:49:45 PM  Other  Request has been faxed to facility
 6/23/2015 12:51:06 PM  To Call Center  Request received from Telepro Plus
 6/23/2015 12:51:05 PM  Other  Special auth attached 1:51

email from EE on 6/19/15:  I signed that release while at Dr. Ellis' office on June 8.  Thanks for your help – I will follow
up with Dr. Ellis' office directly, and will also return the EMSI authorization by mail today.
Thanks,
Craig

06/23/2015 1:48:00 PM                                    Michael Megna

AG SSDI Review: File accepted for further screening

06/19/2015 7:51:50 AM                                    Michelle Doucette

Sent response back to EE advising Dr. Ellis is stating they do not have auth and records are needed, asked EE to
please contact this office to expedite records to our vender

06/19/2015 7:50:44 AM                                    Michelle Doucette

Status of Dr. Ellis' records from EMSI:
6/15/2015 2:08:54 PM  Other  Received a voicemail from Sherry stating they searched the office thoroughly and
does not have a release signed by the patient. They are still waiting from the release from EMSI
6/15/2015 2:08:16 PM  Other  Facility has been contacted.
6/15/2015 2:08:14 PM  Other  Special authorization required. Attempting to contact the agent/applicant/agency.

06/19/2015 7:49:55 AM                                    Michelle Doucette

rec'd email from EE:
Michelle,

I have continued to lose ground since the sinus surgery.  I am having a really bad inflammatory response that affects
sinuses, lungs, and GI tract – has me confined to bed most days.  Dr. Brown is running some new tests to learn
more.  I signed a release for you to get the records from Dr. Ellis, and Dr. Brown says he provided updates.  Will it be

possible to resume our disability payments by end of this month?  They are badly needed to carry us through.

Thanks,

Craig Parker

06/09/2015 10:13:24 AM                                              Michelle Doucette

PLAN: once Dr. Ellis's records are in refer back to Dr. Fuhrmann to identify r/l's

06/09/2015 10:11:22 AM                                              Michelle Doucette

Dr. Pfuetz records are in, however were not copied to file placed in claim today

06/09/2015 10:03:42 AM                                              Michelle Doucette

Checked EMSI
Dr. Ellis-Head & Neck Surgery of Kansas City PA; 6/5/2015 1:36:03 PM  Other  Mailed auth to insured.   6/3/2015
1:49:35 PM  Other  Received a denial from copies fyi stating auth is signed after the DOS requested, please send
auth on file

06/08/2015 8:46:47 AM                                               Michelle Doucette

rec'd email from EE 6/5/15:
Michelle,
Just wanted to provide an update.  Dr. Ellis did another sinus surgery yesterday and the infection was worse than last
August.  This is a big factor in why I have lost so much ground since March.  Expect recovery to be slow, but we wil
be working to better understand root cause for recurrent and severe chronic sinus infections going forward.  Wanted
to note that the diagnosis of Lyme disease from Diana Smith is still valid even though I am not continuing to see her
for treatments since I cannot tolerate antibiotics.
Thanks,
Craig Parker

06/01/2015 12:37:19 PM                                              Michelle Doucette

rec'd in notes Dr. Brown, office visits 4/7/15,4/21/15, 05/07/15,05/24/15

05/26/2015 3:35:24 PM                                               Cordelia Vickery

Requested Med Records from EMSI dated 04/01/2015 through present from Dr. Brown, Dr. Ellis and Dr. Pfuetze.

05/26/2015 3:08:16 PM                                               Michelle Doucette

Action Plan: Upon receipt of updated medical records, refer back to Dr. Fuhrmann to identify r/l's

05/26/2015 3:05:18 PM                                               Michelle Doucette

Dr. Brown
5231 W 116 Place, Suite 200
Leawood KS 66211
913-333-8798

Dr. Ellis
Head & Neck Surgery of Kansas City PA
5370 College Blvd, Suite 100
Overland Park KS  66211
913-599-4800

Dr. Bruce Pfuetze

11725 W 112th St
Overland Park KS   66210
913-469-5452

05/26/2015 2:50:38 PM                                          Michelle Doucette

Call placed to EE, Alt resolution offered,
EE indicated he has been bed ridden last two weeks and may need another surgery on sinus's, recently saw Dr. Ellis ENT specialist
See's Dr. Brown every two weeks,  and sees Dr. Bruce Pfuetiz the allergist-he has seen this doctor over the last 20 years for allergy injections, and the treatment plan with the allergist is to take Zoclair which is blocker (IGE response)

Will request medical records from April 2015 to present
Dr. Brown
Dr. Ellis
Dr. Pfuetiz

05/26/2015 2:44:46 PM                                          Kelly Parshley

BA and I placed call to EE, 913-829-9311.  We asked for an update on his current condition.  Mr. Parker said that he's been in bed for two weeks now due to an exacerbation of his symptoms.  He said that he's seeing his ENT, Dr. Ellis, tomorrow and thinks that he may need sinus surgery.  He has been seeing his allergist, Dr. Bruce Phuetze, fairly regularly and his last appointment was two weeks ago.  Dr. Phuetze wants to try zolare for his allergy symptoms to see if it would help.  He said that he's allergic to pretty much everything at this point, including food, and this does not help with his ongoing symptoms.  He still sees Dr. Brown every couple of weeks.

BA discussed results of behavioral health review and noted that it does not appear that M&N conditions would prevent him from performing his prior occupation.  BA asked if he ever underwent the neurocognitive testing mentioned last year.  He said that he still has not as he's been really sick.

I noted that it appeared that we would be managing this claim going forward based on his physical symptoms and said that BA will need to obtain updated notes from treating providers and send for review to determine if TD remains supported.  I asked if he has applied for SSDI.  He said that he has not, but has been thinking that he should.  Discussed TAG and their services if his claim remains open.  He is aware that SSDI is a direct offset to his LTD benefit, if awarded.  I noted that, in lieu of continuing with next steps, we could offer a voluntary lump sum settlement of the claim.  LSS offer is for 9 months of benefits, $54,000.00, and is just an option.  Discussed the fact that if LTD claim is closed for settlement and SSDI is awarded after the fact, that money would be his to keep and not owed back to Sun Life.  Mr. Parker said that he would like us to continue with our review, but would keep LSS option in mind if his claim remains open.  He asked for an update on his LWOP coverage, and I told him I would ask that analyst to contact him.

We thanked him for his time and the call ended pleasantly

05/26/2015 2:34:44 PM                                          Kelly Parshley

Reviewed claim for potential voluntary alternative resolution - LSS.  BA and I will contact EE to discuss disputed LSS in lieu of next steps.

05/21/2015 4:15:22 PM                                          Michelle Doucette

In review of the APS signed by Dr. Brown 4/21/15, although he indicates medium function he states his physical r/l's vary daily, the claim was reviewed for the behavioral component as Dr. Leclair completed this portion of the APS, however the documentation did not provide support for an incapacitating psychiatric disorder impacting the claimants ability to function including the ability to work.  The Claimants own occupation is considered "Light" in the national economy.  Dr. Fuhrmann reviewed the claim in March at that time he opinion: "I do not believe at the present time the claimant is totally unable to carry out his full-time activities, and this is confirmed by the Attending Physician Statement completed by Dr. Brown in which he said the claimant's symptoms are intermittent."  "the claimant should be given the opportunity to have periods of rest during the day and that a modified schedule allowing for example working from home would be reasonable"  Where the APS completed by Dr. Brown on 4/21/15 gives the claiman higher than light function but does state the r/l's vary; prior to sending this back to Dr. Fuhrman for evaluation of continued support will discuss for Alternative Resolution option.  Claim does have 24 month limitation potential max

duration is July 2016

05/21/2015 3:32:31 PM                                              Michelle Doucette

Behavioral review completed: Documentation in the file does not provide support for an incapacitating psychiatric disorder impacting the claimant's ability to function including ability to work. Records do not contain sufficient clinical information such as comprehensive mental status exam results or information on limitations in day-to-day functioning to support an incapacitating psychiatric condition. In fact, mental status exam findings that were provided from his primary care provider are mostly unremarkable.

05/21/2015 3:11:48 PM                                              Paul MacArthur

**LWOP** Claim Synopsis: Craig Parker is a 52 year old engineering team leader who ceased working due to Chronic Fatigue, Fibromyalgia, IBS and adrenal insufficiency on April 5, 2014. Eligibility: Mr. Parker is an eligible employee under the plan working 40 hours per week. He was hired on January 27, 1997 and was earning $5,070.60 per bi-weekly pay period. See benefit calc for life insurance calculation.  Retirement Status: N/A.  Medical: Medical records and consultants review supports only a limited closed period approval from 5/13/2014 through 7/15/2015. Vocational: N/A  Rationale for Decision: Supported disability only from 5/13/2014 through 7/15/2014 due to double vision. Physical Meds and Pysch not supported otherwise.  Next Steps: Send closed period approval.  Long Term Direction of Claim: Closed.  All Systems Updated/Verified: PM

05/14/2015 2:57:20 PM                                              Michael Megna

AG SSDI Review: Defer at this time but will monitor progress

05/14/2015 10:43:13 AM                                             Lisa Jacobus

Please see psych review dated 5/14/15 in the referral

05/14/2015 8:59:06 AM                                              Laurie Stribley

***LWOP***Pending claim review complete.

05/08/2015 10:11:41 AM                                             Michelle Doucette

Send letter advising receipt of Behaviorial APS and notes on 4/28/15 and the claim remains suspended until medical review for Behaviorial componet is completed.

05/08/2015 10:06:37 AM                                             Michelle Doucette

APS signed by Dr. Brown on 4/21/15 although indicated medium function, he also advised condition unchanged and that his phsyical r/l's vary daily which is condusive with diagnosis of Fibromyalgia and Chronic fatigue,
Plan: claim has been sent for Behaviorial component review, as R/l's from a physical componet vary daily and Dr. Brown orignally states EE's symptoms are intermittent and Dr. Brown originally felt he was likely to imporove over a 12-26 week period, it is necessary to wait on Behaviorial review to be completed to determine impact

05/04/2015 9:59:40 AM                                              Michelle Doucette

Rec'd in APS and notes from Dr. Laclair

Action plan: sent for Behaviorial review

04/30/2015 11:25:47 AM                                             Michelle Doucette

Craig or Amy Parker
          to:
          Michelle.Annette.Doucette
          04/28/2015 12:55 PM

Hi Michelle,
I believe Dr. Brown FAX'd his form last week, and Dr. LaClaire will be doing so today. They will be FAX'd to the number on the form at Wellesley Hills to your attention.
Thanks,
Craig Parker

04/25/2015 9:00:19 AM                                                      Michelle Doucette

Disregard below note for voc review,

Plan await Behavorial APS and send with the two pages of notes rec'd from Dr. Leclair for a Behavorial review

04/25/2015 8:44:30 AM                                                      Michelle Doucette

Sent to Voc for review

04/25/2015 8:42:16 AM                                                      Michelle Doucette

Rec'd in Physical portion of APS signed 4/21/15 Dr. Brown. Functional Capacity considered medium based on responses on APS

Still awaiting Behavorial Portion of APS

04/14/2015 12:30:27 PM                                                      Laurie Stribley

***LWOP***Pending claim review complete.

04/14/2015 12:05:04 PM                                                      Paul MacArthur

**LWOP** Received VM and email from Mr. Craig Parker regarding my letter. Called Mr. Parker back (1-913-829-9311) and we discussed his life waiver situation. He indicated that he is trying to port or convert his coverage and a check was cashed for $500 in February but he has not received anything from Sun Life. I told him that I will contact the conversion and portability unit and have them call him back to discuss. Advised him if he does not hear back from them to give me a call at my direct line (1-781-446-1108). Explained the LWOP and he is interested. He received a letter from Michelle for the same information I was requesting. Advised him we only need the information to be provided once. Gave him additional time to submit the information. Discussed optional and I will re-send request for the optional forms to Stephanie Press at Garmin. Apparently the previous BA left the company. Mr. Parker thanked me for the help and the call ended amicably.

04/08/2015 9:50:04 AM                                                      Michelle Doucette

sent letter requesting APS for both physical and Behavorial update

04/06/2015 3:21:13 PM                                                      Paul MacArthur

**LWOP** - This claim was transferred from Michelle Christian to Paul MacArthur on March 26, 2015. Performed a detail review of the life waiver file and noted that while we have a consulting physician review, it appears we received recent notice of Mr. Parker's diagnosis of dysthymic disorder and adjustment disorder with anxiety. For that reason, we need to obtain the office progress notes from his psychologist to include psychotherapy notes and counseling notes and a behavioral physician statement as well as the optional life insurance enrollment forms. Gave 30 days for this information to be provided o/w will make a decision on the Life Waiver on or after May 6, 2015 based on the information in our files at that time. Advised Mr. Parker in my letter that this information only needs to be supplied to Sun Life once and it will be shared between Life Waiver --==> LTD.

04/03/2015 4:24:54 PM                                                      Michelle Doucette

Rec'd in Dr. Leclairs notes- 2 page letter dated 3/31/15- this confirms dates of treatment as well as giving an outline of his psychiatric behavorial health. Overall indicates EE is improving.

03/30/2015 11:18:59 AM                                    Michelle Doucette

Rec'd in Dr. Browns treatment notes through 3/24/15 most recent ov.
Dr. Browns notes indicate that ee appears to be improving but still experiencing fatigue, neurologist confirmed not
dementia, seeing alergist and getting treatment, as of 3/24/15 was suppose to have IGE panel done, next follow up in
April

Plan: based on these notes, reasonable to release March LTD benefit. Do not have Dr. Leclairs notes to date-
necessary to evaluate for Behavorial componet.  Continue to follow for notes, Will request updated APS in April -to
determine if EE needs to move forward with MR or if EE capable of of sustained Partial vs full time?

03/25/2015 8:11:37 AM                                     Michelle Doucette

email from EE
Hi Michelle,
Dr. Brown has received the new request for records, and asked me if he needed to submit everything again.  I told
him to just send his notes and labs since last October.  Does he need to fill out your form again when he submits
these?
Thanks,
Craig Parker

RESPONSE from me:
If your referring to the Attending Physicians Statement I have not requested an update at this time, however if he
wishes to complete a form in addition to the records that is fine.

Of note as of 3/18/15 Dr. LeClaire's office has not responded to our venders request for submission of copies of
records.  If you could request this office to oblige that would appreciated

03/25/2015 7:58:21 AM                                     Michelle Doucette

Checked EMSI records a work in progress:
Dr. LeClair- 3/18/2015 2:27:06 PM  Other  Faxing URGENT letter requesting records be sent today. Provided
information for records to be submitted by fax, email, or uploaded to our website.
Dr. Brown - 3/19/2015 10:31:35 AM  Other  Per Alison verified name dob dos DR fax request will mail records no
copy. credit card accepted.

03/19/2015 12:39:34 PM                                    Michael Megna

AG SSDI Review: Defer at this time but will monitor progress

03/18/2015 7:47:06 AM                                     Michelle Doucette

Checked EMSI, Dr. Browns records work in progress. 3/17/2015 11:55:19 AM  Other  Emailed Michelle at SLF
 3/5/2015 11:26:48 AM  Other  No answer request mailed.  Responded to EMSI email copied and paste Dr. Brown
letterhead contact information

Dr. Jude LeClair: 3/16/2015 11:06:47 AM  Other  Unable to speak to anyone regarding this request, left a detailed
message via voicemail. 3/16/2015 11:06:08 AM  Other  Faxing Status letter requesting records be sent today.
Provided information for records to be submitted by fax, email, or uploaded to our website.

03/17/2015 11:16:12 AM                                    Laurie Stribley

***LWOP***Pending claim review complete

03/13/2015 8:14:59 AM                                     David Cairns

Pending claim review completed today (03/13/2015).  Claim approved on 03/02/2015

03/10/2015 6:36:19 PM                                     Michelle Christian

**LWOP** May need TSA, pending.

03/10/2015 10:40:35 AM                                           Pamela Caswell

Reviewed for approval authority limit and for verification of Chess and Ultera input

03/09/2015 8:49:55 AM                                            Michelle Doucette

rec'd 8 pages of notes Olathe Clinic (Diana Smith, RN, LPC, LPRN -this office tested for tickborne illness

03/03/2015 12:13:03 PM                                           Michelle Doucette

Dr. Brown Order Confirmation - 27911428
Olathe LAD Clinic (Diana Smith) -Order Confirmation - 27911553
Dr. Jude LeClair Order Confirmation - 27911654

03/02/2015 4:14:45 PM                                            Michelle Doucette

A call was placed to Mr. Parker, I advised that our second level review with the MD was complete and based on this review and the medical data available we were able to support his claim going back to April. I explained in detail the DOD we used and why, as well as the additional days added to the end of the EP for the time he worked full days during the EP. He understood and was in agreement with this. I explained the claim was supported for the dx of CFS/Fibromyalgia and this is what I will be approving for. He understands this has a 24 month max duration. I then explained that I will be needing records from Dr. LaClaire regarding the psychiatric disorder he stated he now is receiving treatment for. Upon receipt of these records I will be doing a seperate review with Behavorial Health to determine if any r/l's are supported this is a seperate evaluation and is ongoing, however please note any mental illness diagnosis that is supported for TD has a 24 month limitation under the contract. He understands that the claim is approved through 2/28/15, and I will need recent notes from Dr. Brown as well as the notes from Diana Smith as Mr. Parker has stated she is the one who has diagnosis Lyme Disease and our current records do not support this diagnosis, he did state that she did many tests and Dr. Brown also treats for Lyme disease so he may not seek ongoing treatment for this with Dr. Smith. I explained I need the medical notes that supports this diagnosis - he states Diana Smith would have these, I then explained it was his choice who he wished to get treatment for the diagnosis. I went on to explain that he is at the point in time where Dr. Brown felt he should be at a point where he could sustain a part time or possible full time level of light function so I will need to establish ongoing elegibility, the claim has MR on it and I see that he resigned in December, would his employer consider a re-hire, they said they would if he were able to do Full time work however they would not for par-time. I explained that I need the ongoing records and will continue an evaluation for March benefits. I just want him to be aware of the opption under the policy with VOC rehab as well as different ongoing medical review for Psych condition, and ongoing support for diagnosis for CFS/ Fibro. He was very appreciative for the work done on his claim amd was very thankful for the benefits that will be released for tomorrow. I will be sending out a letter of approval under seperate cover and will work with our Vender EMSI to obtain the records. The call ended pleasantly

03/02/2015 3:28:53 PM                                            Michelle Doucette

Action Plan: Approve claim; given the claimant is now indicating psychiatric disorder I will obtain the treatment notes from Dr. Jude LaClaire and will have a Medical Behavorial Health Review done, will note 24 month mental health limitation as well as 24 month max for dx of Fibro/CFS. Release benefits through 2/28/15 with potential for mental illness as ongoing will hold off with the face to face interview; Voc MR; as well as Alternative Resolution consideration until medical evaluation for Behavorial r/l's is complete

03/02/2015 2:11:38 PM                                            David Cairns

Received Manager referral for IL/Liability determination.

I reviewed claim in regards to recommending approval.

I am in agreement with recommendation. Please see Manager response dated 03/02/2015 for further assessment and additional next step recommendations.

03/02/2015 10:46:03 AM                                           Michelle Doucette

Obtain treatment notes through EMSI
Dr. Brown's notes February 2015
Dr. Diana Smith's notes Jan/Feb 2015
Dr. Jude LaClaire Jan/Feb 2015

03/02/2015 10:23:50 AM                                              Michelle Doucette

Denial of RETRO, ee did not meet rider provisions

03/02/2015 10:20:19 AM                                              Michelle Doucette

"Verified CHESS and ULTERA 03/02/2015"

03/02/2015 10:19:45 AM                                              Michelle Doucette

* Updated CHESS DOD, EE's last day worked was a Friday 4/4/14, he is not scheduled to work weekends and did
not have immediate medical treatment therefore used Monday 4/7/14 as onset of disability date. EE did work durting
the elimination period.  ER confirmed the weeks of 4/21 and 4/28 EE worked full time hours, therefore he worked
less than 15 days, EP will be treated as consecutive, but added 10 days to end of EP as EE worked full time during
these days making first potential begin date for LTD 07/15/14.
* The employee received salary through November 2014 however this income is considered  PTO and is not an
offset to the LTD Benefit.  Special instructions also indicate: " The group does not have salary continuation or sick
time. Any monies paid to an EE after they go out on leave are from a PTO bank and as such, are not offsets to LTD.
There is no need to verify other income (salary continuation, sick pay) from the ER given this finding."
* This employee opted to contribute to the LTD premium making the benefit Tax free, CHESS class reflects this.
* File was reviewed by RN however additional information from the employee warrented a second level review.  MD
review completed, ee has many complaints but the limiting factor preventing the employee from carring out full time
work is Fibromyalgia and Chronic Fatigues Syndrome.  Approving claim under this diagnosis, however the APS
completed by Dr. Brown and the MD review indicate the employees symptoms are intermittent and Dr. Brown the
employees naturalopath physician felt the employee was likely to improve over a 12-26 week period, which the
employee is reaching this period of time.
*ONGOING PLAN: The current medical records supports current total disability but will need to obtain the recent
records from Dr. Smith regarding confirmation of tick born origin "Chronic Lyme Disease" as implied and current
notes do not support this diagnosis as well as all treatment notes from the Psychiatrist (Dr. Jude LeClair) the
employee has indicated he began seeing end of January 2015 into February 2015 for anxiety and cognitive issues
and has currently seen about five or six times already
*Send letter of approval quoting 24 month max for fibro and chronic fatigue as well as mental illness
*Release benefits which employee TME would be the max benefit of $6,000.00 per month vs the 60%
*Per NA data base this group welcomes the oppertunity to discuss part-time, however the employee did officially
resigne as of 12/15/14, although resigned, the medical indicate the employee has had improvements since April
2014, will refer to Voc once any r/l's are evaluated from any cognitive point, as well as updated information from Dr.
Brown, EE has sent and email on 2/27/15 indicating his CFS has recently been renamed to systemic exertion
intolorance disease (SEID)

03/02/2015 10:16:37 AM                                              Michelle Doucette

Requesting approval refered to Manager

03/01/2015 4:50:24 PM                                               Loretta Dionne

I imported to the file the medicla report on Craig Parker form Dr. Fuhrmann today. Loretta Dionne, RN

02/27/2015 4:43:17 PM                                               Michelle Christian

**LWOP** pending, 2nd med rev allows some less than sed from May/2014-Jul/2014.

02/27/2015 1:02:20 PM                                               Michelle Doucette

sent extension letter-awaiting internal MD consultant review

02/27/2015 12:49:33 PM                                      Michelle Doucette

EE sent in email 2/27/15 as a response to my 2/20/15 letter, placed email in general folder

Repsonded to EE thanking him for Email and will document the file with email

02/23/2015 12:44:43 PM                                      Michelle Doucette

Sent to Dr. Fuhrmann

02/20/2015 2:42:10 PM                                       Michelle Doucette

Plan: Will request MD review, sent letter to EE and ER

02/20/2015 10:29:09 AM                                      Michelle Doucette

I spoke with Mr. Parker and thanked him for returning my call, I was calling in response to his email he sent and a
follow up to our telephone call of 2/18/15.  In response to his email, I would like to send his claim for a 2nd level
review, but I want to be sure I have all treatment notes from the doctors he has seen since April 2014.  At the present
time we have notes from Dr. Michael Brown, Naturopathic MD, Dr. Steven Ellis, ENT, Dr. Cynthia Romito, Allergist,
Dr. Schuchardt, family medicine, Dr. Bruce Pfuetz, Allergist, Dr. Billi Wallace, Opthalmologist, Dr. Laura Reilly,
Neurologist.  He stated this is complete, except for Dr. Jude LeClaire a psychiatrist he began seeing in January 2015
for Depression and anxiety -to date he inicated he has seen 5 or 6 times, and he saw Dr. Diana Smith & Dr. Brook in
December 2014 to review his condition for possible tick born cause to the Chronic Fatigue and Fibromyalgia.  I
explained these records would be documentation I may need to support his claim ongoing, however at this time I
wanted to be sure I had complete records going back to April, currently the medical review indicates support of TD
for a limited time frame during the EP, I need to have suport going back to April through out his EP as well as
ongoing and more recent records would be needed for that, so I will move forward with a request to have an MD
review done.  I also want to clarify which doctor he felt oversee's his overall care, he advise Dr. Brown has a very
good handle on his case -he is a Naturopathic MD, he also felt his family physcian Dr. Schuchardt. I explained I may
be requesting a Peer to Peer call be done so I wanted to be sure I provided the proper contact information for the
MD. In the interim I will mail him a letter explaining that I will be moving forward with a 2nd level review prior to my
final determination letter.  Mr. Parker felt this was a fair and agreeable action and appreciated the effort, I thanked
him and the call ended.

02/18/2015 11:58:46 AM                                      Michelle Doucette

I spoke with Mr. Parker today (913-829-9311) I explained that the medical reviews I had done were complete and
unfortunately our findings did not support TD through out EP and ongoing and I would be sending a letter of denial.  I
did go over the appeal process and explained in detail this option should he not agree with my determination.  I
expressed that I was sorry my findings were not more favorable and I would get this letter mailed out no later than
Monday of next week, sooner if possible.  I will be explaining in detail the medical records we had and the questions I
posed, when he receives my letter if he has any questions to please call.  Mr. Parker was disappointed with the
determination but the call ended pleasantly

02/12/2015 3:07:14 PM                                       David Cairns

Pending claim review completed today (02/12/2015).  Agree with current action plan. Appropriate FLUP's set on
claim.

02/10/2015 12:34:44 PM                                      Kristin Esposito

Voc Note:  OA complete, please see rehab folder.  EE's occ is a Design Engineer Supervisor which typically exists a
a Light exertion level.  Kristin Esposito, MA, CRC

02/10/2015 12:00:39 PM                                      Michelle Doucette

Plan: additional records received and RN review complete. Unable to support TD from DOD to present, appears a

limited time during EP is supported based on the following:
While diagnostics were negative for 4th nerve palsy, he did have double vision that was resolved with supplements and prism glasses, so from 5/13/2014 when he reported symptoms through early 7/2014 he would have been precluded from engaging in any activity requiring vision including light and sedentary. There is no objective evidence to support impairment based on his other self-reported complaints including muscle weakness and fatigue. He has worked previously with sinus symptoms, GERD which had not changed on or around the DOD

02/10/2015 11:53:00 AM                                    Michelle Doucette

Sent for formal OA

01/29/2015 8:05:44 AM                                    Michelle Doucette

Rec'd in Radiology report from University of Kansas Hospital
Dr. Smith

01/27/2015 1:10:34 PM                                    Michelle Doucette

Plan: additional medical received, returned to have RN review

01/21/2015 1:53:18 PM                                    Caitlin Brooks

Imported medical records from Dr. Laura Reilly.

01/20/2015 12:56:24 PM                                    Ashley Robertson

Imported medical records from Dr. Billi Wallace.

01/20/2015 9:42:51 AM                                    Michelle Doucette

rec'd email from EMSI: Hi Michelle,
Olathe Lad Clinic states the patient came in one time in December and his visit consisted of going over his past history form. He had lab work done but it has just came back and they have not had a follow up with the patient to discuss the lab work. They have no office visits to send. Please advise

Advised EMSI, if there are no notes to obtain then close request

01/20/2015 7:36:24 AM                                    Michelle Doucette

checked EMSI
Olathe Clininc work in progress: 1/14/2015 12:14:17 PM  Other  Left message on medical records voicemail
Dr. Reilly work in progress: 1/19/2015 4:58:50 PM  Other  Request has been mailed to facility

01/15/2015 3:23:58 PM                                    David Cairns

Pending claim review completed today (01/15/2015). Agree with current action plan. Appropriate FLUP's set on claim.

01/12/2015 5:21:58 PM                                    Michelle Doucette

sent letter

01/12/2015 5:04:50 PM                                    Michelle Doucette

Email states:
Michelle,
With so many doctors involved in my treatment, and knowing that you are still considering my disability claim, I asked Dr. Brown if he could summarize my current overall health condition. He generously provided the attached letter. I

hope this will help clarify my current disability, which has prevented me from performing my job at Garmin since last summer. I was forced to resign my position at Garmin on December 15 as the illness continues. I appreciate your help in expediting my disability claim.
Thank you,
Craig Parker

| 01/12/2015 5:03:39 PM | Michelle Doucette |

EE also emailed me with a letter from Dr. Brown, imported to medical folder

| 01/12/2015 4:58:37 PM | Michelle Doucette |

EE sent email: Sent: Friday, January 02, 2015 5:23 PM
To: 'Michelle.Annette.Doucette@sunlife.com'
Subject: RE: Additional Info

Michelle,
Just occurred to me that I am also being evaluated next week for anxiety disorder. You will probably want those records as well. I will provide that doctor's contact info after my visit.
Thanks,
Craig Parker

Psychiatrist:
Dr. Jude LaClaire
Kansas City Holistic Center
5453 W. 61st Place
Mission, KS 66205
913-322-5622

| 01/12/2015 4:55:18 PM | Michelle Doucette |

Checked EMSI
Bill Wallace MD records pending
 1/2/2015 9:20:19 AM  Other  Mailing the request to facility, due to failing fax. Will follow up.
Dr. Laura Reilly
 1/9/2015 9:40:11 AM  Other  Please email healthport for status. Thanks

| 01/12/2015 4:52:48 PM | Michelle Doucette |

checked EMSI

Olathe LAD Clinic
1/9/2015 12:07:46 PM  Other  Spoke with Diane who stated she faxed the request back today stating the patient came in one time in December and his visit consisted of going over his past history form. He had lab work done but it has just came back and they have not had a follow up with the patient to discuss the lab work. I confirmed that they had no office visit notes from the one visit

| 01/06/2015 12:10:27 PM | Michelle Christian |

**LWOP** Spoke w/clmt regarding conversion options & gave him the # to contact. Clmt stated he resigned 12/15/14 but was only given COBRA paperwork & not conversion. Clmt did state he had $500k in Optional coverage. Clmt is aware the Ltd is still pending awaiting additional meds. Reviewed med rev which does not presently support. No response to BA/Stephanie to email sent 2nd. Still need to clarify dod for Waiver as it appears it will be different than Ltd's, pending/tolling.

| 12/30/2014 4:18:30 PM | Michelle Doucette |

ordered all three through EMSI

| 12/30/2014 4:05:50 PM | Michelle Doucette |

rec'd email from EE:
Hi Michelle,

Here are the additional doctors that I have seen regarding my illness:

Neurologist – no neurological disease was found

Dr. Laura Reilly, MD
College Park Family Care
10600 Mastin
Overland Park, KS 66212
913-438-0868

 Neuro Opthamologist – double vision had improved before this exam

Dr. Billi Wallace, MD
Sabtes Eye Center
5811 NW Barry Road
Kansas City, MO 64154
913-261-2020


Lyme Associated Diseases – being tested now for Lyme and associated tickborne illness

Diana Smith, RN, LPC, LPRN
Olathe LAD Clinic
1948 E. Santa Fe
Suite H
Olathe, KS 66062
913-221-0750


 Thanks,
Craig Parker


12/30/2014 2:55:14 PM                                    Michelle Doucette

Called EE, he stated he did see the Neurologist once or twice
Dr. Riley and he saw the neuro-opthomologist in Jun or July
Dr. Billy Wallace

-He states both did not pose any necessary follow ups, however he will get me the full address and phone numbers
so we can request these records, he states he also has seen a doctor regarding lyme disease and will provide the
name and address for this physician also.  He was concernded with the amount of time this was taking, I explained if
I had to make a determination today it would not be a favorable one, I want to be sure I have all possible records
available for review before making a final determination.  He understood and will get this information to me via my
email address, he understands his case is not an easy one, and states he continues to be out of work because of the
anxiety and cognitive issues, I asked if he was seeing anyone else for this other than Dr. Brown.  He informed me he
was not.  He stated that the adrenal issues was the cause of these issues and he continues with Dr. Brown for the
treatment.  I thanked him for his attention to my request and I also went over the process of appeal should an
unfavorable determination be made, he will provide the information I need as soon as possible.


12/30/2014 2:39:13 PM                                    Michelle Doucette

Plan: at this time will attempt to obtain any records from
*request to see neurologist 5/7?
*follow up with opthomologist for dizziness?


12/30/2014 2:35:49 PM                                    Michelle Doucette

Full RN review complete:
Although the clmt reports symptoms of chronic lower right flank pain, tinnitus, muscle spasms in upper and lower
back, hamstring and esophageal spasms, nausea, brain fog, blurred vision and tinnitus, there is insufficient objective

evidence in the file at present to support that he would be unable to exert up to 10-20  pounds of force occasionally, sit or stand occasionally   or exert  a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects, including the human body from DOD through his sinus surgery on 8/21/14 ( with a recovery period of 2 weeks to include no activities at all) through present
Pertinent lab testing has been essentially normal; there is mention of early diagnostic testing in 2/2014 at Mayo clinic which was normal (EGD and complete GI workup).
It is not clear to this reviewer what changed on/around April 2014 to precipitate the clmt's decreased functional capacity; he was seen in initial consultation by Dr Brown (Naturopathic physician) and appears to have been started on a number of supplements which may or may not have added to his gastric distress and other symptoms noted from DOD through present.


12/30/2014 2:31:23 PM                                              Michelle Doucette


call to Stephanie at Garmen, returning her call she (913-440-2150) got her vm


12/30/2014 2:27:14 PM                                              Michelle Doucette


**LWOP** File reviewed on 12/13/14, sent f/u to BA/Stephanie re: ec/bd & opt, pending. Imported for Michelle Christian 12/19/14 10:00


12/17/2014 9:03:00 AM                                              Michelle Doucette


**Updated CHESS DOD, EE's last day worked was a Friday 4/4/14, he is not scheduled to work weekends and did not have immediate medical treatment therefore will use Monday 4/7/14 as onset of disability date.  ER confirmed the weeks of 4/21 and 4/28 EE worked full time hours, therefore he worked less than 15 days, EP will be treated as consecutive, but will had 10 days to end of EP as EE worked full time during these days making first potential begin date for LTD 07/15/14.


12/16/2014 5:12:45 PM                                              Michelle Doucette


rec'd email from ER:
Michelle:

I confirmed that Craig worked full time on the weeks in question (4/21 and 4/28).
Thanks,

Stephanie


12/15/2014 11:06:19 AM                                              Marc Soucy


TME NOTES:
*** Pay Periods run biweekly.
*** TME does not include Commissions, Bonuses, Overtime Pay, or Any Other Extra Compensation.  TME will include Shift Pay unless noted in definition to exclude.

*** Per Payroll Records immediately prior to DOD 4/5/14.  Pay Period End Dates 3/8/14 and 3/22/14.  EE is a Salaried employee earning $5,079.60 biweekly - Accurately reflects Regular Hours/Earnings.

*** TME = $11,005.80
*** GMB = $ 6,000.00

ACTION:
*** Completed TME Calculation Worksheet & imported to file.
*** Updated Ben/Sal Screen in CHESS.
*** Sent referral to BA to confirm completion of TME Calculation.


12/15/2014 11:06:09 AM                                              Marc Soucy


TME:  Total Monthly Earnings means the Employee's basic monthly earnings as reported by the Employer immediately prior to the first date Total or Partial Disability begins. Total Monthly Earnings includes deductions for

pre-tax contributions to a qualified deferred compensation plan, Section 125 Plan, HSA Plan or flexible spending account, but does not include income received due to commissions, bonuses, overtime pay or any other extra compensation.

If an Employee is paid on an hourly basis, Total Monthly Earnings will be based on the Employee's hourly rate of pay, but will not exceed 40 hours per week.

12/15/2014 10:32:40 AM                                            Michelle Doucette

Response from Stephanie,
Payroll pulled more info on Craig Parker; he worked the weeks of 4/21 and 4/28 but did not work on 6/16.

Thanks,
Stephanie

12/12/2014 2:42:05 PM                                             Michelle Doucette

I spoke with Stephanie she apologized for all of the confusion on the time sheets the issue with this particular employee was the manager was not submitting information to payroll in a timely manner so they have had to go back on things and try to apply proper pay etc and make determinations on any overpayments or time allotted.  However with that being said, She clarifiey they do not pay for any FMLA and they do not have any salary continuation program when someone is out. They do pay any accumulated PTO time but all "sick" leave is unpaid.  She is currently waiting on the payroll department to confirm the weeks of 4/21, 4/28 and 6/16 are weeks EE was out on sick leave and not worked weeks.

12/12/2014 11:51:19 AM                                            Michelle Doucette

sent tolling letter

12/12/2014 11:33:47 AM                                            Michelle Doucette

Based on the breakdown the Employer provided for the 536 hours EE used, sent Email to Stephanie:
Hi Stephaine,

Another question, I thought that Mr. Parker used a total of 536 hours of FMLA;  (EA) breakdown you provided totals 800 hours........you state this is all EA total hours off, I need to clarify;  Is it all FMLA or Salary continuation also, (560 hours used would end the week of 7/28/14 and then did salary continuation begin the week of 8/4/14?)...Not sure of the 536 number.

I also need to understand what happened the week of 4/21, 4/28 and 6/16.  Thank you.

12/12/2014 7:51:30 AM                                             Michelle Doucette

Rec'ed Email regarding hours worked each pay period see general folder

12/08/2014 12:44:32 PM                                            Michelle Doucette

Sent to RN(Christina Raymond) full review

12/08/2014 12:27:49 PM                                            Michelle Doucette

EE states LDW on his form was 4/4/14 using 4/5/14 as DOD until I can determine differently based on any date detail the ER may be able to provide based on the 536 hours EE usesd for FMLA between April and July 31st (as ER indicated EE exhausted the FMLA as of 7/31/14).

12/08/2014 12:16:47 PM                                            Michelle Doucette

Call to Stephanie (ER-913-440-2150) left vm, is there something she can send me from the time editor to show what dates make up the total hours paid for FMLA - both paid and non paid?

12/08/2014 11:33:31 AM                                          Michelle Doucette

sent to have TME calculated

12/08/2014 11:33:09 AM                                          Michelle Doucette

DOD would be April 5, 2014, Attempts to return to work were not releases to full duty, but an attempt to help employer disburse his responsibilities to others so team could continue to operate
Email response from ER:
Craig was off work a total of 536 hours between the dates of 4/1 to current. Since he is exempt, he does not have time punches, but I've attached the report that shows the total number of FMLA time he took during this period (480 hours) and the accomdoation of time off that we've been providing him once he exhausted his 12 weeks of FMLA starting on July 31st. Craig attempted to return to work a few times between April and October but the very last time I show him working was a partial day on 10/7/2014.

12/08/2014 10:23:11 AM                                          Michelle Doucette

Spoke with EE, advised Dr. Ellis's records have been received I will move forward with the medical review and try to move this to a determination level.

12/01/2014 11:08:39 AM                                          Caitlin Brooks

Imported medical records from Dr. Steven Ellis.

11/28/2014 8:47:18 AM                                           Michelle Doucette

Checked EMSI
Dr. Ellis's records 11/26/2014 10:01:28 AM  Other  Was placed on extended hold, sending status sheet to the facility now....

11/24/2014 8:14:51 AM                                           Michelle Doucette

Checked EMSI
Dr. Ellis's records are a work in progress: 11/17/2014 9:55:55 AM  Other  Called and left a message for the office manager to call me back and let me know when we are going to be receiving these records

11/14/2014 2:11:41 PM                                           Michelle Doucette

EE Effective coverage date 02/27/97, Sun Life policy effective date 1/1/14 however plan comparisons were done plans are equal -claim is not pre-ex

11/14/2014 2:05:07 PM                                           Michelle Doucette

Awaiting Dr. Ellis's records and will forward with Full review

11/14/2014 2:02:16 PM                                           Michelle Doucette

Dx on APS Chronic Fatigue, Fibromalgia.  I called EE to advise of the 24 month max for this dx.  I explained in our initial call the Max duration has a potential to pay benefits to Age 67, however is Chronic Fatigue and or Fibromyalgia is primary dx the max duration of benefits is 24 months.  He understood and was aware of this already, but appreciated the call.  He is hopeful that the doctors he is working with will have things to a point he will be able to RTW well before 24 months.

11/14/2014 1:52:59 PM                                           Michelle Doucette

rec'd 3 parges of notes from Dr. Romito -ov 8/12/14 indicates chronic fatigue for two years getting worse

11/11/2014 1:17:02 PM                                        Caitlin Brooks

Imported medical records from Dr. Romito.

11/10/2014 10:33:23 AM                                       Michelle Doucette

call back from ER, She will work on providing me detailed hours worked from April to the present, upon receipt will review for determination of onset of disability.

11/05/2014 4:03:21 PM                                        Michelle Doucette

Order Confirmation - 26647912
Order Confirmation - 26648015

11/05/2014 3:42:52 PM                                        Michelle Doucette

Rec'd APS signed 09/26/14 Dr. Michael Brown
DX -chronic Fatigue/ Fibromyalgia
Doctor notes difficult to assess r/l's as conditions are day to day

Change in plan: Since APS vague with R/l's on a sustained basis,  will also request medical from doctors ee has indicated are treating him for
sinusitis and bronchitis:

Dr. Cynthia Romito MD
Heartland Alllergy
10960 Quivira Rd
Suite 310
Overland Park, KS 66215
(913) 894-2894

Dr. Steven Ellis MD
Head and Neck Surgery of KC
5370 College Blvd
Suite 100
Overland Park, KS 66211
(913) 599-4800

11/05/2014 12:15:06 PM                                       Michelle Doucette

24 month LTD Limitaion in contract for Chronic Fatigue and Fibromyalgia

11/05/2014 12:09:28 PM                                       Michelle Doucette

DX-Chronic Fatigue and Fibromyalgia

11/05/2014 12:09:07 PM                                       Michelle Doucette

EE will contact Dr. Browns office and request APS be faxed again

11/05/2014 11:23:56 AM                                       Michelle Doucette

TPC completed

11/05/2014 10:28:26 AM                                       Michelle Doucette

Plan: determine correct Last day worked, still awaiting LTD APS, once DOD determined can move forward with

proper TME evaluation

11/05/2014 10:23:35 AM                                    Michelle Doucette

Payroll indicates EE has LTD Plus begining January 2014- updated CLASS on CHESS 411-04

11/05/2014 10:21:51 AM                                    Michelle Doucette

sent email to Stephanie.Prell@garmin.com
I received the Employer LTD claim form today on Craig Parker.  I need some clarification.  Mr. Parker indicated his
last day worked was 4/4/14 he returned to work with restrictions 9/22/14.   The employer LTD form indicates his last
day worked was 10/7/14 and the payroll you provided shows he was working regular hours through May 17, 2014.

Would you clarify and supply attendance records from 4/4/14 through October 31, 2014 as well as payroll from May
2014 through the present.  Thank you

11/05/2014 8:06:39 AM                                     LeeAnn Ciaramicoli

Received employer claim forms, JD, payroll records, and enrollment card today from the employer which was
submitted through the Client Advocate,Sheri Snow by email. I have forwarded the information to Michelle Doucette
who is the assigned claim analyst to import into the file

10/31/2014 1:18:45 PM                                     Kerry DeTora

Pending Claim Triage

•Benefit Analyst:  Michelle Doucette
•Vocational Rehabilitation Consultant:  Kristin Esposito
•Clinical Consultant:  Bethany Drabik
•LTD Senior Manager:  Kerry DeTora

The claimant is a 53 y.o. engineering team lead (appears light, may need OA).  Per Claimant Statement, the
following is noted: dizziness, sweats, muscle spasms after eating and this became worse over time; has returned to
work with restrictions effective 9/22/14.  At this time APS and ER info o/s.   Medical records received and will need
review.

10/31/2014 12:44:19 PM                                    Michelle Doucette

Received in 94 pages of records Dr. Brown, notes from July 1, 2014 ov and notes going forward inidcate EE working,
appears some full days and partial ...Will need payroll to determine impact to claim as first potenial LTD benefit is
7/4/14

10/31/2014 12:19:59 PM                                    Caitlin Brooks

Imported medical records from Dr. Michael Brown.

10/27/2014 12:09:59 PM                                    Michelle Doucette

FOR LETTERS, receced Email from Stacey: Hello Michelle

Can you please provide a status of claim 091014-05930-00 (Craig Parker) to our new Garmin contact Lisa Kern.

Contact for ER is <Lisa.Kern@garmin.com> , sent copy of acknowledgment letter to Lisa, and advised ER LTD form,
payroll, JD, and enrollment cards are outstanding from ER

10/22/2014 11:51:19 AM                                    Michelle Doucette

Requested medical through EMSI

Order Confirmation - 26411898

10/21/2014 8:54:35 AM                                              Michelle Doucette

Medical
Dr. Michael Brown, MD
8717 W 110th St
Suite 270
Oveland Park KS   66210
913-579-4437

10/21/2014 8:52:57 AM                                              Michelle Doucette

Plan: Await ER LTD form, JD, payroll, determine if EE chose to contribute to LTD premiums if so update class, have
ER provide Enrollment cards, Need LTD APS, conduct TPC, Currently have auth will request records from doctors
he states he has seen.  Will need to finish elegibility review when emploryer provides information, No STD claim to
reference, Determine if RTW with restrictions is full time and at his own occupation, if no loss of income then it would
not be considered partial.  Need to have TME calcualted when payroll received, plan comparisons have already been
done. Clear if pre-ex, appears it will not be based on DOH in 1997.

10/21/2014 8:46:50 AM                                              Michelle Doucette

Currently have EE LTD form, Auths, RA, Photo ID

EE states noticed issues in March 2012 with dizziness, sweats, muscle spasms after eating and this became worse
over time.  He indicates he has returned to work with restrictions effective 9/22/14

10/21/2014 8:44:38 AM                                              Michelle Doucette

Eligibility Review – pending 411-07 –need to verify
Contrib: No
LDW: 04/04/14
DOD: 04/05/14
DX: Illness
OCC: Engineering Team Leader
DOB: 05/11/1961
EP: 90 days or end of STD whichever is later
LTD potential Ben Begin Date: 07/04/14
DOH: 1997
WP: yes
Policy Effective Date: 01/01/14
EE's Effective date of LTD: ?
Benefit %: 60
Max Duration: Age 67
Offsets: ?
Pre-Ex: no (?)
Mandatory Rehab: yes

Def of Dis: Total Disability or Totally Disabled means during the Elimination Period and the next 24 months, the
Employee, because of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own
Occupation. After Total or Partial Disability benefits combined have been paid for 24 months, the Employee will
continue to be Totally Disabled if he is unable to perform with reasonable continuity any Gainful Occupation for which
he is or becomes reasonably qualified for by education, training or experience

10/21/2014 8:37:15 AM                                              Michelle Doucette

Plan comparisons completed for all LTD classes, CHESS classes 411-01 through 411-08 and plans are equal.

10/15/2014 11:25:02 AM                                             Noor Sadeghi-Ray

**LWOP** 1st letters. For Michelle Christian

10/10/2014 12:59:32 PM                                        Jennifer Siteman

END 45D= 11/26/14

**NATIONAL ACCOUNT**
VERIFY PLAN ID

**DUMMIED DOH, SALARY & LAST DAY WI**

"McEntarfer, Sally"
<Sally.McEntarfer@garmin.com>
2014-10-09 09 51 AM

To    "Stacey LeCoultre@sunlife com"
      <Stacey LeCoultre@sunlife com>,
cc    Tracy Brennan <TBrennan@holmesmurphy com>, Jennifer
      Gilmore <JGilmore@holmesmurphy com>,
      "myclaimdocuments@sunlife com"
      <myclaimdocuments@sunlife com>
bcc

Subject  Craig Parker LTD Claim

1 attachment

20141009084543328 pdf

Hi Stacey,
I wasn't sure who to send this too since it is LTD.  Can you forward it on for
me?

Thanks!

_____

CONFIDENTIALITY NOTICE: This email and any attachments are for the sole use of
the intended recipient(s) and contain information that may be confidential
and/or legally privileged. If you have received this email in error, please
notify the sender by reply email and delete the message. Any disclosure,
copying, distribution or use of this communication (including attachments) by
someone other than the intended recipient is prohibited. Thank you.

# Sun Life Assurance Company of Canada
## Long Term Disability Claim Packet - Claimant



---

### Instructions for the Claimant

Please mail all documents 4-6 weeks before the end of your elimination period.

Please make sure to initiate the Long Term Disability claim filing process as soon as it first appears that your disability will extend beyond the required elimination period. Please refer to your group insurance policy to determine the length of the elimination period.

**It is the responsibility of the claimant to ensure that the Employer's Statement and the Attending Physician's Statement are submitted directly to Sun Life Financial.**

**Please be sure to submit the Employee's Statement directly to Sun Life Financial.**

**The Employee must:**

☒ Sign and date the Employee's Statement

☒ Sign and date the Authorizations

☒ Sign and date the Reimbursement Agreement

☒ Have the employer complete and return the Employer's Statement to Sun Life Financial

☒ Have the physician complete and return the Attending Physician's Statement to Sun Life Financial

☒ Attach a copy of a photo ID (i.e., license or passport)

☒ Attach a detailed job description (from employer)

Mail or fax the completed claim form to:

Sun Life Assurance Company of Canada
Group Long Term Disability Claims
P.O. Box 81830
Wellesley Hills, MA 02481
Fax: (781) 304-5537

**Failure to provide complete and accurate information could result in the need for additional claims investigation which could delay the initial benefit payment.**

---

AR 28

# Sun Life Assurance Company of Canada
## Long Term Disability Claim Packet - Claimant



## Fraud Warnings

*State law requires that we notify you of the following:*

**Fraud warning**: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Fraud warning—AK**: A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete, or misleading information may be prosecuted under state law.

**Fraud warning—AL**: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**Fraud warning—AR, LA, MA, MN, NM, RI, TX, and WV**. Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Fraud warning—AZ**: For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**Fraud warning—CA**: For your protection California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Fraud warning—CO**. It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies

**Fraud warning—District of Columbia**. Any person who knowingly and willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly and willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Fraud warning—FL**: Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Fraud warning—IN, ID, and DE**· Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

## Fraud Warnings continued

**Fraud warning—KS** Any person who knowingly and with intent to defraud any insurance company or other person files an Application for insurance or statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto may be guilty of insurance fraud as determined by a court of law.

**Fraud warning—KY**: Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim, containing any materially false information, or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which may be a crime and subjects such person to criminal and civil penalties.

**Fraud warning—MD**: Any person who knowingly OR willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly OR willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Fraud warning—ME, TN, VA, and WA**: It is a crime to knowingly provide false, incomplete or misleading information to an insurance company. Penalties include imprisonment, fines and denial of insurance benefits.

**Fraud warning—NH**: Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**Fraud warning—NJ** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**Fraud warning—OH** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Fraud warning—OK**: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Fraud warning—OR** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may have violated state law.

**Fraud warning—VT**: Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.

*Continued on next page*

AR 30

# Sun Life Assurance Company of Canada
## Long Term Disability Claim Packet - Claimant



## Employee's Statement

### 1 General Information

Please print clearly.

Return to:
*Sun Life Assurance
Company of Canada
Group LTD Claims,
SC 4328
1 Sun Life Exec. Park
P.O. Box 81830
Wellesley Hills, MA 02481
Fax: (781) 304-5537*

| Name of employee (first, middle initial, last) ☒ M ☐ F | | Social Security number | Group policy number |
|---|---|---|---|
| Craig B. Parker | | | 231948 |

| Street address | | City | State | Zip Code |
|---|---|---|---|---|
| | | Olathe | KS | 66061 |

| Occupation | Date of birth | Phone number | Marital status |
|---|---|---|---|
| Engineering Team Leader | /1961 | 913-829-9311 | M |

| Spouse's name (first, middle initial, last) | Social Security number | Date of birth |
|---|---|---|
| Amy D. Parker | | 1969 |

| | |
|---|---|
| Is your spouse employed .... ..... ... ..... ...... .. ... . .. ... ... .. ...... ........ | ☐ Yes ☒ No |
| Names and dates of birth of your children (under age 25) | |

### 2 Information About the Condition Causing Your Disability

If a motor vehicle accident has occurred and is the cause of the disability, a motor vehicle accident report *is required to be included* with this statement.

| Date of accident or date you first noticed symptoms of your illness    March 2012 |
|---|
| Describe in detail how, when and where the accident occurred –OR– Describe the nature of your illness/condition and its first symptoms |
| *Dizziness, sweating, and muscle spasms after eating.  Symptoms have increased since that time.* |

| | |
|---|---|
| Is your condition due to injury or sickness related to your job?........ ... . .. ... .. ... .. .. . .. ☐ Yes ☒ No | |
| If yes, please explain below. | |

| Date you were first treated by a physician | Last date worked prior to disability | Did you work a full day? |
|---|---|---|
| March 2012 | 04/04/2014 | ☒ Yes ☐ No |

| Date first unable to work | Have you returned to work? | |
|---|---|---|
| 04/07/2014 | ☒ Yes ☐ No   If yes, Date. 09/22/2014 <br> restrictions ☐ Full capacity | ☒ With |

| If work-related, have you filed/do you intend to file, a Workers' Compensation claim?   ☐ Yes ☒ No |
|---|
| If yes, provide date: |

### 3 Your Treating Physician(s)

If you need more space, check here ☐ and attach a separate page.

| Name of physician | Specialty |
|---|---|
| Dr. Michael Brown, ND | Integrative Medicine |

| Address |
|---|
| 8717 W. 110th St <br> Suite 270 <br> Overland Park, KS 66210 |

| Telephone number | Fax number | Date of last visit | Date of next visit |
|---|---|---|---|
| 913-579-4437 | | 09/24/2014 | 09/30/2014 |

| Have you discussed a return to work plan with this physician?............ ....... ........ ...☒ Yes ☐ No |
|---|

*Continued on next page*

AR 31

## 3 Your Treating Physician(s) continued

| Name of physician | | | Specialty | |
|---|---|---|---|---|
| Address | | | | |
| Telephone number | Fax number | Date of last visit | | Date of next visit |
| Have you discussed a return to work plan with this physician?............ ...... ......... . . ☐ Yes ☐ No | | | | |

## 4 Hospitals

If you need more space, check here ☐ and attach a separate page.

| | Name of hospital | Telephone number | Dates of confinement to |
|---|---|---|---|
| 1. | | | |
| 2 | Name of hospital | Telephone number | Dates of confinement to |

## 5 Other Income Information

Are you currently receiving, or entitled to receive, benefits from any of the following sources?

Check all that apply and provide award/denial notice or application associated with any source of income.

| | Source of income | Amount of each payment | Weekly or monthly | Period/date(s) covered by payment |
|---|---|---|---|---|
| ☐ | Sick Pay | $ | ☐ Wkly ☐ Mthly | |
| ☐ | Salary Continuance | $ | ☐ Wkly ☐ Mthly | |
| ☐ | State Disability | $ | ☐ Wkly ☐ Mthly | |
| ☐ | Workers' Compensation | $ | ☐ Wkly ☐ Mthly | |
| ☐ | Unemployment Compensation | $ | ☐ Wkly ☐ Mthly | |
| ☐ | Social Security Disability/Retirement | $ | ☐ Wkly ☐ Mthly | |
| ☐ | Disability/Retirement Pension | $ | ☐ Wkly ☐ Mthly | |
| ☐ | Automobile No-fault Insurance | $ | ☐ Wkly ☐ Mthly | |
| ☐ | Union Disability | $ | ☐ Wkly ☐ Mthly | |
| ☐ | Severance | $ | ☐ Wkly ☐ Mthly | |
| ☐ | Other: | $ | ☐ Wkly ☐ Mthly | |

## 6 Education and Training Information

| Please indicate your highest level of education completed. | | |
|---|---|---|
| ☐ Less than High School (Grade ____)     ☐ High School (GED)     ☒ College | | |
| Name of school / college Wichita State University/Ohio University | | |
| Degree BSEE/MSEE | Dates attended 1979-84/1987-89 | Field of study Electrical Engineering |
| Additional Course Work, Education, Training, Special Skills and/or Hobbies | | |

## 7 Experience Information

**Military Experience**

| Did you serve in the armed forces? ..... ☐ Yes ☒ No | | Branch of service |
|---|---|---|
| Highest rank | Dates of service to | Specialty |

*Continued on next page*

AR 32

## 7 Experience Information continued

If you have a resume, please attach a copy. You may use this section to indicate any additional experience.

### Work Experience

Please list chronologically all of the jobs you have held. Start with your current or most recent job. Provide as many details as possible.

| Name of Employer | Title | Dates of employment |
|---|---|---|
| Garmin | Engineering Team Leader | 1997   to   2014 |
| Department | Tasks and duties (please be specific) | |
| Aviation Engineering | Lead electrical design team | |

| Name of Employer | Title | Dates of employment |
|---|---|---|
| AlliedSignal | Senior Design Engineer | 1989   to   1997 |
| Department | Tasks and duties (please be specific) | |
| Engineering | Design Engineer | |

| Name of Employer | Title | Dates of employment |
|---|---|---|
| Bendix/King | Product Development Engineer | 1984   to   1986 |
| Department | Tasks and duties (please be specific) | |
| Engineering | Design Engineer | |

### Skills Development

| What, if any, training or education would you be interested in pursuing? |
|---|
|  |

## 8 Checklist of Required Attachments

Please mail all documents 4-6 weeks before the end of your elimination period. **Failure to provide the following information could result in a delay of the initial benefit payment.**

☒ Sign and date the Employee's Statement
☒ Sign and date the Authorizations
☒ Sign and date the Reimbursement Agreement
☐ Employer completed and returned the Employer's Statement
☒ Physician completed and returned the Attending Physician's Statement
☒ Attach a copy of a photo ID (i.e., license or passport)

We will contact you as soon as we have received and reviewed your claim forms and medical records. In the meantime, should you have any questions, please call our Customer Service Center at 1-800-247-6875.

## 9 Signature

Reminder: Please be sure to sign and return any Authorization statements included in this packet.

I certify that the above statements are true and complete. I have read and understand the Fraud Warning on pages 2 and 3 of this packet.

| Employee's signature | Date signed |
|---|---|
| X  _Craig B Parker_ | 9/29/14 |

AR 33

This page left blank intentionally

AR 34

# Sun Life Assurance Company of Canada



Sun Life Financial®

## Authorization

### Authorization for Release and Disclosure of Health Related Information

This Authorization complies with the HIPAA Privacy Rule.

It is important for you to read, sign and submit all Authorizations in this packet. Failure to submit all Authorizations could result in a delay during the claims process.

Return to:
Sun Life Assurance Company of Canada
Group LTD Claims
P.O. Box 81830
Wellesley Hills, MA 02481

Fax: (781) 304-5537

I HEREBY AUTHORIZE any physician, healthcare provider, health plan, medical professional, hospital, clinic, laboratory, pharmacy or other medical or healthcare facility that has provided payment, treatment or services to me or on my behalf to disclose my entire medical record and any other protected health information concerning me to the Claims Department of Sun Life Assurance Company of Canada ("the Company"), its subsidiaries, affiliates, third party administrators and reinsurers.

I understand that such information may include records relating to my physical or mental condition such as diagnostic tests, physical examination notes and treatment histories, which may include information regarding the diagnosis and treatment of human immunodeficiency virus (HIV) infection, sexually transmitted diseases, mental illness and the use of alcohol, drugs and tobacco, but shall not include psychotherapy notes.

By my signature below, I acknowledge that any agreements I have made to restrict my protected health information do not apply to this Authorization, and I instruct any physician, healthcare professional, hospital, clinic, medical facility or other healthcare provider to release and disclose my entire medical record without restriction.

I understand that the Company will use the information it obtains to: (a) administer claims; (b) determine or fulfill responsibility for coverage and provision of benefits; (c) administer coverage; and/or (d) conduct other legally permissible activities that relate to any coverage I have or have applied for with the Company.

I understand that the Company will not disclose information it obtains about me except as authorized by this Authorization; as may be required or permitted by law; or as I may further authorize. I understand that if information is redisclosed as permitted by this Authorization, it may no longer be protected by applicable federal privacy law

The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of employees or their family members, except as specifically allowed by this law. In order to comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. 'Genetic information,' as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services

I understand that: (a) this Authorization shall be valid for 24 months from the date I sign it; (b) I may revoke it at any time by providing written notice to Group Long Term Disability Claims, Sun Life Financial, SC 4328, One Sun Life Executive Park, Wellesley Hills, Massachusetts, 02481, subject to the rights of any person who acted in reliance on it prior to receiving notice of its revocation; and (c) my authorized representative and I are entitled to receive a copy of the Authorization upon request.

A copy of this Authorization shall be as valid as the original.

| Print name of employee or personal representative of employee | Group policy number |
|---|---|
| Craig B. Parker | 231948 |
| If Representative, description of your authority or relationship to employee | |
| Signature of employee or personal representative<br>X _Craig B Parker_ | Date<br>9/29/14 |

AR 35

# Sun Life Assurance Company of Canada


Sun Life Financial®

## Authorization for Release and Disclosure of Psychotherapy Notes

This Authorization complies with the HIPAA Privacy Rule.

It is important for you to read, sign and submit all Authorizations in this packet. Failure to submit all Authorizations could result in a delay during the claims process.

Return to:
Sun Life Assurance Company of Canada
Group LTD Claims
P.O. Box 81830
Wellesley Hills, MA 02481

Fax: (781) 304-5537

I HEREBY AUTHORIZE any: physician, healthcare provider, health plan, medical professional, hospital, clinic, or other medical or healthcare facility that has provided payment, treatment or services to me or on my behalf to disclose any psychotherapy notes relating to me to the Claims Department of Sun Life Assurance Company of Canada ("the Company"), its subsidiaries, affiliates, third party administrators and reinsurers.

By my signature below, I acknowledge that any agreements I have made to restrict my protected health information do not apply to this Authorization, and I instruct any physician, healthcare professional, hospital, clinic, medical facility or other healthcare provider to release and disclose all psychotherapy notes relating to me without restriction.

I understand that the Company will use the information it obtains to: (a) administer claims; (b) determine or fulfill responsibility for coverage and provision of benefits; (c) administer coverage; and/or (d) conduct other legally permissible activities that relate to any coverage I have or have applied for with the Company.

I understand that the Company will not disclose information it obtains about me except as authorized by this Authorization; as may be required or permitted by law; or as I may further authorize. I understand that if information is redisclosed as permitted by this Authorization, it may no longer be protected by applicable federal privacy law.

I understand that: (a) this Authorization shall be valid for 24 months from the date I sign it; (b) I may revoke it at any time by providing written notice to Group Long Term Disability Claims, Sun Life Financial, SC 4328, One Sun Life Executive Park, Wellesley Hills, Massachusetts, 02481, subject to the rights of any person who acted in reliance on it prior to receiving notice of its revocation; and (c) my authorized representative and I are entitled to receive a copy of the Authorization upon request. A copy of this Authorization shall be as valid as the original.

| Print name of employee or personal representative of employee | Group policy number |
|---|---|
| Craig B. Parker | 231948 |
| If Representative, description of your authority or relationship to employee | |
| Signature of employee or personal representative | Date |
| X  Craig B Parker | 9/29/14 |

AR 36

# Sun Life Assurance Company of Canada


**Sun Life Financial®**

## Authorization for Release and Disclosure of Non-Health Related Information

This Authorization complies with the HIPAA Privacy Rule.

It is important for you to read, sign and submit all Authorizations in this packet. Failure to submit all Authorizations could result in a delay during the claims process.

Return to:
Sun Life Assurance Company of Canada
*Group LTD Claims*
P.O. Box 81830
Wellesley Hills, MA 02481
Fax: (781) 304-5537

I HEREBY AUTHORIZE any: (a) physician, healthcare provider, health plan, medical professional, hospital, clinic, laboratory, therapist, pharmacy or other medical or healthcare facility that has provided payment, treatment or services to me or on my behalf; (b) benefit plan administrator; (c) employer; (d) insurance company; (e) insurance support organization; (f) state department of motor vehicles; (g) consumer reporting agency; (h) financial institution; (i) government agency, or the *Medical Information Bureau, Inc., Social Security Administration, Internal Revenue Service or the Veteran's Administration,* to disclose to Sun Life Assurance Company of Canada ("the Company"). its subsidiaries, affiliates, third party administrators, and reinsurers, any and all non-health information relating to me, including, but not limited to (a) my employment earnings; (b) my occupational duties; (c) my credit history; (d) insurance benefits I may be receiving or have received; (e) Social Security benefits I, or my dependents, may be receiving or have received; (f) insurance claims I may have filed or insurance coverage I may have; (g) traffic accident reports relating to me; and (h) any other *financial information* relating to me.

I understand that the Company will use the information it obtains to: (a) underwrite my application *for coverage;* (b) make eligibility, risk rating, policy issuance and enrollment determinations; (c) obtain reinsurance; (d) administer claims and determine or fulfill responsibility for coverage and provision of benefits; (e) administer coverage; and/or (f) conduct other legally permissible activities that relate to any coverage I have or have applied for with the Company.

If this Authorization is signed in connection with a claim for insurance benefits, I hereby authorize the Company to disclose any information it obtains about me to any· (a) insurance company; (b) third party administrator; (c) rehabilitation or vocational professional; and (d) treating physician, psychologist *or therapist/counselor of mine, for the purpose of verifying, evaluating, negotiating,* determining, and/or adjudicating my claim. I further authorize the Company to disclose any information it obtains about me to the Medical Information Bureau, Inc.

I understand that the Company will not disclose information it obtains about me except as authorized by this Authorization; as may be required or permitted by law; or as I may further authorize. I understand that if information is redisclosed as permitted by this Authorization, it may no longer be protected by applicable federal privacy law.

This Authorization shall apply to information relating to my dependents where applicable.

I understand that: (a) this Authorization shall be valid for 24 months from the date I sign it; (b) I may revoke it at any time by providing written notice to Group Long Term Disability Claims, Sun Life Financial, SC 4328, One Sun Life Executive Park, Wellesley Hills, Massachusetts, 02481, subject to the rights of any person who acted in reliance on it prior to receiving notice of its revocation; and (c) my authorized representative and I are entitled to receive a copy of the Authorization upon request.

*A copy of this Authorization shall be as valid as the original.*

| Print name of employee or personal representative of employee | Group policy number |
|---|---|
| *Craig B. Parker* | 231948 |
| If Representative, description of your authority or relationship to employee | |
| Signature of employee or personal representative<br>X  *Craig B. Parker* | Date<br>9/29/14 |

AR 37

# Sun Life Assurance Company of Canada
## Long Term Disability Claim Packet - Claimant



## Reimbursement Agreement

Return to:
Sun Life Assurance
Company of Canada
Group LTD Claims
P.O. Box 81830
Wellesley Hills, MA 02481

Fax: (781) 304-5537

I UNDERSTAND and agree that the provisions of Group Long Term Disability Policy No. _____ permit Sun Life Assurance Company of Canada (herein called the "Company") to offset from my monthly disability benefit any benefits received from Social Security and/or Workers' Compensation or as otherwise provided in the Group Long Term Disability Policy. I further *UNDERSTAND and agree that the Company may offset any such amounts that I or my dependents are eligible to receive, whether or not I or my dependents are actually receiving said amounts.*

*In return for the Company's advance payment of the Long Term Disability benefits to which I may be entitled, which advanced amount may be in excess of the amount due to me under the terms of the policy, I, for myself, my heirs, executors, administrators and assigns agree:*

1. That I am not currently receiving any benefits from Social Security and/or Workers' Compensation, and/or any Other Income benefit to which I may be eligible as described in the policy.
2. To apply for Social Security disability benefits and/or Workers' Compensation benefits, and/or any Other Income benefit to which I or my dependents may be eligible as described in the policy.
3. If I, and/or my spouse and family receive any disability payments, regardless of the amount, in connection with Social Security and/or Workers' Compensation, and/or any Other Income benefit to which I or my spouse and family may be eligible as described in the policy; I and/or my spouse and family will immediately notify the Company of such disability payments and will pay back all amounts over and above the amounts to which I would be entitled under the policy provisions.
4. I understand that thereafter the Company is entitled to offset any amounts received from Social Security and/or Workers' Compensation, and/or any Other Income benefit to which I may be eligible as described in the policy with the monthly benefit payable under the policy in accordance with the terms of the policy.

I UNDERSTAND that the Company, in reliance on the above statements and promises, has agreed to advance to me the disability benefits to which I or my dependents are entitled under the terms of the policy.

| Print name  Craig B. Parker | Group policy number 231948 |
|---|---|
| Signature of employee X  Craig B Parker | Date 9/29/14 |
| Signature of witness X | Date |

AR 38

**Sun Life Assurance Company of Canada**
Wellesley Hills, MA 02481
1-800-247-6875



## PRIVACY INFORMATION NOTICE

This notice explains why Sun Life Assurance Company of Canada ("the Company") collects personal information about you, how we use that information, and under what circumstances we disclose it to others.

### COLLECTION OF INFORMATION

We need to obtain information about you to determine whether we can provide the insurance benefits you have requested. As part of the claims process, we may ask you to undergo a physical examination, submit a statement from your physician, or provide copies of medical tests or other information relating to your health, finances and activities.

We also may collect information about you from other sources. By signing the Authorization For Release And Disclosure of Health Related Information and/or the Authorization For Release And Disclosure of Psychotherapy Notes, you authorize us to obtain medical information about you that we need to underwrite your application or to evaluate your claim. Depending upon your particular circumstances, we may collect additional information about you from the following sources:

- Physicians, healthcare providers, medical professionals, hospitals, clinics or other medical or healthcare related facilities
- Other insurance companies you have applied to for insurance
- Public records, such as Social Security and tax records

### DISCLOSURE OF PERSONAL INFORMATION

When you sign the Authorization For Release And Disclosure of Health Related Information and/or the Authorization For Release And Disclosure of Psychotherapy Notes, you authorize us to disclose information we have about you:

- To our reinsurers
- As required or permitted by law

In the course of the claims process, we may need to disclose information about you to others. The law permits us to disclose such information, without obtaining authorization from you, to:

- Companies that help us conduct our business or perform services on our behalf
- Your physician or treating medical professional
- Comply with federal, state or local laws, respond to a subpoena or comply with an inquiry by a government agency or regulator

### ACCESS, CORRECTION AND AMENDMENT OF PERSONAL INFORMATION

Upon written request to the Company, you can:

- Obtain a copy of the personal recorded information we have about you in our files (a fee may be charged to cover the cost of providing a copy of such information)
- Request that we correct, amend or delete any recorded personal information about you in our possession
- File your own statement of facts if you believe that the recorded personal information we have about you is incorrect

To take any of these actions, please contact us at the following address for further instructions:

Sun Life Assurance Company of Canada
Group Long Term Disability Claims
P O. Box 81830
Wellesley Hills, MA 02481

Sun Life Assurance Company of Canada is a member of the Sun Life Financial group of companies.
© 2012 Sun Life Assurance Company of Canada, Wellesley Hills, MA 02481. All rights reserved.
Sun Life Financial and the globe symbol are registered trademarks of Sun Life Assurance Company of Canada.

AR 39





**Sun Life Assurance
Company of Canada**
One Sun Life Executive Park
Wellesley Hills, MA 02481-5699

## Fax

| | | | |
|---|---|---|---|
| **Date:** | Friday, October 10, 2014 8:22:56 AM | **From:** | |
| **To:** | ltd | **Fax:** | 781-304-5537 |
| **Company:** | | **Pages:** | 14 |

From:    Stacey LeCoultre on 10/09/2014 08:46 AM MDT
To:    USHO Group AdviceToPay@SunLife
cc:
Subject:    Fw: Craig Parker LTD Claim

Please forward to Claims Service for an LTD file.

Thank you,

Stacey LeCoultre
Regional Claim Center Team Lead
Sun Life Financial

Tel: 855-629-8811 ext 450 6748
Fax: 781-304-5599
Stacey.LeCoultre@sunlife.com

If transmission is illegible or incomplete, contact the sender immediately. This material is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, proprietary, confidential and exempt from disclosure. If you are not the intended recipient or the person responsible for delivering the material to the intended recipient, you are notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, we would appreciate it if you would please notify the sender immediately by telephone (collect if required) and destroy this material accordingly.

**www.sunlife-usa.com**

AR 41

# Sun Life Assurance Company of Canada
## Long Term Disability Claim Packet - Claimant



---

### Instructions for the Claimant

Please mail all documents 4-6 weeks before the end of your elimination period.

Please make sure to initiate the Long Term Disability claim filing process as soon as it first appears that your disability will extend beyond the required elimination period. Please refer to your group insurance policy to determine the length of the elimination period.

**It is the responsibility of the claimant to ensure that the Employer's Statement and the Attending Physician's Statement are submitted directly to Sun Life Financial.**

**Please be sure to submit the Employee's Statement directly to Sun Life Financial.**

**The Employee must:**

☒ Sign and date the Employee's Statement

☒ Sign and date the Authorizations

☒ Sign and date the Reimbursement Agreement

☒ Have the employer complete and return the Employer's Statement to Sun Life Financial

☒ Have the physician complete and return the Attending Physician's Statement to Sun Life Financial

☒ Attach a copy of a photo ID (i.e., license or passport)

☒ Attach a detailed job description (from employer)

Mail or fax the completed claim form to:

Sun Life Assurance Company of Canada
Group Long Term Disability Claims
P.O. Box 81830
Wellesley Hills, MA 02481
Fax: (781) 304-5537

**Failure to provide complete and accurate information could result in the need for additional claims investigation which could delay the initial benefit payment.**

---

AR 42

# Sun Life Assurance Company of Canada
## Long Term Disability Claim Packet - Claimant



---

**Fraud Warnings**

State law requires that we notify you of the following:

**Fraud warning**: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Fraud warning—AK**: A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete, or misleading information may be prosecuted under state law.

**Fraud warning—AL**: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**Fraud warning—AR, LA, MA, MN, NM, RI, TX, and WV**: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Fraud warning—AZ**: For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**Fraud warning—CA**: For your protection California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Fraud warning—CO**: It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Fraud warning—District of Columbia**: Any person who knowingly and willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly and willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Fraud warning—FL**: Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Fraud warning—IN, ID, and DE**: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

---

AR 43

## Fraud Warnings continued

**Fraud warning—KS**: Any person who knowingly and with intent to defraud any insurance company or other person files an Application for insurance or statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto may be guilty of insurance fraud as determined by a court of law.

**Fraud warning—KY**: Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim, containing any materially false information, or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which may be a crime and subjects such person to criminal and civil penalties.

**Fraud warning—MD**: Any person who knowingly OR willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly OR willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Fraud warning—ME, TN, VA, and WA**: It is a crime to knowingly provide false, incomplete or misleading information to an insurance company.  Penalties include imprisonment, fines and denial of insurance benefits.

**Fraud warning—NH**: Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**Fraud warning—NJ**: Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**Fraud warning—OH**: Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Fraud warning—OK**: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Fraud warning—OR**: Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may have violated state law.

**Fraud warning—VT**: Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.

*Continued on next page*

AR 44

# Sun Life Assurance Company of Canada
## Long Term Disability Claim Packet - Claimant



### Employee's Statement

**1  General Information**

Please print clearly.

Return to:
*Sun Life Assurance
Company of Canada
Group LTD Claims,*
SC 4328
*1 Sun Life Exec. Park*
P.O. Box 81830
Wellesley Hills, MA 02481
Fax: (781) 304-5537

| Name of employee (first, middle initial, last) ☒ M | Social Security number | Group policy number |
|---|---|---|
| Craig B. Parker                          ☐ F | ▮▮▮ | 231948 |

| Street address | City | State | Zip Code |
|---|---|---|---|
| ▮▮▮ | Olathe | KS | 66061 |

| Occupation | Date of birth | Phone number | Marital status |
|---|---|---|---|
| Engineering Team Leader | ▮1961 | 913-829-9311 | M |

| Spouse's name (first, middle initial, last) | Social Security number | Date of birth |
|---|---|---|
| Amy D. Parker | ▮▮▮ | ▮1969 |

Is your spouse employed ........................................................................................ ☐ Yes ☒ No

Names and dates of birth of your children (under age 25)

**2  Information About the Condition Causing Your Disability**

If a motor vehicle accident has occurred and is the cause of the disability, a motor vehicle accident report is required to be included with this statement.

| Date of accident or date you first noticed symptoms of your illness | March 2012 |
|---|---|

Describe in detail how, when and where the accident occurred –OR – Describe the nature of your illness/condition and its first symptoms.
Dizziness, sweating, and muscle spasms after eating.  Symptoms have increased since that time.

Is your condition due to injury or sickness related to your job?........................... ☐ Yes ☒ No
If yes, please explain below.

| Date you were first treated by a physician | Last date worked prior to disability | Did you work a full day? ☒ Yes ☐ No |
|---|---|---|
| March 2012 | 04/04/2014 | |

| Date first unable to work | Have you returned to work? | |
|---|---|---|
| 04/07/2014 | ☒ Yes ☐ No restrictions ☐ Full capacity    If yes, Date: 09/22/2014 | ☒ With |

If work-related, have you filed/do you intend to file, a Workers' Compensation claim?  ☐ Yes ☒ No
If yes, provide date:

**3  Your Treating Physician(s)**

If you need more space, check here ☐ and attach a separate page.

| Name of physician | Specialty |
|---|---|
| Dr. Michael Brown, ND | Integrative Medicine |

| Address | |
|---|---|
| 8717 W. 110th St Suite 270 Overland Park, KS 66210 | |

| Telephone number | Fax number | Date of last visit | Date of next visit |
|---|---|---|---|
| 913-579-4437 | | 09/24/2014 | 09/30/2014 |

Have you discussed a return to work plan with this physician?........................... ☒ Yes ☐ No

*Continued on next page*

AR 45

**3  Your Treating Physician(s) continued**

| Name of physician | | | Specialty | |
|---|---|---|---|---|
| Address | | | | |
| Telephone number | Fax number | Date of last visit | | Date of next visit |
| Have you discussed a return to work plan with this physician?..................................... ☐ Yes ☐ No | | | | |

**4  Hospitals**

If you need more space, check here ☐ and attach a separate page.

| | Name of hospital | Telephone number | Dates of confinement to |
|---|---|---|---|
| 1. | | | |
| 2. | Name of hospital | Telephone number | Dates of confinement to |

**5  Other Income Information**

Are you currently receiving, or entitled to receive, benefits from any of the following sources?

Check all that apply and provide award/denial notice or application associated with any source of income.

| Source of income | Amount of each payment | Weekly or monthly? | Period/date(s) covered by payment |
|---|---|---|---|
| ☐ Sick Pay | $ | ☐ Wkly ☐ Mthly | |
| ☐ Salary Continuance | $ | ☐ Wkly ☐ Mthly | |
| ☐ State Disability | $ | ☐ Wkly ☐ Mthly | |
| ☐ Workers' Compensation | $ | ☐ Wkly ☐ Mthly | |
| ☐ Unemployment Compensation | $ | ☐ Wkly ☐ Mthly | |
| ☐ Social Security Disability/Retirement | $ | ☐ Wkly ☐ Mthly | |
| ☐ Disability/Retirement Pension | $ | ☐ Wkly ☐ Mthly | |
| ☐ Automobile No-fault Insurance | $ | ☐ Wkly ☐ Mthly | |
| ☐ Union Disability | $ | ☐ Wkly ☐ Mthly | |
| ☐ Severance | $ | ☐ Wkly ☐ Mthly | |
| ☐ Other: | $ | ☐ Wkly ☐ Mthly | |

**6  Education and Training Information**

| Please indicate your highest level of education completed. ☐ Less than High School (Grade: _____ )   ☐ High School (GED)   ☒ College |
|---|
| Name of school / college |
| Wichita State University/Ohio University |

| Degree | Dates attended | Field of study |
|---|---|---|
| BSEE/MSEE | 1979-84/1987-89 | Electrical Engineering |

| Additional Course Work, Education, Training, Special Skills and/or Hobbies |
|---|
| |

**7  Experience Information**

**Military Experience**

| Did you serve in the armed forces?...... ☐ Yes  ☒ No | | Branch of service | |
|---|---|---|---|
| Highest rank | Dates of service to | Specialty | |

*Continued on next page*

AR 46

## 7 Experience Information continued

If you have a resume, please attach a copy. You may use this section to indicate any additional experience.

### Work Experience

Please list chronologically all of the jobs you have held. Start with your current or most recent job. Provide as many details as possible.

| Name of Employer<br>Garmin | Title<br>Engineering Team Leader | Dates of employment<br>1997    to    2014 |
|---|---|---|
| Department<br>Aviation Engineering | Tasks and duties (please be specific)<br>Lead electrical design team | |

| Name of Employer<br>AlliedSignal | Title<br>Senior Design Engineer | Dates of employment<br>1989    to    1997 |
|---|---|---|
| Department<br>Engineering | Tasks and duties (please be specific)<br>Design Engineer | |

| Name of Employer<br>Bendix/King | Title<br>Product Development<br>Engineer | Dates of employment<br>1984    to    1986 |
|---|---|---|
| Department<br>Engineering | Tasks and duties (please be specific)<br>Design Engineer | |

### Skills Development

What, if any, training or education would you be interested in pursuing?

## 8 Checklist of Required Attachments

Please mail all documents 4-6 weeks before the end of your elimination period. **Failure to provide the following information could result in a delay of the initial benefit payment.**

☒ Sign and date the Employee's Statement
☒ Sign and date the Authorizations
☒ Sign and date the Reimbursement Agreement
☐ Employer completed and returned the Employer's Statement
☒ Physician completed and returned the Attending Physician's Statement
☒ Attach a copy of a photo ID (i.e., license or passport)

We will contact you as soon as we have received and reviewed your claim forms and medical records. In the meantime, should you have any questions, please call our Customer Service Center at 1-800-247-6875.

## 9 Signature

**Reminder:** Please be sure to sign and return any Authorization statements included in this packet.

I certify that the above statements are true and complete. I have read and understand the Fraud Warning on pages 2 and 3 of this packet.

| Employee's signature<br>X   Craig B Parker | Date signed<br>9/29/14 |
|---|---|

This page left blank intentionally

# Sun Life Assurance Company of Canada



Sun
Life Financial®

## Authorization

**Authorization for Release and Disclosure of Health Related Information**

This Authorization complies with the HIPAA Privacy Rule.

It is important for you to read, sign and submit all Authorizations in this packet. Failure to submit all Authorizations *could result in a* delay during the claims process.

Return to:
Sun Life Assurance
Company of Canada
Group LTD Claims
P.O. Box 81830
Wellesley Hills, MA 02481

Fax: (781) 304-5537

I HEREBY AUTHORIZE any physician, healthcare provider, health plan, medical professional, hospital, clinic, laboratory, pharmacy or other medical or healthcare facility that has provided payment, treatment or services to me or on my behalf to disclose my entire medical record and any other protected health information concerning me to the Claims Department of Sun Life Assurance Company of Canada ("the Company"), its subsidiaries, affiliates, third party administrators and reinsurers.

I understand that such information may include records relating to my physical or mental condition such as diagnostic tests, physical examination notes and treatment histories, which may include information regarding the diagnosis and treatment of human immunodeficiency virus (HIV) infection, sexually transmitted diseases, mental illness and the use of alcohol, drugs and tobacco, but shall not include psychotherapy notes.

By my signature below, I acknowledge that any agreements I have made to restrict my protected health information do not apply to this Authorization, and I instruct any physician, healthcare professional, hospital, clinic, medical facility or other healthcare provider to release and disclose my entire medical record without restriction.

I understand that the Company will use the information it obtains to: (a) administer claims; (b) determine or fulfill responsibility for coverage and provision of benefits; (c) administer coverage; and/or (d) conduct other legally permissible activities that relate to any coverage I have or have applied for with the Company.

I understand that the Company will not disclose information it obtains about me except as authorized by this Authorization; as may be required or permitted by law; or as I may further authorize. I understand that if information is redisclosed as permitted by this Authorization, it may no longer be protected by applicable federal privacy law.

The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of employees or their family members, except as specifically allowed by this law. In order to comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. 'Genetic information,' as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.

I understand that: (a) this Authorization shall be valid for 24 months from the date I sign it; (b) I may revoke it at any time by providing written notice to Group Long Term Disability Claims, Sun Life Financial, SC 4328, One Sun Life Executive Park, Wellesley Hills, Massachusetts, 02481, subject to the rights of any person who acted in reliance on it prior to receiving notice of its revocation; and (c) my authorized representative and I are entitled to receive a copy of the Authorization upon request.

A copy of this Authorization shall be as valid as the original.

| Print name of employee or personal representative of employee | Group policy number |
| --- | --- |
| Craig B. Parker | 231948 |
| If Representative, description of your authority or relationship to employee | |

| Signature of employee or personal representative | Date |
| --- | --- |
| X _Craig B Parker_ | 9/29/14 |

# Sun Life Assurance Company of Canada



**Authorization for Release and Disclosure of Psychotherapy Notes**

This Authorization complies with the HIPAA Privacy Rule.

It is important for you to read, sign and submit all Authorizations in this packet. Failure to submit all Authorizations could result in a delay during the claims process.

Return to:
Sun Life Assurance
Company of Canada
Group LTD Claims
P.O. Box 81830
Wellesley Hills, MA 02481

Fax: (781) 304-5537

I HEREBY AUTHORIZE any: physician, healthcare provider, health plan, medical professional, hospital, clinic, or other medical or healthcare facility that has provided payment, treatment or services to me or on my behalf to disclose any psychotherapy notes relating to me to the Claims Department of Sun Life Assurance Company of Canada ("the Company"), its subsidiaries, affiliates, third party administrators and reinsurers.

By my signature below, I acknowledge that any agreements I have made to restrict my protected health information do not apply to this Authorization, and I instruct any physician, healthcare professional, hospital, clinic, medical facility or other healthcare provider to release and disclose all psychotherapy notes relating to me without restriction.

I understand that the Company will use the information it obtains to: (a) administer claims; (b) determine or fulfill responsibility for coverage and provision of benefits; (c) administer coverage; and/or (d) conduct other legally permissible activities that relate to any coverage I have or have applied for with the Company.

I understand that the Company will not disclose information it obtains about me except as authorized by this Authorization; as may be required or permitted by law; or as I may further authorize. I understand that if information is redisclosed as permitted by this Authorization, it may no longer be protected by applicable federal privacy law.

I understand that: (a) this Authorization shall be valid for 24 months from the date I sign it; (b) I may revoke it at any time by providing written notice to Group Long Term Disability Claims, Sun Life Financial, SC 4328, One Sun Life Executive Park, Wellesley Hills, Massachusetts, 02481, subject to the rights of any person who acted in reliance on it prior to receiving notice of its revocation; and (c) my authorized representative and I are entitled to receive a copy of the Authorization upon request.

A copy of this Authorization shall be as valid as the original.

| Print name of employee or personal representative of employee | Group policy number |
|---|---|
| Craig B. Parker | 231948 |
| If Representative, description of your authority or relationship to employee | |
| Signature of employee or personal representative<br>X _Craig B Parker_ | Date<br>9/29/14 |

AR 50

# Sun Life Assurance Company of Canada



**Authorization for Release and Disclosure of Non-Health Related Information**

| | |
|---|---|
| This Authorization complies with the HIPAA Privacy Rule.<br><br>It is important for you to read, sign and submit all Authorizations in this packet. Failure to submit all Authorizations could result in a delay during the claims process.<br><br>Return to:<br>Sun Life Assurance Company of Canada<br>Group LTD Claims<br>P.O. Box 81830<br>Wellesley Hills, MA 02481<br><br>Fax: (781) 304-5537 | I HEREBY AUTHORIZE any: (a) physician, healthcare provider, health plan, medical professional, hospital, clinic, laboratory, therapist, pharmacy or other medical or healthcare facility that has provided payment, treatment or services to me or on my behalf; (b) benefit plan administrator; (c) employer; (d) insurance company; (e) insurance support organization; (f) state department of motor vehicles; (g) consumer reporting agency; (h) financial institution; (i) government agency, or the Medical Information Bureau, Inc., Social Security Administration, Internal Revenue Service or the Veteran's Administration, to disclose to Sun Life Assurance Company of Canada ("the Company"), its subsidiaries, affiliates, third party administrators, and reinsurers, any and all non-health information relating to me, including, but not limited to (a) my employment earnings; (b) my occupational duties; (c) my credit history; (d) insurance benefits I may be receiving or have received; (e) Social Security benefits I, or my dependents, may be receiving or have received; (f) insurance claims I may have filed or insurance coverage I may have; (g) traffic accident reports relating to me; and (h) any other financial information relating to me.<br><br>I understand that the Company will use the information it obtains to: (a) underwrite my application for coverage; (b) make eligibility, risk rating, policy issuance and enrollment determinations; (c) obtain reinsurance; (d) administer claims and determine or fulfill responsibility for coverage and provision of benefits; (e) administer coverage; and/or (f) conduct other legally permissible activities that relate to any coverage I have or have applied for with the Company.<br><br>If this Authorization is signed in connection with a claim for insurance benefits, I hereby authorize the Company to disclose any information it obtains about me to any: (a) insurance company; (b) third party administrator; (c) rehabilitation or vocational professional; and (d) treating physician, psychologist or therapist/counselor of mine, for the purpose of verifying, evaluating, negotiating, determining, and/or adjudicating my claim. I further authorize the Company to disclose any information it obtains about me to the Medical Information Bureau, Inc.<br><br>I understand that the Company will not disclose information it obtains about me except as authorized by this Authorization; as may be required or permitted by law; or as I may further authorize. I understand that if information is redisclosed as permitted by this Authorization, it may no longer be protected by applicable federal privacy law.<br><br>This Authorization shall apply to information relating to my dependents where applicable.<br><br>I understand that: (a) this Authorization shall be valid for 24 months from the date I sign it; (b) I may revoke it at any time by providing written notice to Group Long Term Disability Claims, Sun Life Financial, SC 4328, One Sun Life Executive Park, Wellesley Hills, Massachusetts, 02481, subject to the rights of any person who acted in reliance on it prior to receiving notice of its revocation; and (c) my authorized representative and I are entitled to receive a copy of the Authorization upon request.<br><br>A copy of this Authorization shall be as valid as the original. |

| Print name of employee or personal representative of employee | Group policy number |
|---|---|
| Craig B. Parker | 231948 |
| If Representative, description of your authority or relationship to employee | |
| Signature of employee or personal representative<br>X _Craig B. Parker_ | Date<br>9/29/14 |

# Sun Life Assurance Company of Canada
## Long Term Disability Claim Packet - Claimant



## Reimbursement Agreement

*Return to:*
Sun Life Assurance
Company of Canada
Group LTD Claims
P.O. Box 81830
Wellesley Hills, MA 02481
Fax: (781) 304-5537

I UNDERSTAND and agree that the provisions of Group Long Term Disability Policy No. _____ permit Sun Life Assurance Company of Canada (herein called the "Company") to offset from my monthly disability benefit any benefits received from Social Security and/or Workers' Compensation or as otherwise provided in the Group Long Term Disability Policy. I further UNDERSTAND and agree that the Company may offset any such amounts that I or my dependents are eligible to receive, whether or not I or my dependents are actually receiving said amounts.

In return for the Company's advance payment of the Long Term Disability benefits to which I may be entitled, which advanced amount may be in excess of the amount due to me under the terms of the policy, I, for myself, my heirs, executors, administrators and assigns agree:

1. That I am not currently receiving any benefits from Social Security and/or Workers' Compensation, and/or any Other Income benefit to which I may be eligible as described in the policy.
2. To apply for Social Security disability benefits and/or Workers' Compensation benefits, and/or any Other Income benefit to which I or my dependents may be eligible as described in the policy.
3. If I, and/or my spouse and family receive any disability payments, regardless of the amount, in connection with Social Security and/or Workers' Compensation, and/or any Other Income benefit to which I or my spouse and family may be eligible as described in the policy; I and/or my spouse and family will immediately notify the Company of such disability payments and will pay back all amounts over and above the amounts to which I would be entitled under the policy provisions.
4. I understand that thereafter the Company is entitled to offset any amounts received from Social Security and/or Workers' Compensation, and/or any Other Income benefit to which I may be eligible as described in the policy with the monthly benefit payable under the policy in accordance with the terms of the policy.

I UNDERSTAND that the Company, in reliance on the above statements and promises, has agreed to advance to me the disability benefits to which I or my dependents are entitled under the terms of the policy.

| Print name Craig B. Parker | Group policy number 231948 |
|---|---|
| Signature of employee X Craig B. Parker | Date 9/29/14 |
| Signature of witness X | Date |

AR 52

**Sun Life Assurance Company of Canada**
Wellesley Hills, MA 02481
1-800-247-6875



## PRIVACY INFORMATION NOTICE

This notice explains why Sun Life Assurance Company of Canada ("the Company") collects personal information about you, how we use that information, and under what circumstances we disclose it to others.

### COLLECTION OF INFORMATION
We need to obtain information about you to determine whether we can provide the insurance benefits you have requested. As part of the claims process, we may ask you to undergo a physical examination, submit a statement from your physician, or provide copies of medical tests or other information relating to your health, finances and activities.

We also may collect information about you from other sources. By signing the Authorization For Release And Disclosure of Health Related Information and/or the Authorization For Release And Disclosure of Psychotherapy Notes, you authorize us to obtain medical information about you that we need to underwrite your application or to evaluate your claim. Depending upon your particular circumstances, we may collect additional information about you from the following sources:
- Physicians, healthcare providers, medical professionals, hospitals, clinics or other medical or healthcare related facilities
- Other insurance companies you have applied to for insurance
- Public records, such as Social Security and tax records

### DISCLOSURE OF PERSONAL INFORMATION
When you sign the Authorization For Release And Disclosure of Health Related Information and/or the Authorization For Release And Disclosure of Psychotherapy Notes, you authorize us to disclose information we have about you:
- To our reinsurers
- As required or permitted by law

In the course of the claims process, we may need to disclose information about you to others. The law permits us to disclose such information, without obtaining authorization from you, to:
- Companies that help us conduct our business or perform services on our behalf
- Your physician or treating medical professional
- Comply with federal, state or local laws, respond to a subpoena or comply with an inquiry by a government agency or regulator

### ACCESS, CORRECTION AND AMENDMENT OF PERSONAL INFORMATION
Upon written request to the Company, you can:
- Obtain a copy of the personal recorded information we have about you in our files (a fee may be charged to cover the cost of providing a copy of such information)
- Request that we correct, amend or delete any recorded personal information about you in our possession
- File your own statement of facts if you believe that the recorded personal information we have about you is incorrect

To take any of these actions, please contact us at the following address for further instructions:
Sun Life Assurance Company of Canada
Group Long Term Disability Claims
P.O. Box 81830
Wellesley Hills, MA 02481

Sun Life Assurance Company of Canada is a member of the Sun Life Financial group of companies.
© 2012 Sun Life Assurance Company of Canada, Wellesley Hills, MA 02481. All rights reserved.
Sun Life Financial and the globe symbol are registered trademarks of Sun Life Assurance Company of Canada.





Sun Life Assurance
Company of Canada
One Sun Life Executive Park
Wellesley Hills, MA 02481-5699

# Fax

| | | | |
|---|---|---|---|
| **Date:** | Friday, October 10, 2014 8:22:06 AM | **From:** | |
| **To:** | STD | **Fax:** | 781-304-5599 |
| **Company:** | | **Pages:** | 14 |

From:    Stacey LeCoultre on 10/09/2014 08:46 AM MDT
To:   USHO Group AdviceToPay@SunLife
cc:
Subject:   Fw: Craig Parker LTD Claim

Please forward to Claims Service for an LTD file.

Thank you,

Stacey LeCoultre
Regional Claim Center Team Lead
Sun Life Financial

Tel: 855-629-8811 ext 450 6748
Fax: 781-304-5599
Stacey.LeCoultre@sunlife.com

If transmission is illegible or incomplete, contact the sender immediately. This material is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, proprietary, confidential and exempt from disclosure.  If you are not the intended recipient or the person responsible for delivering the material to the intended recipient, you are notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, we would appreciate it if you would please notify the sender immediately by telephone (collect if required) and destroy this material accordingly.
**www.sunlife-usa.com**

# Sun Life Assurance Company of Canada
## Long Term Disability Claim Packet - Claimant



---

**Instructions for the Claimant**

Please mail all documents 4-6 weeks before the end of your elimination period.

Please make sure to initiate the Long Term Disability claim filing process as soon as it first appears that your disability will extend beyond the required elimination period. Please refer to your group insurance policy to determine the length of the elimination period.

**It is the responsibility of the claimant to ensure that the Employer's Statement and the Attending Physician's Statement are submitted directly to Sun Life Financial.**

**Please be sure to submit the Employee's Statement directly to Sun Life Financial.**

**The Employee must:**

☒ Sign and date the Employee's Statement

☒ Sign and date the Authorizations

☒ Sign and date the Reimbursement Agreement

☒ Have the employer complete and return the Employer's Statement to Sun Life Financial

☒ Have the physician complete and return the Attending Physician's Statement to Sun Life Financial

☒ Attach a copy of a photo ID (i.e., license or passport)

☒ Attach a detailed job description (from employer)

Mail or fax the completed claim form to:

Sun Life Assurance Company of Canada
Group Long Term Disability Claims
P.O. Box 81830
Wellesley Hills, MA 02481
Fax: (781) 304-5537

**Failure to provide complete and accurate information could result in the need for additional claims investigation which could delay the initial benefit payment.**

---

AR 56

# Sun Life Assurance Company of Canada
## Long Term Disability Claim Packet - Claimant



---

**▌Fraud Warnings**

---

State law requires that we notify you of the following:

**Fraud warning**: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Fraud warning—AK**: A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete, or misleading information may be prosecuted under state law.

**Fraud warning—AL**: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**Fraud warning—AR, LA, MA, MN, NM, RI, TX, and WV**: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Fraud warning—AZ**: For your protection Arizona law requires the following statement to appear on this form.  Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**Fraud warning—CA**: For your protection California law requires the following to appear on this form:  Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Fraud warning—CO**: It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company.  Penalties may include imprisonment, fines, denial of insurance and civil damages.  Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Fraud warning—District of Columbia**: Any person who knowingly and willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly and willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Fraud warning—FL**: Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Fraud warning—IN, ID, and DE**: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

---

AR 57

**▌Fraud Warnings continued**

**Fraud warning—KS**: Any person who knowingly and with intent to defraud any insurance company or other person files an Application for insurance or statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto may be guilty of insurance fraud as determined by a court of law.

**Fraud warning—KY**: Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim, containing any materially false information, or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which may be a crime and subjects such person to criminal and civil penalties.

**Fraud warning—MD**: Any person who knowingly OR willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly OR willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Fraud warning—ME, TN, VA, and WA**: It is a crime to knowingly provide false, incomplete or misleading information to an insurance company. Penalties include imprisonment, fines and denial of insurance benefits.

**Fraud warning—NH**: Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**Fraud warning—NJ**: Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**Fraud warning—OH**: Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Fraud warning—OK**: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Fraud warning—OR**: Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may have violated state law.

**Fraud warning—VT**: Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.

*Continued on next page*

AR 58

# Sun Life Assurance Company of Canada
## Long Term Disability Claim Packet - Claimant



## Employee's Statement

### 1 General Information

Please print clearly.

Return to:
Sun Life Assurance
Company of Canada
Group LTD Claims,
SC 4328
1 Sun Life Exec. Park
P.O. Box 81830
Wellesley Hills, MA 02481
Fax: (781) 304-5537

| Name of employee (first, middle initial, last) ☒ M ☐ F | Social Security number | Group policy number |
|---|---|---|
| Craig B. Parker | ▉ | 231948 |

| Street address | City | State | Zip Code |
|---|---|---|---|
| ▉ | Olathe | KS | 66061 |

| Occupation | Date of birth | Phone number | Marital status |
|---|---|---|---|
| Engineering Team Leader | ▉1961 | 913-829-9311 | M |

| Spouse's name (first, middle initial, last) | Social Security number | Date of birth |
|---|---|---|
| Amy D. Parker | ▉ | ▉/1969 |

Is your spouse employed ..................................................... ☐ Yes ☒ No

Names and dates of birth of your children (under age 25)

### 2 Information About the Condition Causing Your Disability

If a motor vehicle accident has occurred and is the cause of the disability, a motor vehicle accident report is required to be included with this statement.

Date of accident or date you first noticed symptoms of your illness    March 2012

Describe in detail how, when and where the accident occurred –OR – Describe the nature of your illness/condition and its first symptoms.
Dizziness, sweating, and muscle spasms after eating. Symptoms have increased since that time.

Is your condition due to injury or sickness related to your job?.................... ☐ Yes ☒ No
If yes, please explain below.

| Date you were first treated by a physician | Last date worked prior to disability | Did you work a full day? ☒ Yes ☐ No |
|---|---|---|
| March 2012 | 04/04/2014 | |

| Date first unable to work | Have you returned to work? | |
|---|---|---|
| 04/07/2014 | ☒ Yes ☐ No  If yes, Date: 09/22/2014<br>restrictions ☐ Full capacity | ☒ With |

If work-related, have you filed/do you intend to file, a Workers' Compensation claim? ☐ Yes ☒ No
If yes, provide date:

### 3 Your Treating Physician(s)

If you need more space, check here ☐ and attach a separate page.

| Name of physician | Specialty |
|---|---|
| Dr. Michael Brown, ND | Integrative Medicine |

| Address |
|---|
| 8717 W. 110th St<br>Suite 270<br>Overland Park, KS 66210 |

| Telephone number | Fax number | Date of last visit | Date of next visit |
|---|---|---|---|
| 913-579-4437 | | 09/24/2014 | 09/30/2014 |

Have you discussed a return to work plan with this physician?.................... ☒ Yes ☐ No

*Continued on next page*

**3  Your Treating Physician(s) continued**

| Name of physician | | | Specialty | |
|---|---|---|---|---|
| Address | | | | |
| Telephone number | Fax number | Date of last visit | | Date of next visit |
| Have you discussed a return to work plan with this physician?.................................... ☐ Yes ☐ No | | | | |

**4  Hospitals**

If you need more space, check here ☐ and attach a separate page.

| | Name of hospital | Telephone number | Dates of confinement to |
|---|---|---|---|
| 1. | | | |
| 2. | Name of hospital | Telephone number | Dates of confinement to |

**5  Other Income Information**

Are you currently receiving, or entitled to receive, benefits from any of the following sources?

Check all that apply and provide award/denial notice or application associated with any source of income.

| | Source of income | Amount of each payment | Weekly or monthly? | Period/date(s) covered by payment |
|---|---|---|---|---|
| ☐ | Sick Pay | $ | ☐ Wkly ☐ Mthly | |
| ☐ | Salary Continuance | $ | ☐ Wkly ☐ Mthly | |
| ☐ | State Disability | $ | ☐ Wkly ☐ Mthly | |
| ☐ | Workers' Compensation | $ | ☐ Wkly ☐ Mthly | |
| ☐ | Unemployment Compensation | $ | ☐ Wkly ☐ Mthly | |
| ☐ | Social Security Disability/Retirement | $ | ☐ Wkly ☐ Mthly | |
| ☐ | Disability/Retirement Pension | $ | ☐ Wkly ☐ Mthly | |
| ☐ | Automobile No-fault Insurance | $ | ☐ Wkly ☐ Mthly | |
| ☐ | Union Disability | $ | ☐ Wkly ☐ Mthly | |
| ☐ | Severance | $ | ☐ Wkly ☐ Mthly | |
| ☐ | Other: | $ | ☐ Wkly ☐ Mthly | |

**6  Education and Training Information**

Please indicate your highest level of education completed.
☐ Less than High School (Grade: _____ )     ☐ High School (GED)     ☒ College

Name of school / college
Wichita State University/Ohio University

| Degree | Dates attended | Field of study |
|---|---|---|
| BSEE/MSEE | 1979-84/1987-89 | Electrical Engineering |

Additional Course Work, Education, Training, Special Skills and/or Hobbies

**7  Experience Information**

**Military Experience**

| Did you serve in the armed forces?...... ☐ Yes  ☒ No | | Branch of service |
|---|---|---|
| Highest rank | Dates of service to | Specialty |

*Continued on next page*

**7  Experience Information continued**

If you have a resume, please attach a copy. You may use this section to indicate any additional experience.

**Work Experience**

Please list chronologically all of the jobs you have held. Start with your current or most recent job. Provide as many details as possible.

| Name of Employer | Title | Dates of employment |
|---|---|---|
| Garmin | Engineering Team Leader | 1997   to   2014 |
| Department | Tasks and duties (please be specific) | |
| Aviation Engineering | Lead electrical design team | |

| Name of Employer | Title | Dates of employment |
|---|---|---|
| AlliedSignal | Senior Design Engineer | 1989   to   1997 |
| Department | Tasks and duties (please be specific) | |
| Engineering | Design Engineer | |

| Name of Employer | Title | Dates of employment |
|---|---|---|
| Bendix/King | Product Development Engineer | 1984   to   1986 |
| Department | Tasks and duties (please be specific) | |
| Engineering | Design Engineer | |

**Skills Development**

What, if any, training or education would you be interested in pursuing?

**8  Checklist of Required Attachments**

Please mail all documents 4-6 weeks before the end of your elimination period. **Failure to provide the following information could result in a delay of the initial benefit payment.**

☒ Sign and date the Employee's Statement
☒ Sign and date the Authorizations
☒ Sign and date the Reimbursement Agreement
☐ Employer completed and returned the Employer's Statement
☒ Physician completed and returned the Attending Physician's Statement
☒ Attach a copy of a photo ID (i.e., license or passport)

We will contact you as soon as we have received and reviewed your claim forms and medical records. In the meantime, should you have any questions, please call our Customer Service Center at 1-800-247-6875.

**9  Signature**

Reminder: Please be sure to sign and return any Authorization statements included in this packet.

I certify that the above statements are true and complete. I have read and understand the Fraud Warning on pages 2 and 3 of this packet.

| Employee's signature | Date signed |
|---|---|
| X   *Craig B Parker* | 9/29/14 |

This page left blank intentionally

AR 62

# Sun Life Assurance Company of Canada



## Authorization

**Authorization for Release and Disclosure of Health Related Information**

This Authorization complies with the HIPAA Privacy Rule.

It is important for you to read, sign and submit all Authorizations in this packet. Failure to submit all Authorizations could result in a delay during the claims process.

Return to:
Sun Life Assurance Company of Canada
Group LTD Claims
P.O. Box 81830
Wellesley Hills, MA 02481
Fax: (781) 304-5537

I HEREBY AUTHORIZE any physician, healthcare provider, health plan, medical professional, hospital, clinic, laboratory, pharmacy or other medical or healthcare facility that has provided payment, treatment or services to me or on my behalf to disclose my entire medical record and any other protected health information concerning me to the Claims Department of Sun Life Assurance Company of Canada ("the Company"), its subsidiaries, affiliates, third party administrators and reinsurers.

I understand that such information may include records relating to my physical or mental condition such as diagnostic tests, physical examination notes and treatment histories, which may include information regarding the diagnosis and treatment of human immunodeficiency virus (HIV) infection, sexually transmitted diseases, mental illness and the use of alcohol, drugs and tobacco, but shall not include psychotherapy notes.

By my signature below, I acknowledge that any agreements I have made to restrict my protected health information do not apply to this Authorization, and I instruct any physician, healthcare professional, hospital, clinic, medical facility or other healthcare provider to release and disclose my entire medical record without restriction.

I understand that the Company will use the information it obtains to: (a) administer claims; (b) determine or fulfill responsibility for coverage and provision of benefits; (c) administer coverage; and/or (d) conduct other legally permissible activities that relate to any coverage I have or have applied for with the Company.

I understand that the Company will not disclose information it obtains about me except as authorized by this Authorization; as may be required or permitted by law; or as I may further authorize. I understand that if information is redisclosed as permitted by this Authorization, it may no longer be protected by applicable federal privacy law.

The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of employees or their family members, except as specifically allowed by this law. In order to comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. 'Genetic information,' as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.

I understand that: (a) this Authorization shall be valid for 24 months from the date I sign it; (b) I may revoke it at any time by providing written notice to Group Long Term Disability Claims, Sun Life Financial, SC 4328, One Sun Life Executive Park, Wellesley Hills, Massachusetts, 02481, subject to the rights of any person who acted in reliance on it prior to receiving notice of its revocation; and (c) my authorized representative and I are entitled to receive a copy of the Authorization upon request.

A copy of this Authorization shall be as valid as the original.

| Print name of employee or personal representative of employee | Group policy number |
|---|---|
| Craig B. Parker | 231948 |
| If Representative, description of your authority or relationship to employee | |
| Signature of employee or personal representative | Date |
| X  Craig B Parker | 9/29/14 |

AR 63

# Sun Life Assurance Company of Canada



**Sun Life Financial®**

**▌ Authorization for Release and Disclosure of Psychotherapy Notes**

This Authorization complies with the HIPAA Privacy Rule.

It is important for you to read, sign and submit all Authorizations in this packet. Failure to submit all Authorizations could result in a delay during the claims process.

Return to:
Sun Life Assurance Company of Canada
Group LTD Claims
P.O. Box 81830
Wellesley Hills, MA 02481

Fax: (781) 304-5537

I HEREBY AUTHORIZE any: physician, healthcare provider, health plan, medical professional, hospital, clinic, or other medical or healthcare facility that has provided payment, treatment or services to me or on my behalf to disclose any psychotherapy notes relating to me to the Claims Department of Sun Life Assurance Company of Canada ("the Company"), its subsidiaries, affiliates, third party administrators and reinsurers.

By my signature below, I acknowledge that any agreements I have made to restrict my protected health information do not apply to this Authorization, and I instruct any physician, healthcare professional, hospital, clinic, medical facility or other healthcare provider to release and disclose all psychotherapy notes relating to me without restriction.

I understand that the Company will use the information it obtains to: (a) administer claims; (b) determine or fulfill responsibility for coverage and provision of benefits; (c) administer coverage; and/or (d) conduct other legally permissible activities that relate to any coverage I have or have applied for with the Company.

I understand that the Company will not disclose information it obtains about me except as authorized by this Authorization; as may be required or permitted by law; or as I may further authorize. I understand that if information is redisclosed as permitted by this Authorization, it may no longer be protected by applicable federal privacy law.

I understand that: (a) this Authorization shall be valid for 24 months from the date I sign it; (b) I may revoke it at any time by providing written notice to Group Long Term Disability Claims, Sun Life Financial, SC 4328, One Sun Life Executive Park, Wellesley Hills, Massachusetts, 02481, subject to the rights of any person who acted in reliance on it prior to receiving notice of its revocation; and (c) my authorized representative and I are entitled to receive a copy of the Authorization upon request. A copy of this Authorization shall be as valid as the original.

| Print name of employee or personal representative of employee | Group policy number |
|---|---|
| Craig B Parker | 231948 |
| If Representative, description of your authority or relationship to employee | |
| Signature of employee or personal representative | Date |
| X Craig B Parker | 9/29/14 |

AR 64

# Sun Life Assurance Company of Canada



**Authorization for Release and Disclosure of Non-Health Related Information**

This Authorization complies with the HIPAA Privacy Rule.

It is important for you to read, sign and submit all Authorizations in this packet. Failure to submit all Authorizations could result in a delay during the claims process.

Return to:
Sun Life Assurance
Company of Canada
Group LTD Claims
P.O. Box 81830
Wellesley Hills, MA 02481

Fax: (781) 304-5537

I HEREBY AUTHORIZE any: (a) physician, healthcare provider, health plan, medical professional, hospital, clinic, laboratory, therapist, pharmacy or other medical or healthcare facility that has provided payment, treatment or services to me or on my behalf; (b) benefit plan administrator; (c) employer; (d) insurance company; (e) insurance support organization; (f) state department of motor vehicles; (g) consumer reporting agency; (h) financial institution; (i) government agency, or the Medical Information Bureau, Inc., Social Security Administration, Internal Revenue Service or the Veteran's Administration, to disclose to Sun Life Assurance Company of Canada ("the Company"), its subsidiaries, affiliates, third party administrators, and reinsurers, any and all non-health information relating to me, including, but not limited to (a) my employment earnings; (b) my occupational duties; (c) my credit history; (d) insurance benefits I may be receiving or have received; (e) Social Security benefits I, or my dependents, may be receiving or have received; (f) insurance claims I may have filed or insurance coverage I may have; (g) traffic accident reports relating to me; and (h) any other financial information relating to me.

I understand that the Company will use the information it obtains to: (a) underwrite my application for coverage; (b) make eligibility, risk rating, policy issuance and enrollment determinations; (c) obtain reinsurance; (d) administer claims and determine or fulfill responsibility for coverage and provision of benefits; (e) administer coverage; and/or (f) conduct other legally permissible activities that relate to any coverage I have or have applied for with the Company.

If this Authorization is signed in connection with a claim for insurance benefits, I hereby authorize the Company to disclose any information it obtains about me to any: (a) insurance company; (b) third party administrator; (c) rehabilitation or vocational professional; and (d) treating physician, psychologist or therapist/counselor of mine, for the purpose of verifying, evaluating, negotiating, determining, and/or adjudicating my claim. I further authorize the Company to disclose any information it obtains about me to the Medical Information Bureau, Inc.

I understand that the Company will not disclose information it obtains about me except as authorized by this Authorization; as may be required or permitted by law; or as I may further authorize. I understand that if information is redisclosed as permitted by this Authorization, it may no longer be protected by applicable federal privacy law.

This Authorization shall apply to information relating to my dependents where applicable.

I understand that: (a) this Authorization shall be valid for 24 months from the date I sign it; (b) I may revoke it at any time by providing written notice to Group Long Term Disability Claims, Sun Life Financial, SC 4328, One Sun Life Executive Park, Wellesley Hills, Massachusetts, 02481, subject to the rights of any person who acted in reliance on it prior to receiving notice of its revocation; and (c) my authorized representative and I are entitled to receive a copy of the Authorization upon request.

A copy of this Authorization shall be as valid as the original.

| Print name of employee or personal representative of employee | Group policy number |
|---|---|
| Craig B. Parker | 231948 |
| If Representative, description of your authority or relationship to employee | |
| Signature of employee or personal representative<br>X _Craig B. Parker_ | Date<br>9/29/14 |

AR 65

# Sun Life Assurance Company of Canada

## Long Term Disability Claim Packet - Claimant



### Reimbursement Agreement

*Return to:*
Sun Life Assurance
Company of Canada
Group LTD Claims
P.O. Box 81830
Wellesley Hills, MA 02481
Fax: (781) 304-5537

*I UNDERSTAND and agree that the provisions of Group Long Term Disability Policy No. _____ permit Sun Life Assurance Company of Canada (herein called the "Company") to offset from my monthly disability benefit any benefits received from Social Security and/or Workers' Compensation or as otherwise provided in the Group Long Term Disability Policy. I further UNDERSTAND and agree that the Company may offset any such amounts that I or my dependents are eligible to receive, whether or not I or my dependents are actually receiving said amounts.*

*In return for the Company's advance payment of the Long Term Disability benefits to which I may be entitled, which advanced amount may be in excess of the amount due to me under the terms of the policy, I, for myself, my heirs, executors, administrators and assigns agree:*

1. That I am not currently receiving any benefits from Social Security and/or Workers' Compensation, and/or any Other Income benefit to which I may be eligible as described in the policy.
2. To apply for Social Security disability benefits and/or Workers' Compensation benefits, and/or any Other Income benefit to which I or my dependents may be eligible as described in the policy.
3. If I, and/or my spouse and family receive any disability payments, regardless of the amount, in connection with Social Security and/or Workers' Compensation, and/or any Other Income benefit to which I or my spouse and family may be eligible as described in the policy; I and/or my spouse and family will immediately notify the Company of such disability payments and will pay back all amounts over and above the amounts to which I would be entitled under the policy provisions.
4. I understand that thereafter the Company is entitled to offset any amounts received from Social Security and/or Workers' Compensation, and/or any Other Income benefit to which I may be eligible as described in the policy with the monthly benefit payable under the policy in accordance with the terms of the policy.

I UNDERSTAND that the Company, in reliance on the above statements and promises, has agreed to advance to me the disability benefits to which I or my dependents are entitled under the terms of the policy.

| Print name Craig B. Parker | Group policy number 231948 |
|---|---|
| Signature of employee X Craig B Parker | Date 9/29/14 |
| Signature of witness X | Date |

AR 66

**Sun Life Assurance Company of Canada**
Wellesley Hills, MA 02481
1-800-247-6875



## PRIVACY INFORMATION NOTICE

This notice explains why Sun Life Assurance Company of Canada ("the Company") collects personal information about you, how we use that information, and under what circumstances we disclose it to others.

### COLLECTION OF INFORMATION

We need to obtain information about you to determine whether we can provide the insurance benefits you have requested. As part of the claims process, we may ask you to undergo a physical examination, submit a statement from your physician, or provide copies of medical tests or other information relating to your health, finances and activities.

We also may collect information about you from other sources. By signing the Authorization For Release And Disclosure of Health Related Information and/or the Authorization For Release And Disclosure of Psychotherapy Notes, you authorize us to obtain medical information about you that we need to underwrite your application or to evaluate your claim. Depending upon your particular circumstances, we may collect additional information about you from the following sources:
- Physicians, healthcare providers, medical professionals, hospitals, clinics or other medical or healthcare related facilities
- Other insurance companies you have applied to for insurance
- Public records, such as Social Security and tax records

### DISCLOSURE OF PERSONAL INFORMATION

When you sign the Authorization For Release And Disclosure of Health Related Information and/or the Authorization For Release And Disclosure of Psychotherapy Notes, you authorize us to disclose information we have about you:
- To our reinsurers
- As required or permitted by law

In the course of the claims process, we may need to disclose information about you to others. The law permits us to disclose such information, without obtaining authorization from you, to:
- Companies that help us conduct our business or perform services on our behalf
- Your physician or treating medical professional
- Comply with federal, state or local laws, respond to a subpoena or comply with an inquiry by a government agency or regulator

### ACCESS, CORRECTION AND AMENDMENT OF PERSONAL INFORMATION

Upon written request to the Company, you can:
- Obtain a copy of the personal recorded information we have about you in our files (a fee may be charged to cover the cost of providing a copy of such information)
- Request that we correct, amend or delete any recorded personal information about you in our possession
- File your own statement of facts if you believe that the recorded personal information we have about you is incorrect

To take any of these actions, please contact us at the following address for further instructions:
Sun Life Assurance Company of Canada
Group Long Term Disability Claims
P.O. Box 81830
Wellesley Hills, MA 02481

Sun Life Assurance Company of Canada is a member of the Sun Life Financial group of companies.
© 2012 Sun Life Assurance Company of Canada, Wellesley Hills, MA 02481. All rights reserved.
Sun Life Financial and the globe symbol are registered trademarks of Sun Life Assurance Company of Canada.

AR 67



 **Fw: Craig Parker LTD Claim**
Ashley Mehlhaff   to  Group Employer Support Inbox                    2014-10-09 10 49 AM

Hi,
Please respond to BA
Thank you,

Ashley Mehlhaff
Customer Service Coordinator
EBG Customer Service
Sun Life Financial
550 W.T Hill Blvd  South
Lethbridge, AB  T1J 4Z6
Toll Free  1-866-820-8408 ext  450 6721

----- Forwarded by Ashley Mehlhaff/ServiceCentre/Canada/SunLife on 10/09/2014 08:48 AM -----

"McEntarfer, Sally"
<Sally McEntarfer@garmin.com>          To   "Stacey LeCoultre@sunlife com"
10/09/2014 07.51 AM                           <Stacey LeCoultre@sunlife com>,
                                         cc   Tracy Brennan <TBrennan@holmesmurphy com>, Jennifer
                                              Gilmore <JGilmore@holmesmurphy com>,
                                              "myclaimdocuments@sunlife com"
                                              <myclaimdocuments@sunlife com>
                                    Subject   Craig Parker LTD Claim


Hi Stacey,
I wasn't sure who to send this too since it is LTD   Can you forward it on for
me?

Thanks!

---

CONFIDENTIALITY NOTICE: This email and any attachments are for the sole use of
the intended recipient(s) and contain information that may be confidential
and/or legally privileged. If you have received this email in error, please
notify the sender by reply email and delete the message. Any disclosure,
copying, distribution or use of this communication (including attachments) by
someone other than the intended recipient is prohibited. Thank you.

20141009084543328 pdf

AR 69

# Sun Life Assurance Company of Canada
## Long Term Disability Claim Packet - Claimant



### Instructions for the Claimant

Please mail all documents 4-6 weeks before the end of your elimination period.

Please make sure to initiate the Long Term Disability claim filing process as soon as it first appears that your disability will extend beyond the required elimination period. Please refer to your group insurance policy to determine the length of the elimination period.

**It is the responsibility of the claimant to ensure that the Employer's Statement and the Attending Physician's Statement are submitted directly to Sun Life Financial.**

**Please be sure to submit the Employee's Statement directly to Sun Life Financial.**

**The Employee must:**

☒ Sign and date the Employee's Statement

☒ Sign and date the Authorizations

☒ Sign and date the Reimbursement Agreement

☒ Have the employer complete and return the Employer's Statement to Sun Life Financial

☒ Have the physician complete and return the Attending Physician's Statement to Sun Life Financial

☒ Attach a copy of a photo ID (i.e., license or passport)

☒ Attach a detailed job description (from employer)

Mail or fax the completed claim form to:

Sun Life Assurance Company of Canada
Group Long Term Disability Claims
P.O. Box 81830
Wellesley Hills, MA 02481
Fax: (781) 304-5537

**Failure to provide complete and accurate information could result in the need for additional claims investigation which could delay the initial benefit payment.**

AR 70

# Sun Life Assurance Company of Canada
## Long Term Disability Claim Packet - Claimant

Sun
Life Financial®

## Fraud Warnings

State law requires that we notify you of the following:

**Fraud warning**: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Fraud warning—AK**: A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete, or misleading information may be prosecuted under state law.

**Fraud warning—AL**: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**Fraud warning—AR, LA, MA, MN, NM, RI, TX, and WV**: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Fraud warning—AZ**: For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**Fraud warning—CA**: For your protection California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Fraud warning—CO**: It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies

**Fraud warning—District of Columbia**: Any person who knowingly and willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly and willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Fraud warning—FL**: Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Fraud warning—IN, ID, and DE**: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

AR 71

## Fraud Warnings continued

**Fraud warning—KS**: Any person who knowingly and with intent to defraud any insurance company or other person files an Application for insurance or statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto may be guilty of insurance fraud as determined by a court of law.

**Fraud warning—KY** Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim, containing any materially false information, or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which may be a crime and subjects such person to criminal and civil penalties.

**Fraud warning—MD:** Any person who knowingly OR willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly OR willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Fraud warning—ME, TN, VA, and WA**: It is a crime to knowingly provide false, incomplete or misleading information to an insurance company. Penalties include imprisonment, fines and denial of insurance benefits.

**Fraud warning—NH**. Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**Fraud warning—NJ**: Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**Fraud warning—OH**: Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Fraud warning—OK**: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Fraud warning—OR**: Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may have violated state law.

**Fraud warning—VT**. Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.

*Continued on next page*

AR 72

# Sun Life Assurance Company of Canada
## Long Term Disability Claim Packet - Claimant



## Employee's Statement

### 1 General Information

Please print clearly.

Return to:
Sun Life Assurance
Company of Canada
Group LTD Claims,
SC 4328
1 Sun Life Exec. Park
P.O. Box 81830
Wellesley Hills, MA 02481
Fax: (781) 304-5537

| Name of employee (first, middle initial, last) ☒ M ☐ F | Social Security number | Group policy number |
|---|---|---|
| Craig B. Parker | | 231948 |

| Street address | | City | State | Zip Code |
|---|---|---|---|---|
| | | Olathe | KS | 66061 |

| Occupation | Date of birth | Phone number | Marital status |
|---|---|---|---|
| Engineering Team Leader | 1961 | 913-829-9311 | M |

| Spouse's name (first, middle initial, last) | Social Security number | Date of birth |
|---|---|---|
| Amy D. Parker | | 1969 |

Is your spouse employed ................................................................. ☐ Yes ☒ No

Names and dates of birth of your children (under age 25)

### 2 Information About the Condition Causing Your Disability

If a motor vehicle accident has occurred and is the cause of the disability, a motor vehicle accident report is required to be included with this statement.

Date of accident or date you first noticed symptoms of your illness __March 2012__

Describe in detail how, when and where the accident occurred –OR – Describe the nature of your illness/condition and its first symptoms

Dizziness, sweating, and muscle spasms after eating. Symptoms have increased since that time.

Is your condition due to injury or sickness related to your job? ................ ☐ Yes ☒ No
If yes, please explain below.

| Date you were first treated by a physician | Last date worked prior to disability | Did you work a full day? ☒ Yes ☐ No |
|---|---|---|
| March 2012 | 04/04/2014 | |

| Date first unable to work | Have you returned to work? | |
|---|---|---|
| 04/07/2014 | ☒ Yes ☐ No   If yes, Date: 09/22/2014   ☐ restrictions ☐ Full capacity | ☒ With |

If work-related, have you filed/do you intend to file, a Workers' Compensation claim? ☐ Yes ☒ No
If yes, provide date:

### 3 Your Treating Physician(s)

If you need more space, check here ☐ and attach a separate page.

| Name of physician | Specialty |
|---|---|
| Dr. Michael Brown, ND | Integrative Medicine |

| Address | | | |
|---|---|---|---|
| 8717 W. 110th St | | | |
| Suite 270 | | | |
| Overland Park, KS 66210 | | | |

| Telephone number | Fax number | Date of last visit | Date of next visit |
|---|---|---|---|
| 913-579-4437 | | 09/24/2014 | 09/30/2014 |

Have you discussed a return to work plan with this physician? ...................... ☒ Yes ☐ No

*Continued on next page*

AR 73

## 3  Your Treating Physician(s) continued

| Name of physician | | | Specialty |
|---|---|---|---|
| Address | | | |
| Telephone number | Fax number | Date of last visit | Date of next visit |
| Have you discussed a return to work plan with this physician?........ ....................... ☐ Yes ☐ No | | | |

## 4  Hospitals

If you need more space, check here ☐ and attach a separate page.

| | Name of hospital | Telephone number | Dates of confinement to |
|---|---|---|---|
| 1. | | | |
| 2. | Name of hospital | Telephone number | Dates of confinement to |

## 5  Other Income Information

Are you currently receiving, or entitled to receive, benefits from any of the following sources?

Check all that apply *and provide* award/denial notice or application associated with any source of income.

| | Source of income | Amount of each payment | Weekly or monthly? | Period/date(s) covered by payment |
|---|---|---|---|---|
| ☐ | Sick Pay | $ | ☐ Wkly ☐ Mthly | |
| ☐ | *Salary Continuance* | $ | ☐ Wkly ☐ Mthly | |
| ☐ | State Disability | $ | ☐ Wkly ☐ Mthly | |
| ☐ | Workers' Compensation | $ | ☐ Wkly ☐ Mthly | |
| ☐ | Unemployment Compensation | $ | ☐ Wkly ☐ Mthly | |
| ☐ | Social Security Disability/Retirement | $ | ☐ Wkly ☐ Mthly | |
| ☐ | Disability/Retirement Pension | $ | ☐ Wkly ☐ Mthly | |
| ☐ | Automobile No-fault Insurance | $ | ☐ Wkly ☐ Mthly | |
| ☐ | Union Disability | $ | ☐ Wkly ☐ Mthly | |
| ☐ | Severance | $ | ☐ Wkly ☐ Mthly | |
| ☐ | Other: | $ | ☐ Wkly ☐ Mthly | |

## 6  Education and Training Information

Please indicate your highest level of education completed.
☐ Less than High School (Grade: _____)    ☐ High School (GED)    ☒ College

| Name of school / college | | |
|---|---|---|
| Wichita State University/Ohio University | | |
| Degree | Dates attended | Field of study |
| BSEE/MSEE | 1979-84/1987-89 | Electrical Engineering |
| Additional Course Work, Education, Training, Special Skills and/or Hobbies | | |
| | | |

## 7  Experience Information

Military Experience

| Did you serve in the armed forces?...... ☐ Yes ☒ No | | Branch of service |
|---|---|---|
| Highest rank | Dates of service to | Specialty |

*Continued on next page*

AR 74

## 7  Experience Information continued

If you have a resume, please attach a copy. You may use this section to indicate any additional experience.

### Work Experience

Please list chronologically all of the jobs you have held. Start with your current or most recent job. Provide as many details as possible.

| Name of Employer | Title | Dates of employment |
|---|---|---|
| Garmin | Engineering Team Leader | 1997   to   2014 |
| Department | Tasks and duties (please be specific) | |
| Aviation Engineering | Lead electrical design team | |

| Name of Employer | Title | Dates of employment |
|---|---|---|
| AlliedSignal | Senior Design Engineer | 1989   to   1997 |
| Department | Tasks and duties (please be specific) | |
| Engineering | Design Engineer | |

| Name of Employer | Title | Dates of employment |
|---|---|---|
| Bendix/King | Product Development Engineer | 1984   to   1986 |
| Department | Tasks and duties (please be specific) | |
| Engineering | Design Engineer | |

### Skills Development

| What, if any, training or education would you be interested in pursuing? |
|---|
| |

## 8  Checklist of Required Attachments

Please mail all documents 4-6 weeks before the end of your elimination period. **Failure to provide the following information could result in a delay of the initial benefit payment.**

☒ Sign and date the Employee's Statement

☒ Sign and date the Authorizations

☒ Sign and date the Reimbursement Agreement

☐ Employer completed and returned the Employer's Statement

☒ Physician completed and returned the Attending Physician's Statement

☒ Attach a copy of a photo ID (i.e., license or passport)

We will contact you as soon as we have received and reviewed your claim forms and medical records. In the meantime, should you have any questions, please call our Customer Service Center at 1-800-247-6875.

## 9  Signature

Reminder: Please be sure to sign and return any Authorization statements included in this packet.

I certify that the above statements are true and complete. I have read and understand the Fraud Warning on pages 2 and 3 of this packet.

| Employee's signature | Date signed |
|---|---|
| X  *Craig B Parker* | 9/29/14 |

This page left blank intentionally

AR 76

# Sun Life Assurance Company of Canada


Sun Life Financial®

## Authorization

### Authorization for Release and Disclosure of Health Related Information

This Authorization complies with the HIPAA Privacy Rule.

It is important for you to read, sign and submit all Authorizations in this packet. Failure to submit all Authorizations could result in a delay during the claims process.

Return to:
Sun Life Assurance
Company of Canada
Group LTD Claims
P.O. Box 81830
Wellesley Hills, MA 02481

Fax: (781) 304-5537

I HEREBY AUTHORIZE any physician, healthcare provider, health plan, medical professional, hospital, clinic, laboratory, pharmacy or other medical or healthcare facility that has provided payment, treatment or services to me or on my behalf to disclose my entire medical record and any other protected health information concerning me to the Claims Department of Sun Life Assurance Company of Canada ("the Company"), its subsidiaries, affiliates, third party administrators and reinsurers.

I understand that such information may include records relating to my physical or mental condition such as diagnostic tests, physical examination notes and treatment histories, which may include information regarding the diagnosis and treatment of human immunodeficiency virus (HIV) infection, sexually transmitted diseases, mental illness and the use of alcohol, drugs and tobacco, but shall not include psychotherapy notes.

By my signature below, I acknowledge that any agreements I have made to restrict my protected health information do not apply to this Authorization, and I instruct any physician, healthcare professional, hospital, clinic, medical facility or other healthcare provider to release and disclose my entire medical record without restriction.

I understand that the Company will use the information it obtains to: (a) administer claims; (b) determine or fulfill responsibility for coverage and provision of benefits; (c) administer coverage; and/or (d) conduct other legally permissible activities that relate to any coverage I have or have applied for with the Company.

I understand that the Company will not disclose information it obtains about me except as authorized by this Authorization; as may be required or permitted by law; or as I may further authorize. I understand that if information is redisclosed as permitted by this Authorization, it may no longer be protected by applicable federal privacy law.

The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of employees or their family members, except as specifically allowed by this law. In order to comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. 'Genetic information,' as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.

I understand that: (a) this Authorization shall be valid for 24 months from the date I sign it; (b) I may revoke it at any time by providing written notice to Group Long Term Disability Claims, Sun Life Financial, SC 4328, One Sun Life Executive Park, Wellesley Hills, Massachusetts, 02481, subject to the rights of any person who acted in reliance on it prior to receiving notice of its revocation; and (c) my authorized representative and I are entitled to receive a copy of the Authorization upon request.

A copy of this Authorization shall be as valid as the original.

| Print name of employee or personal representative of employee | Group policy number |
|---|---|
| Craig B. Parker | 231948 |

| If Representative, description of your authority or relationship to employee |
|---|
| |

| Signature of employee or personal representative | Date |
|---|---|
| X Craig B Parker | 9/29/14 |

# Sun Life Assurance Company of Canada



**Authorization for Release and Disclosure of Psychotherapy Notes**

This Authorization complies with the HIPAA Privacy Rule.

It is important for you to read, sign and submit all Authorizations in this packet. Failure to submit all Authorizations could result in a delay during the claims process.

Return to:
*Sun Life Assurance*
Company of Canada
Group LTD Claims
P.O. Box 81830
Wellesley Hills, MA 02481

Fax: (781) 304-5537

I HEREBY AUTHORIZE any: physician, healthcare provider, health plan, medical professional, hospital, clinic, or other medical or healthcare facility that has provided payment, treatment or services to me or on my behalf to disclose any psychotherapy notes relating to me to the Claims Department of Sun Life Assurance Company of Canada ("the Company"), its subsidiaries, affiliates, third party administrators and reinsurers.

By my signature below, I acknowledge that any agreements I have made to restrict my protected health information do not apply to this Authorization, and I instruct any physician, healthcare professional, hospital, clinic, medical facility or other healthcare provider to release and disclose all psychotherapy notes relating to me without restriction.

I understand that the Company will use the information it obtains to: (a) administer claims; (b) determine or fulfill responsibility for coverage and provision of benefits; (c) administer coverage; and/or (d) conduct other legally permissible activities that relate to any coverage I have or have applied for with the Company.

I understand that the Company will not disclose information it obtains about me except as authorized by this Authorization; as may be required or permitted by law; or as I may further authorize. I understand that if information is redisclosed as permitted by this Authorization, it may no longer be protected by applicable federal privacy law.

I understand that: (a) this Authorization shall be valid for 24 months from the date I sign it; (b) I may revoke it at any time by providing written notice to Group Long Term Disability Claims, Sun Life Financial, SC 4328, One Sun Life Executive Park, Wellesley Hills, Massachusetts, 02481, subject to the rights of any person who acted in reliance on it prior to receiving notice of its revocation; and (c) my authorized representative and I are entitled to receive a copy of the Authorization upon request.

A copy of this Authorization shall be as valid as the original.

| Print name of employee or personal representative of employee | Group policy number |
|---|---|
| Craig B. Parker | 231948 |
| If Representative, description of your authority or relationship to employee | |

| Signature of employee or personal representative | Date |
|---|---|
| X   Craig B Parker | 9/29/14 |

AR 78

# Sun Life Assurance Company of Canada



**Authorization for Release and Disclosure of Non-Health Related Information**

This Authorization complies with the HIPAA Privacy Rule.

*It is important for* you to read, sign and submit all Authorizations in this packet. Failure to submit all Authorizations could result in a delay during the claims process.

Return to:
Sun Life Assurance
Company of Canada
Group LTD Claims
P.O. Box 81830
Wellesley Hills, MA 02481

Fax: (781) 304-5537

I HEREBY AUTHORIZE any: (a) physician, healthcare provider, health plan, medical professional, hospital, clinic, laboratory, therapist, pharmacy or other medical or healthcare facility that has provided payment, treatment or services to me or on my behalf; (b) benefit plan administrator; (c) employer; (d) insurance company; (e) insurance support organization; (f) state department of motor vehicles; (g) consumer reporting agency; (h) financial institution; (i) government agency, or the Medical Information Bureau, Inc., Social Security Administration, Internal Revenue Service or the Veteran's Administration, to disclose to Sun Life Assurance Company of Canada ("the Company"), its subsidiaries, affiliates, third party administrators, and reinsurers, any and all non-health information relating to me, including, but not limited to (a) my employment earnings; (b) my occupational duties; (c) my credit history; (d) insurance benefits I may be receiving or have received; (e) Social Security benefits I, or my dependents, may be receiving or have received; (f) insurance claims I may have filed or insurance coverage I may have; (g) traffic accident reports relating to me; and (h) any other financial information relating to me.

I understand that the Company will use the information it obtains to: (a) underwrite my application for coverage; (b) make eligibility, risk rating, policy issuance and enrollment determinations; (c) obtain reinsurance; (d) administer claims and determine or fulfill responsibility for coverage and provision of benefits; (e) administer coverage; and/or (f) conduct other legally permissible activities that relate to any coverage I have or have applied for with the Company.

If this Authorization is signed in connection with a claim for insurance benefits, I hereby authorize the Company to disclose any information it obtains about me to any: (a) insurance company; (b) third party administrator; (c) rehabilitation or vocational professional; and (d) treating physician, psychologist or therapist/counselor of mine, for the purpose of verifying, evaluating, negotiating, determining, and/or adjudicating my claim. I further authorize the Company to disclose any information it obtains about me to the Medical Information Bureau, Inc.

I understand that the Company will not disclose information it obtains about me except as authorized by this Authorization; as may be required or permitted by law; or as I may further authorize. I understand that if information is redisclosed as permitted by this Authorization, it may no longer be protected by applicable federal privacy law.

This Authorization shall apply to information relating to my dependents where applicable.

I understand that: (a) this Authorization shall be valid for 24 months from the date I sign it; (b) I may revoke it at any time by providing written notice to Group Long Term Disability Claims, Sun Life Financial, SC 4328, One Sun Life Executive Park, Wellesley Hills, Massachusetts, 02481, subject to the rights of any person who acted in reliance on it prior to receiving notice of its revocation; and (c) my authorized representative and I are entitled to receive a copy of the Authorization upon request.

A copy of this Authorization shall be as valid as the original.

| Print name of employee or personal representative of employee | Group policy number |
|---|---|
| Craig B. Parker | 231948 |
| If Representative, description of your authority or relationship to employee | |

| Signature of employee or personal representative | Date |
|---|---|
| X  Craig B. Parker | 9/29/14 |

AR 79

# Sun Life Assurance Company of Canada
## Long Term Disability Claim Packet - Claimant


Sun
Life Financial®

## Reimbursement Agreement

Return to:
Sun Life Assurance
Company of Canada
Group LTD Claims
P.O. Box 81830
Wellesley Hills, MA 02481

Fax: (781) 304-5537

I UNDERSTAND and agree that the provisions of Group Long Term Disability Policy No. _____ permit Sun Life Assurance Company of Canada (herein called the "Company") to offset from my monthly disability benefit any benefits received from Social Security and/or Workers' Compensation or as otherwise provided in the Group Long Term Disability Policy. I further UNDERSTAND and agree that the Company may offset any such amounts that I or my dependents are eligible to receive, whether or not I or my dependents are actually receiving said amounts.

In return for the Company's advance payment of the Long Term Disability benefits to which I may be entitled, which advanced amount may be in excess of the amount due to me under the terms of the policy, I, for myself, my heirs, executors, administrators and assigns agree:

1. That I am not currently receiving any benefits from Social Security and/or Workers' Compensation, and/or any Other Income benefit to which I may be eligible as described in the policy.
2. To apply for Social Security disability benefits and/or Workers' Compensation benefits, and/or any Other Income benefit to which I or my dependents may be eligible as described in the policy.
3. If I, and/or my spouse and family receive any disability payments, regardless of the amount, in connection with Social Security and/or Workers' Compensation, and/or any Other Income benefit to which I or my spouse and family may be eligible as described in the policy; I and/or my spouse and family will immediately notify the Company of such disability payments and will pay back all amounts over and above the amounts to which I would be entitled under the policy provisions.
4. I understand that thereafter the Company is entitled to offset any amounts received from Social Security and/or Workers' Compensation, and/or any Other Income benefit to which I may be eligible as described in the policy with the monthly benefit payable under the policy in accordance with the terms of the policy.

I UNDERSTAND that the Company, in reliance on the above statements and promises, has agreed to advance to me the disability benefits to which I or my dependents are entitled under the terms of the policy.

| Print name *Craig B. Parker* | Group policy number 231948 |
|---|---|
| Signature of employee X *Craig B Parker* | Date 9/29/14 |
| Signature of witness X | Date |

AR 80

**Sun Life Assurance Company of Canada**
Wellesley Hills, MA 02481
1-800-247-6875



## PRIVACY INFORMATION NOTICE

This notice explains why Sun Life Assurance Company of Canada ("the Company") collects personal information about you, how we use that information, and under what circumstances we disclose it to others.

### COLLECTION OF INFORMATION

We need to obtain information about you to determine whether we can provide the insurance benefits you have requested. As part of the claims process, we may ask you to undergo a physical examination, submit a statement from your physician, or provide copies of medical tests or other information relating to your health, finances and activities.

We also may collect information about you from other sources. By signing the Authorization For Release And Disclosure of Health Related Information and/or the Authorization For Release And Disclosure of Psychotherapy Notes, you authorize us to obtain medical information about you that we need to underwrite your application or to evaluate your claim. Depending upon your particular circumstances, we may collect additional information about you from the following sources:

- Physicians, healthcare providers, medical professionals, hospitals, clinics or other medical or healthcare related facilities
- Other insurance companies you have applied to for insurance
- Public records, such as Social Security and tax records

### DISCLOSURE OF PERSONAL INFORMATION

When you sign the Authorization For Release And Disclosure of Health Related Information and/or the Authorization For Release And Disclosure of Psychotherapy Notes, you authorize us to disclose information we have about you:

- To our reinsurers
- As required or permitted by law

In the course of the claims process, we may need to disclose information about you to others. The law permits us to disclose such information, without obtaining authorization from you, to:

- Companies that help us conduct our business or perform services on our behalf
- Your physician or treating medical professional
- Comply with federal, state or local laws, respond to a subpoena or comply with an inquiry by a government agency or regulator

### ACCESS, CORRECTION AND AMENDMENT OF PERSONAL INFORMATION

Upon written request to the Company, you can:

- Obtain a copy of the personal recorded information we have about you in our files (a fee may be charged to cover the cost of providing a copy of such information)
- Request that we correct, amend or delete any recorded personal information about you in our possession
- File your own statement of facts if you believe that the recorded personal information we have about you is incorrect

To take any of these actions, please contact us at the following address for further instructions:

Sun Life Assurance Company of Canada
Group Long Term Disability Claims
P.O. Box 81830
Wellesley Hills, MA 02481

Sun Life Assurance Company of Canada is a member of the Sun Life Financial group of companies.
© 2012 Sun Life Assurance Company of Canada, Wellesley Hills, MA 02481. All rights reserved.
Sun Life Financial and the globe symbol are registered trademarks of Sun Life Assurance Company of Canada

AR 81



# SUN LIFE ASSURANCE COMPANY OF CANADA

**Policyholder:**          Garmin International, Inc.

**Policy Number:**         231948-001

**Policy Effective Date:**  January 1, 2014

**Policy Anniversary:**     January 1, 2015

This Policy is delivered in Kansas and is subject to the laws of that jurisdiction.  Premiums are due and payable monthly on the first day of each month.  Policy anniversaries will be annual beginning on January 1, 2015.

Sun Life Assurance Company of Canada (Sun Life) agrees to pay the benefits in accordance with all provisions provided by this Policy for Employee Basic Life, Employee Basic Accidental Death and Dismemberment, Employee Optional Life, Employee Optional Accidental Death and Dismemberment, Dependent Optional Life, Dependent Optional Accidental Death and Dismemberment, Short Term Disability Income and Long Term Disability Income Insurance.  This Policy is issued in consideration of the Application of the Policyholder, a copy of which is attached, and continued payment of premiums by the Policyholder.  The following pages including any Riders, Endorsements or Amendments are a part of this Policy.

For the purpose of effective dates and termination dates under this Policy, all days begin at 12:00 midnight and end at 11:59:59pm.

Signed at Sun Life's U.S. Headquarters, One Sun Life Executive Park, Wellesley Hills, MA  02481.

Dean Connor
President and Chief Executive Officer

**READ YOUR POLICY CAREFULLY**

**Group Term Insurance Policy**

Non-Participating



93P-LH.1

**Table of Contents**

**Page Numbers**

**Section I**      **Schedule of Benefits** ...........................................................................  3

**Section II**      **Definitions** ...........................................................................11

**Section III**      **Eligibility and Effective Dates** ...........................................22

**Section IV**      **Benefit Provisions** ...............................................................25

           **Employee Life Insurance** .....................................................25

           **Dependent Optional Life Insurance** ...................................31

           **Employee and Dependent Accidental Death and Dismemberment Insurance**.............34

           **Short Term Disability Income Insurance** ...........................40

           **Long Term Disability Income Insurance** ...........................45

**Section V**      **Termination Provisions** .......................................................56

**Section VI**      **General Policy Provisions** ...................................................60

**Section VII**      **Claim Provisions** .................................................................62

**Section VIII**      **Premiums** ............................................................................66

**Section I**
**Schedule of Benefits**

## ELIGIBLE CLASSES

**Employee Basic Life, Employee Basic Accidental Death and Dismemberment, Short Term Disability Income and Long Term Disability Income Insurance**

All Full-Time United States Chicago Retail Employees working in the United States scheduled to work at least 20 hours per week

All Other Full-Time United States Employees working in the United States scheduled to work at least 30 hours per week

**Employee Optional Life and Employee Optional Accidental Death and Dismemberment Insurance**

All Full-Time United States Chicago Retail Employees working in the United States enrolled in Employee Basic Life Insurance scheduled to work at least 20 hours per week

All Other Full-Time United States Employees working in the United States enrolled in Employee Basic Life Insurance scheduled to work at least 30 hours per week

**Dependent Optional Life and Dependent Optional Accidental Death and Dismemberment Insurance**

All Full-Time United States Chicago Retail Employees working in the United States enrolled in Employee Optional Life Insurance scheduled to work at least 20 hours per week

All Other Full-Time United States Employees working in the United States enrolled in Employee Optional Life Insurance scheduled to work at least 30 hours per week

## WAITING PERIOD

Until the first of the month coincident with or next following date of employment

**Section I**
**Schedule of Benefits**

**EMPLOYEE LIFE AND ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE**

**BASIC INSURANCE**

**CLASSIFICATION**

1 All Eligible Chicago Retail Location Employees
2 All Other Eligible Employees

| CLASS | LIFE | AD&D |
|---|---|---|
| 1 and 2 | 1 times the Employee's Basic Annual Earnings* | An amount equal to the Employee's amount of Basic Life Insurance in force |

**Section I**
**Schedule of Benefits**

**OPTIONAL INSURANCE**

**CLASSIFICATION**

1 All Eligible Chicago Retail Location Employees
2 All Other Eligible Employees

| CLASS | LIFE | AD&D |
|---|---|---|
| 1 and 2 | An Employee may elect an amount of Optional Life Insurance in $10,000 increments | An amount equal to the Employee's amount of Optional Life Insurance in force |

\*   rounded to the next higher $1,000, if not already a multiple of $1,000.

The **Basic  Maximum Benefit** is $500,000.

The **Combined Maximum Benefit** is the lesser of:
    The Employee's Basic Life Insurance added to the Employee's Optional Life Insurance; or
    -$500,000; or
    5 times the Employee's Basic Annual Earnings, rounded to the next higher $10,000, if not already a multiple of $10,000.

(Applicable to Employees insured on December 31, 2013)

The **Guaranteed Issue Amount** for Optional Life Insurance is the amount of Optional Life Insurance the Employee had in force on December 31, 2013.

(Applicable to Employees hired on or after January 1, 2014)

The **Guaranteed Issue Amount** for Optional Life Insurance is $250,000.

An Employee's amount of Basic and Optional Life and Accidental Death and Dismemberment Insurance shown in the Schedule will reduce to 65% when he attains age 65, to 50% when he attains age 70 and to 35% when he attains age 75.

An Employee's Basic and Optional Life and Accidental Death and Dismemberment Insurance terminates at the Employee's retirement.

**Evidence of Insurability,** satisfactory to Sun Life, will be required for any of the following reasons:
-    an Employee who elects Basic Life Insurance only and subsequently elects Optional Life Insurance; or
-    an Employee who elects an increase in his amount of Optional Life Insurance\*; or
-    an Employee whose amount of Life Insurance is in excess of the Guaranteed Issue Amount.

\*However, Evidence of Insurability will not be required if the Employee elects to increase his amount of Optional Life Insurance within 31 days following a Family Status Change.

Family Status Change means:
 -   the Employee's marriage; or
 -   birth of the Employee's child; or
 -   the Employee's adoption of a child.

**Section I
Schedule of Benefits**

**DEPENDENT OPTIONAL LIFE INSURANCE**

**CLASSIFICATION**

1 All Eligible Chicago Retail Location Employees
2 All Other Eligible Employees

| CLASS | Spouse | Child under age 26 |
|---|---|---|
| 1 and 2 | An Employee may elect an amount of Dependent Spouse Optional Life Insurance in $5,000 increments | An Employee may elect one of the following Options: |

| | | |
|---|---|---|
| | Option I | $1,000 |
| | Option II | $2,000 |
| | Option III | $4,000 |
| | Option IV | $5,000 |
| | Option V | $10,000 |

An Employee's Dependent is also insured for an amount of Optional Accidental Death and Dismemberment Insurance that equals the Dependent's amount of Optional Life Insurance in force.

The Dependent Spouse **Optional Maximum Benefit** is $100,000.

(The amount of Dependent Optional Life Insurance cannot exceed 50% of the Employee's amount of Optional Life Insurance)

The **Guaranteed Issue Amount** for Employees insured for Dependent Spouse Optional Life Insurance on December 31, 2013 is the amount of Dependent Spouse Optional Life Insurance the Employee had in force on December 31, 2013.

The **Guaranteed Issue Amount** for Employees hired on or after January 1, 2014 for Dependent Spouse Optional Life Insurance is $50,000.

An Employee's amount of Dependent Spouse Optional Life and Accidental Death and Dismemberment Insurance shown in the Schedule will reduce to 65% when the Employee attains age 65, 50% when the Employee attains age 70 and 35% when the Employee attains age 75.

**Evidence of Insurability**, satisfactory to Sun Life, will be required for an Employee's Dependent Spouse for any of the following reasons:
- an Employee who elects no coverage and subsequently elects Dependent Spouse Optional Life Insurance; or
- an Employee who elects Employee Basic Life Insurance only and subsequently elects Employee Optional Life and Dependent Spouse Optional Life Insurance; or
- an Employee who elects an increase in his amount of Dependent Spouse  Optional Life Insurance*; or
- an Employee whose amount of Dependent Spouse  Optional Life Insurance is in excess of the Guaranteed Issue Amount.

*However, Evidence of Insurability will not be required if an Employee elects an increase in his amount of Dependent Spouse Optional Life Insurance within 31 days following a Family Status Change.

Family Status Change means:
- the Employee's marriage; or
- birth of the Employee's child, or
- the Employee's adoption of a child.

**Section I**
**Schedule of Benefits**

**SHORT TERM DISABILITY INCOME INSURANCE**

**CLASSIFICATION**

1 - All Eligible Chicago Retail Location Employees
2 - All Other Eligible Employees

     a.   The **Benefit Percentage** is: 60% of Total Weekly Earnings.

     b.   The **Maximum Weekly Benefit** is: $2,000.

**Evidence of Insurability,** satisfactory to Sun Life, will be required for an Employee who elects no coverage and subsequently elects Short Term Disability Income Insurance.

The **Minimum Weekly Benefit** is $15.

**Elimination Period**

None             - for Injury, if Total Disability occurs within 72 hours after an accident
7 days          - for Sickness and Total Disability that begin later than 72 hours after an accident

**Maximum Benefit Period**

13 Weeks

AR 89

**Section I**
**Schedule of Benefits**

**LONG TERM DISABILITY INCOME INSURANCE**

**CLASSIFICATION**

1 - All Eligible Chicago Retail Location Salaried Exempt Employees
2 - All Other Eligible Salaried Exempt Employees
3 - All Other Eligible Chicago Retail Location Employees
4 - All Other Eligible Employees

**Classes 1, 2, 3 and 4**

    a.  The **Benefit Percentage** is: 60% of Total Monthly Earnings.

    b.  The **Maximum Monthly Benefit** is: $6,000.

The **Minimum Monthly Benefit** is $100.

**Elimination Period**

    90 days or the end of the Employee's Short Term Disability Maximum Benefit Period, whichever is later.

**Maximum Benefit Period**

The Employee's Maximum Benefit Period is the period shown below or the Employee's Normal Retirement Age under the 1983 amendments to the Federal Social Security Act, whichever is longer.

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than age 60 | To age 65, but not less than 60 months |
| 60 | 60 Months |
| 61 | 48 Months |
| 62 | 42 Months |
| 63 | 36 Months |
| 64 | 30 Months |
| 65 | 24 Months |
| 66 | 21 Months |
| 67 | 18 Months |
| 68 | 15 Months |
| 69 and over | 12 Months |

**Section I**
**Schedule of Benefits**

| <u>Year of Birth</u> | <u>Normal Retirement Age</u> |
|---|---|
| Before 1938 | Age 65 |
| 1938 | Age 65 and 2 months |
| 1939 | Age 65 and 4 months |
| 1940 | Age 65 and 6 months |
| 1941 | Age 65 and 8 months |
| 1942 | Age 65 and 10 months |
| 1943 through 1954 | Age 66 |
| 1955 | Age 66 and 2 months |
| 1956 | Age 66 and 4 months |
| 1957 | Age 66 and 6 months |
| 1958 | Age 66 and 8 months |
| 1959 | Age 66 and 10 months |
| After 1959 | Age 67 |

93P-LH-SCHED

Schedule of Benefits
January 1, 2014

AR 91

**Section I**
**Schedule of Benefits**

**CONTRIBUTIONS**

Employees will not contribute to the cost of their Employee Basic Life, Employee Basic Accidental Death and Dismemberment and Long Term Disability Income Insurance.

Employees will contribute to the cost of their Employee Optional Life, Employee Optional Accidental Death and Dismemberment, Dependent Optional Life, Dependent Optional Accidental Death and Dismemberment and Short Term Disability Income Insurance.

However, an Employee may choose to contribute to the cost of their Long Term Disability Income Insurance.

**INITIAL MONTHLY PREMIUM RATES**

| | |
|---|---|
| Employee Basic Life Insurance | Refer to Attachment A |
| Employee Optional Life Insurance | Refer to Attachment A |
| Employee Basic Accidental Death and Dismemberment Insurance | Refer to Attachment A |
| Employee Optional Accidental Death and Dismemberment Insurance | Refer to Attachment A |
| Dependent Optional Life Insurance | Refer to Attachment A |
| Short Term Disability Income Insurance | Refer to Attachment A |
| Long Term Disability Income Insurance | Refer to Attachment A |

The initial monthly premium rates are guaranteed until December 31, 2017, unless otherwise specified in Section VIII, Premiums.  See Section VIII, Premiums for more information.

**Section II**
**Definitions**

**In this section Sun Life defines some basic terms needed to understand this Policy.  All male terms include the female term, unless stated otherwise.**

**For purposes of this Policy:**

**Actively at Work** means that an Employee performs all the regular duties of his job for a full work day scheduled by the Employer at the Employer's normal place of business or a site where the Employer's business requires the Employee to travel.

An Employee is considered Actively at Work on any day that is not his regular scheduled work day (e.g. vacation or holiday), provided the Employee was Actively at Work on his immediately preceding scheduled work day and the Employee:
-    is not hospital confined; or
-    is not disabled due to an injury or sickness.

An Employee is considered Actively at Work if he usually performs the regular duties of his job at his home, provided the Employee can perform all the regular duties of his job for a full work day and could do so at the Employer's normal place of business if required to do so, and the Employee:
-    is not hospital confined; or
-    is not disabled due to an injury or sickness.

**Annual Enrollment Period** means the period during the 4th calendar quarter of each year as designated by the Policyholder.

**Application** means the document pertaining to the plan of insurance applied for by the Policyholder.  This document is attached to this Policy.

**Certificate** means a written booklet prepared by Sun Life which includes any Riders, Endorsements or Amendments, containing a summary of:
1.    the insurance benefits an Employee is entitled to;
2.    to whom the benefits are payable; and
3.    any limitations, exclusions or requirements that may apply.

**Contributory Insurance** means insurance for which the Employee is required to pay all or part of the premium.

**Eligibility Date** means the date or dates an Employee in an Eligible Class becomes eligible for insurance under this Policy.  Classes eligible for insurance are shown in Section I, Schedule of Benefits.

**Employee** means a person who is employed by the Employer within the United States, scheduled to work at least the number of hours shown in Section I, Schedule of Benefits, and paid regular earnings.  If the Employee is working on a temporary assignment outside of the United States for a period of 24 months or less, the Employee will be deemed to be working within the United States.  If the Employee is working outside of the United States for more than 24 months or other than on a temporary assignment, the Employee will not be considered an Employee under this Policy unless Sun Life approves the Employee in writing.

**Employer** means Garmin International, Inc. and includes any Subsidiary or Affiliated company named in the Application.

**Evidence of Insurability** means a statement or proof of an Employee's or Dependent's medical history upon which acceptance for insurance will be determined by Sun Life.  The Employee or Dependent must agree to submit to a paramedical examination and/or provide copies of medical records, if requested by Sun Life.  Sun Life will pay the cost of any paramedical examination ordered by Sun Life for the purpose of providing Evidence of Insurability.

**Grace Period** means the 31 days following a premium due date.

## Section II
## Definitions

**Guaranteed Issue Amount** means the maximum amount of insurance available under this Policy without Evidence of Insurability.  If the Employee's or Dependent's amount of insurance exceeds the Guaranteed Issue Amount available under this Policy, any amount in excess of the Guaranteed Issue Amount is available to the Employee or Dependent only if he has furnished Evidence of Insurability to Sun Life and has been approved for any excess amount above the Guaranteed Issue Amount.

**Hospital or Institution** means a facility licensed to provide full-time medical care and treatment under the direction of a full-time staff of licensed physicians.

**Initial Enrollment Period** means:
- the period immediately prior to January 1, 2014 as designated by the Policyholder, for those Employees eligible for benefits on January 1, 2014; or
- the period of 31 days immediately after the Employee's Eligibility Date, for those Employees who become eligible for benefits after January 1, 2014.

**Injury** means bodily impairment resulting directly from an accident and independently of all other causes.  Any Injury must occur and any disability must begin while the Employee is insured under this Policy.

**Non-Contributory Insurance** means insurance for which the premium is paid entirely by the Employer.

**Physician** means an individual who is operating within the scope of his license and is either:

1. licensed to practice medicine and prescribe and administer drugs or to perform surgery; or

2. legally qualified as a medical practitioner and required to be recognized, under this Policy for insurance purposes, according to the insurance regulations of the governing jurisdiction.

The Physician cannot be the Employee, his spouse or the parents, brothers, sisters or children of the Employee or his spouse.

**Policyholder** means the entity to whom the Policy is issued.

**Pregnancy** means childbirth, miscarriage, abortion or any disease resulting from or aggravated by the pregnancy.

**Retirement Plan** means a program which provides retirement benefits to Employees and is not funded wholly by Employee contributions.  The term will not include a 401(k) plan, a 403(b) plan, a profit sharing plan, a thrift plan, an individual retirement account (IRA), a tax sheltered annuity (TSA), a stock ownership plan, or a nonqualified plan of deferred compensation.

Employer's Retirement Plan will include any Retirement Plan:

1. which is part of any federal, state, county, municipal or association retirement system; and
2. the Employee is eligible for as a result of employment with the Employer.

**Sickness** means illness, disease or pregnancy.  Any disability, because of Sickness, must begin while the Employee is insured under this Policy.

**U.S. Headquarters** means Sun Life Assurance Company of Canada, Wellesley Hills, MA 02481.

**Waiting Period** means the length of time immediately before an Employee's Eligibility Date during which he must be employed in an Eligible Class.  Any period of time prior to the Policy Effective Date the Employee was Actively at Work for the Employer as a full-time Employee will count towards completion of the Waiting Period.  The Waiting Period is shown in Section I, Schedule of Benefits.

**Section II**
**Definitions**

**The following Definitions are applicable to Life Insurance**

**Basic Annual Earnings** means the Employee's current salary or wage from the Employer.  Basic Annual Earnings includes deductions for pre-tax contributions to a qualified deferred compensation plan, HSA Plan or flexible spending account, but does not include income received due to commissions, bonuses, overtime pay or any other extra compensation.

**Basic Maximum Benefit** means the largest amount of Basic Life Insurance available to an Employee under this Policy. The Basic Maximum Benefit is shown in Section I, Schedule of Benefits.

**Beneficiary** means the person (other than the Employer) who is entitled to receive death benefit proceeds as they become due under this Policy.  A Beneficiary must be named by the Employee on a form acceptable to Sun Life and executed by the Employee.

**Optional Maximum Benefit** means the largest amount of Optional Life Insurance available to an Employee under this Policy.  The Optional Maximum Benefit is shown in Section I, Schedule of Benefits.

**Retirement** means the first of the following to occur:

1.  the effective date of the Employee's retirement benefits under:
    a.  any plan of a federal, state, county, municipal or an association retirement system which the Employee is eligible as a result of his employment with the Employer;
    b.  any Retirement Plan the Employer sponsors; or
    c.  any Retirement Plan to which the Employer:
        i.   makes contributions to; or
        ii.  has made contributions.

2.  the effective date of the Employee's retirement benefits under the Social Security Act or any similar plan or act. However, if the Employee meets the definition of Employee and is receiving retirement benefits under the Social Security Act or similar plan or act, the Employee will not be considered retired.

**Terminally Ill or Terminal Illness** means an Employee's Sickness or physical condition that is certified by a Physician to reasonably be expected to result in death within twelve months or less.

**Total Disability or Totally Disabled** for purposes of determining eligibility for Waiver of Premium means an Employee, because of Injury or Sickness, is unable to perform the material and substantial duties of any occupation for which he is or becomes reasonably qualified for by education, training or experience.

**Section II**
**Definitions**

**The following Definitions are applicable to Dependent Optional Life Insurance**

**Dependent** means an Employee's:
-    spouse;
-    child from live birth to under age 26.

Child includes:
-    an Employee's step-child; or
-    a child for whom the Employee has legal guardianship; or
-    a foster child placed with the Employee by a licensed agency; or
-    an Employee's adopted child including any child placed with the Employee for adoption; or
-    an Employee's grandchild who depends on the Employee for support; or
-    a child for whom coverage is required pursuant to a Qualified Medical Child Support Order or other court administrative order.'

Dependent does not include:
-    any person who is insured as an Employee; or
-    any person residing outside the United States, Canada or Mexico.

If a child is age 26 or older and is:

1.    incapable of self-sustaining employment because of mental retardation, developmental disability or physical handicap; and

2.    dependent on the Employee for 50% or more of his support;

that child will continue to be a Dependent under this Policy for as long as these two conditions exist.

No person may be considered to be a Dependent of more than one Employee.

**Optional Maximum Benefit** means the largest amount of Dependent Optional Life Insurance available to an Employee under this Policy.  The Optional Maximum Benefit is shown in Section I, Schedule of Benefits.

**Section II**
**Definitions**

**The following Definitions are applicable to Accidental Death and Dismemberment Insurance**

**Accidental Bodily Injury** means bodily harm caused solely by external, violent and accidental means which is sustained directly and independently of all other causes.

**AD&D** means Accidental Death and Dismemberment.

**Dependent** means an Employee's:
-   spouse; or
-   child from live birth to under age 26.

Child includes:
-   an Employee's step-child; or
-   a child for whom the Employee has legal guardianship; or
-   a foster child placed with the Employee by a licensed agency; or
-   an Employee's adopted child, including any child placed with the Employee for adoption; or
-   an Employee's grandchild who depends on the Employee for support; or
-   a child for whom coverage is required pursuant to a Qualified Medical Child Support Order or other court administrative order.

If a child is age 26 or older and is:

1.   incapable of self-sustaining employment because of a mental retardation, developmental disability or physical handicap; and

2.   dependent on the Employee for 50% or more of his support;
that child will continue to be a Dependent under this Policy for as long as these two conditions exist.

No person may be considered a Dependent of more than one Employee.

Dependent does not include:
-   any person who is insured as an Employee; or
-   any person residing outside the United States, Canada, or Mexico.

**Insured Person** means the Employee or any of the Employee's Insured Dependent's.

## Section II
## Definitions

**The following Definitions are applicable to Short Term Disability Income Insurance**

**Drug and Alcohol Illness** means an illness which results from the abuse of alcohol, drugs or derivatives.

**Elimination Period** means a period of continuous days of Total Disability for which no STD Benefit is payable. The Elimination Period is shown in Section I, Schedule of Benefits and begins on the first day of Total Disability.

**Gross Weekly Benefit** means the Employee's Weekly Benefit before any reduction of Other Income Benefits as described in Section IV, Short Term Disability Income Benefits.

**Maximum Weekly Benefit** means the largest amount payable weekly to an Employee under this Policy. The Maximum Weekly Benefit is shown in Section I, Schedule of Benefits.

**Mental Illness** means mental, nervous, psychological, emotional diseases, or behavioral disorders of any type.

**Net Weekly Benefit** means the amount payable after reducing the Employee's Gross Weekly Benefit by any benefits the Employee receives or is eligible to receive from sources listed as Other Income Benefits shown in Section IV, Short Term Disability Income Benefits.

**Partial Disability or Partially Disabled** means the Employee, because of Injury or Sickness which caused Total Disability, continues to be unable to perform all of the material and substantial duties of his own occupation on a full-time basis, but he is:

1.    performing at least one of the material and substantial duties of his own occupation or another occupation on a part-time or full-time basis; and

2.    earning less than 80% of his Total Weekly Earnings due to the same Injury or Sickness that caused Total Disability.

Partial Disability must begin within 14 days after Total Disability benefits cease. Partial Disability employment must be for the Employer as defined under this Policy. Partial Disability employment cannot be for any other employer or self-employment.

The loss of a professional or occupational license or the inability to obtain or qualify for a license for any reason does not, in itself, constitute Partial Disability.

To qualify for benefits, the Employee must satisfy the Elimination Period with the required number of days of Total Disability and have received at least one Total Disability Benefit payment. The Elimination Period cannot be satisfied with days of Partial Disability.

**STD** means Short Term Disability.

**Total Disability or Totally Disabled** means the Employee, because of Injury or Sickness, is unable to perform all of the material and substantial duties of his own occupation and is not engaged in any occupation for wage or profit.

The loss of a professional or occupational license or the inability to obtain or qualify for a license for any reason does not, in itself, constitute Total Disability.

To qualify for benefits, the Employee must satisfy the Elimination Period with the required number of days of Total Disability.

**All Eligible Chicago Retail Location Employees,All Other Eligible Employees**

**Total Weekly Earnings** means the Employee's basic weekly earnings as reported by the Employer immediately prior to the first date Total Disability begins. Total Weekly Earnings includes deductions for pre-tax contributions to a qualified

**Section II**
**Definitions**

deferred compensation plan, Section 125 Plan, HSA Plan or flexible spending account, but does not include income received due to commissions, bonuses, overtime pay or any other extra compensation.

If an Employee is paid on an hourly basis, Total Weekly Earnings will be based on the Employee's hourly rate of pay, but will not exceed 40 hours per week.

Section II
Definitions

**The following Definitions are applicable to Long Term Disability Income Insurance**

**Chemical and Environmental Illness** means an allergy or sensitivity to chemicals or the environment including but not limited to:
a)  Environmental allergies
b)  Sick Building Syndrome
c)  Multiple Chemical Sensitivity Syndrome
d)  Chronic Toxic Encephalopathy.

Chemical and Environmental Illness does not include Asthma or Allergy-induced reactive lung disease.

**Chronic Fatigue Illness** means an Illness that is characterized by a debilitating fatigue in the absence of known medical or psychological conditions, which includes but is not limited to:
a)  Chronic Fatigue Syndrome as supported by Center for Disease Control Guidelines
b)  Chronic Fatigue Immunodeficiency Syndrome as supported by Center for Disease Control Guidelines
c)  Post Viral Syndrome
d)  Limbic Encephalopathy
e)  Epstein-Barr virus infection
f)  Herpes virus type 6 infection
g)  Myalgic Encephalomyelitis

Chronic Fatigue Illness does not include a disorder identified as a(n):
a)  Neoplastic disorder
b)  Neurologic disorder
c)  Endocrine disorder
d)  Hematologic disorder
e)  Rheumatologic disorder
f)  Depression

**Disability Earnings** means the employment income an Employee receives while Partially Disabled or income an Employee receives while participating in an approved Rehabilitation program.  Disability Earnings does not include income an Employee receives from work performed prior to his Total or Partial Disability, nor income that is not derived from work performed.

**Drug and Alcohol Illness** means an illness which results from the abuse of alcohol, drugs or derivatives.

**Elimination Period** means a period of continuous days of Total or Partial Disability for which no LTD Benefit is payable.  The Elimination Period is shown in Section I, Schedule of Benefits and begins on the first day of Total or Partial Disability.

If the Employee returns to work for 15 working days or less during the Elimination Period and cannot continue working, the Total or Partial Disability will be treated as continuous.  However, only those days that the Employee is Totally or Partially Disabled will count toward satisfying the Elimination Period.

**Family Social Security** means benefits for an eligible spouse and/or children that are paid to the Employee under the Federal Social Security Act as a result of the Employee's Total or Partial Disability.

**Gainful Occupation** means employment that is or can be expected to provide an Employee with an income of at least 60% of his Indexed Total Monthly Earnings.

**Gross Monthly Benefit** means the Employee's Monthly Benefit before any reduction of Other Income Benefits as described in Section IV, Long Term Disability Income Benefits and before any reduction of Disability Earnings.

AR 100

**Section II**
**Definitions**

**Indexed Total Monthly Earnings** means the Employee's Total Monthly Earnings prior to the date his Total or Partial Disability began adjusted on the first of the month following 12 calendar months of Partial Disability Benefit payments and each annual anniversary thereafter. Each adjustment to the Indexed Total Monthly Earnings is the lesser of 10% or the current annual percentage increase in the Consumer Price Index for Wage Earners and Clerical Workers as published monthly by the U.S. Department of Labor. Sun Life reserves the right to use some other similar measurement if the Department of Labor changes or stops publishing the Consumer Price Index.

**LTD** means Long Term Disability.

**Material and Substantial Duties** means, but is not limited to, the essential tasks, functions, skills or responsibilities required by employers for the performance of the Employee's Own Occupation. Material and Substantial Duties does not include any tasks, functions, skills or responsibilities that could be reasonably modified or omitted from the Employee's Own Occupation.

**Maximum Monthly Benefit** means the largest amount payable monthly to an Employee under this Policy. The Maximum Monthly Benefit is shown in Section I, Schedule of Benefits.

**Mental Illness** means mental, nervous, emotional, behavioral, psychological, personality, cognitive, mood or stress-related abnormality, disorder, dysfunction or syndrome regardless of cause, including any biological or biochemical disorder or imbalance of the brain. Mental Illness includes, but is not limited to, bipolar affective disorder, schizophrenia, psychotic illness, manic depressive illness, depression and depressive disorders, anxiety and anxiety disorders and any other mental and nervous condition classified in the Diagnostic and Statistical Manual (DSM) of the American Psychiatric Association, in effect on the date of Total or Partial Disability or a comparable manual if the American Psychiatric Association stops publishing the (DSM).

**Musculoskeletal and Connective Tissue Illness** means a disease or disorder of the neck and back and sprains and strains of joints and adjacent tissues, including but not limited to:
a)  cervical, thoracic and lumbosacral back and its surrounding soft tissue
b)  Carpal Tunnel or repetitive motion syndrome
c)  Fibromyalgia
d)  Temporomandibular joint or craniomandibular joint disorder
e)  Myofascial pain
f)  Scoliosis that does not require surgery

Musculoskeletal and Connective Tissue Illness does not include:
a)  Herniated, ruptured or bulging discs with neurological abnormalities that are documented by electromyogram, and computerized tomography or magnetic resonance imaging
b)  Scoliosis that requires surgery
c)  Tumors, malignancies, or vascular malformation
d)  Radiculopathies that are documented by electromyogram
e)  Spondylolisthesis, grade II or higher
f)  Myelopathies and myelitis
g)  Demyelinating diseases
h)  Traumatic spinal cord necrosis
i)  Osteopathies
j)  Rheumatoid or psoriatic arthritis
k)  Lupus

**Own Occupation** means the usual and customary employment, business, trade, profession or vocation that the Employee performed as it is generally recognized in the national economy immediately prior to the first date Total or Partial Disability began. Own Occupation is not limited to the job or position the Employee performed for the Employer or performed at any specific location.

**All Eligible Salaried Exempt Employees**

93P-LH-DEF.4                                    Page No. 19                                    Definitions
                                                                                              January 1, 2014

Section II
Definitions

**Partial Disability or Partially Disabled** means the Employee, because of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation and the Employee has Disability Earnings of less than 80% of his Indexed Total Monthly Earnings.

The loss of a professional or occupational license or the inability to obtain or qualify for a license for any reason does not, in itself, constitute Partial Disability.

To qualify for benefits, the Employee must satisfy the Elimination Period with the required number of days of Total Disability, Partial Disability or a combination of days of Total and Partial Disability.

**All Other Eligible Employees**

**Partial Disability or Partially Disabled** means during the Elimination Period and the next 24 months, the Employee, because of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation and the Employee has Disability Earnings of less than 80% of his Indexed Total Monthly Earnings. After Total or Partial Disability benefits combined have been paid for 24 months, the Employee will continue to be Partially Disabled if he is unable to perform with reasonable continuity any Gainful Occupation for which he is or becomes reasonably qualified for by education, training or experience and the Employee has Disability Earnings of less than 60% of his Indexed Total Monthly Earnings.

The loss of a professional or occupational license or the inability to obtain or qualify for a license for any reason does not, in itself, constitute Partial Disability.

To qualify for benefits, the Employee must satisfy the Elimination Period with the required number of days of Total Disability, Partial Disability or a combination of days of Total and Partial Disability.

**Primary Social Security** means benefits paid under the Federal Social Security Act to an Employee if he becomes Totally or Partially Disabled.

**Social Security** means the Federal Social Security Act which provides social insurance on a national scale.

**All Eligible Salaried Exempt Employees**

**Total Disability or Totally Disabled** means the Employee, because of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation.

The loss of a professional or occupational license or the inability to obtain or qualify for a license for any reason does not, in itself, constitute Total Disability.

To qualify for benefits, the Employee must satisfy the Elimination Period with the required number of days of Total Disability, Partial Disability or a combination of days of Total and Partial Disability.

**All Other Eligible Employees**

**Total Disability or Totally Disabled** means during the Elimination Period and the next 24 months, the Employee, because of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation. After Total or Partial Disability benefits combined have been paid for 24 months, the Employee will continue to be Totally Disabled if he is unable to perform with reasonable continuity any Gainful Occupation for which he is or becomes reasonably qualified for by education, training or experience.

The loss of a professional or occupational license or the inability to obtain or qualify for a license for any reason does not, in itself, constitute Total Disability.

**Section II**
**Definitions**

To qualify for benefits, the Employee must satisfy the Elimination Period with the required number of days of Total Disability, Partial Disability or a combination of days of Total and Partial Disability.

**Total Monthly Earnings** means the Employee's basic monthly earnings as reported by the Employer immediately prior to the first date Total or Partial Disability begins. Total Monthly Earnings includes deductions for pre-tax contributions to a qualified deferred compensation plan, Section 125 Plan, HSA Plan or flexible spending account, but does not include income received due to commissions, bonuses, overtime pay or any other extra compensation.

If an Employee is paid on an hourly basis, Total Monthly Earnings will be based on the Employee's hourly rate of pay, but will not exceed 40 hours per week.

**Section III**
**Eligibility and Effective Dates**

**A.    Eligible Classes**

The class(es) eligible for insurance are shown in Section I, Schedule of Benefits.

**B.    Eligibility Date**

An Employee in an Eligible Class will be eligible for insurance on the latest of the following dates:
1.    January 1, 2014; or
2.    the first day of the month coincident with or next following the Employee's date of employment .

An Employee in an Eligible Class will be eligible for Dependent Optional Life Insurance on the latest of the following dates:

1.    the date he is insured for Employee Optional Life Insurance; or
2.    January 1, 2014; or
3.    the date the Employee first acquires a Dependent.

**C.    Effective Date of Insurance**

During each enrollment period an Employee may make written application for insurance benefit plan choices.

**Initial Enrollment Period**

An Employee will be insured, subject to the Delayed Effective Date of Insurance, on the date he is eligible on or after written application is made for insurance provided Evidence of Insurability is not required.

If Evidence of Insurability is required for any amount of insurance, the Employee is insured for that amount of insurance, subject to the Delayed Effective Date of Insurance, on the date Sun Life approves the Evidence.

If an Employee does not make a written application for insurance, he will will be insured for Employee Basic Life, Accidental Death and Dismemberment and Long Term Disabilty Income Insurance only.

A Dependent will be insured, subject to the Delayed Effective Date of Insurance, on the latest of:
-    the date the Employee is eligible for Dependent Optional Life Insurance; or
-    the date the Employee makes a written application for Dependent Optional Life Insurance, if he applies during the Initial Enrollment Period; or
-    the date the Dependent's Evidence of Insurability is approved by Sun Life, if required.

If an Employee does not make a written application for Dependent Optional Life Insurance within the Initial Enrollment Period, the Dependent will not be insured.

No change in plan options may be made until:
-    the annual enrollment period; or
-    the Employee has a Family Status Change.

**Annual Enrollment Period**

During each annual enrollment period an Employee may apply for a change in his plan options.

If during the Annual Enrollment Period the Employee increases his amount of insurance, the Employee will be insured, subject to the Delayed Effective Date of Insurance, for the increase on the later of:
-    the January 1st following the Employee's election; or
-    the date Sun Life approves the Employee's Evidence of Insurability.

**Section III**
**Eligibility and Effective Dates**

If during the Annual Enrollment Period the Employee increases his Dependent's amount of insurance, the Dependent will be insured, subject to the Delayed Effective Date of Insurance, for the increase on the later of:
-    the January 1st following the Employee's election; or
-    the date Sun Life approves the Dependent's Evidence of Insurability.

Decreases in any amount of insurance will take effect on the January 1st following the date of change following the Employee's election.

An Employee who does not make any changes during the Annual Enrollment Period will continue to be insured for the plan option previously elected.

No change in plan options may be made until the next Annual Enrollment Period, except if the Employee has a Family Status Change.

**Family Status Change**

When an Employee has a Family Status Change he may make a change in his plan options within 31 days of the change in Family Status.  Such changes must be on account of and consistent with the reason that the change was permitted.  A change in the plan of insurance is consistent with a Family Status Change only if the change is necessary or appropriate as the result of the Family Status Change.  A Family Status Change is one of the following events:
-    the Employee's marriage or divorce;
-    the birth of a child of the Employee;
-    the adoption of a child by the Employee;
-    the death of the Employee's spouse or child;
-    the commencement or termination of employment of the Employee's spouse;
-    the change from part-time to full-time employment by the Employee or the Employee's spouse;
-    the change from full-time to part-time employment by the Employee or the Employee's spouse;
-    the taking of an unpaid leave of absence by the Employee or the Employee's spouse;
-    a significant change in the health coverage of the Employee or the Employee's spouse as a result of the spouse's employment.

If, due to the Family Status Change, the Employee increases his amount of insurance, the Employee will be insured, subject to the Delayed Effective Date of Insurance, for the increase on the latest of:
-    the date the Employee makes a written application for the change in plan options; or
-    the date the Employee's Family Status changed; or
-    the date Sun Life approves the Employee's Evidence of Insurability, if required.

If, due to the Family Status Change, the Employee increases his Dependent's amount of insurance, the Dependent will be insured, subject to the Delayed Effective Date of Insurance, for the increase on the latest of:
-    the date the Employee makes a written application for the change in plan options; or
-    the date the Employee's Family Status changed; or
-    the date Sun Life approves the Dependent's Evidence of Insurability, if required.

If, due to the Family Status Change, the Employee decreases his or his Dependent's amount of insurance, the Employee or Dependent will be insured for the decrease on the date the Employee makes a written application for the change in plan options.

**Delayed Effective Date of Insurance**

The Effective Date of any initial, increased or additional insurance will be delayed for an Employee if he is not Actively at Work.  The initial, increased or additional insurance will become effective on the date the Employee returns to an Actively at Work status.

**Section III**
**Eligibility and Effective Dates**

The Effective Date of any initial, increased or additional insurance will be delayed for a Dependent if he is hospital confined. The initial, increased or additional insurance will become effective on the date the Dependent is no longer hospital confined. Hospital confined does not apply to a newborn child.

**Reinstatement of Insurance**

An Employee previously insured under this Policy will become insured, subject to the Delayed Effective Date of Insurance, on the date he is eligible. The Employee will be enrolled in the same plan option elected prior to his termination if he becomes insured again within 12 months. An Employee may apply for an increase in his amount of insurance after coverage is reinstated, but the Employee must submit Evidence of Insurability. The increased amount of insurance will not be effective until Sun Life approves the Employee's Evidence of Insurability. A change in the plan options can only be made at the Annual Enrollment Period or after a Family Status Change.

**All Other Changes in Insurance**

Changes in an Employee's amount of insurance due to a salary change will take effect immediately upon the date of change and changes due to class or age changes will take effect on the January 1 st following the date of change.

However, any increase in insurance will be subject to any Evidence of Insurability requirements and the Delayed Effective Date of Insurance provision.

**Section IV**
**Benefit Provisions**

**Employee Life Insurance**

**Death Benefit**

If Sun Life receives Notice and Proof of Claim that an Employee dies while insured, then subject to the Exclusions, Sun Life will pay the amount of Life Insurance in force on the Employee's date of death.

Basic Life Insurance

The amount of Basic Life Insurance is the Employee's Basic amount of insurance as determined in Section I, Schedule of Benefits.

In no event shall an Employee's Basic Life Insurance exceed the Basic Maximum Benefit (shown in Section I, Schedule of Benefits).

The amount of Basic Life Insurance is subject to any age reductions or terminations shown in Section I, Schedule of Benefits.

If a former Employee had converted his Basic Life Insurance under the Conversion Privilege of this Policy, his amount of Basic Life Insurance will be reduced by the amount of any insurance remaining in force under that individual policy.

Optional Life Insurance

The amount of Optional Life Insurance is the lesser of:

1.  the Employee's Optional amount of insurance elected (as determined in Section I, Schedule of Benefits); or
2.  the Employee's Guaranteed Issue Amount for Optional Life Insurance (shown in Section I, Schedule of Benefits), plus any amount of insurance that Evidence of Insurability has been approved by Sun Life in excess of the Guaranteed Issue Amount for Optional Life Insurance.

In no event shall an Employee's Basic and Optional Life Insurance exceed the Combined Maximum Benefit (shown in Section I, Schedule of Benefits).

The amount of Optional Life Insurance is subject to any Evidence of Insurability requirements, age reductions or terminations shown in Section I, Schedule of Benefits.

If a former Employee had converted his Optional Life Insurance under the Conversion Privilege of this Policy, his amount of Optional Life Insurance will be reduced by the amount of any insurance remaining in force under that individual policy.

**Exclusions**

If the Employee's cause of death is suicide:

1.  No amount of Optional Life Insurance is payable if the suicide occurs within 24 months after the Employee's Optional Life Insurance is effective.  Any period of time the Employee was insured for the same amount of Optional Life Insurance under the previous insurer's group Life policy will count towards completion of the 24 months.

2.  No increased or additional amount of Optional Life Insurance is payable if the suicide occurs within 24 months after the increased or additional amount of Optional Life Insurance is effective.

3.  No amount of Optional Life Insurance in excess of the Guaranteed Issue Amount is payable if the suicide occurs within 24 months after the amount in excess of the Guaranteed Issue Amount is effective.

Section IV
Benefit Provisions

**Employee Life Insurance**

**Waiver of Premium Provision**

Total Disabilities that begin before age 70

If Sun Life receives Notice and Proof of Claim that an Employee becomes Totally Disabled:
- while insured; and
- before his 70th birthday; and
- before his retirement;

the amount of Life Insurance will continue for that Employee:
- from the date of Total Disability without further payment of premiums for Total Disabilities that begin before age 65;
- from the date of Total Disability without further payment of premiums for a period of one year for Total Disabilities that begin on or after age 65.

The Employee must apply for Waiver of Premium no later than 12 months after the Employee ceases to be Actively at Work.  Proof of Claim is required no later than 15 months after the Employee ceases to be Actively at Work.  Sun Life may require periodic proof of the continuance of Total Disability.

All amounts of life insurance under this Waiver of Premium Provision are subject to the same Policy terms and conditions including subsequent reductions and terminations at specified ages and/or at retirement as would have been applicable had the Employee not been Totally Disabled.  This amount will be further reduced by the amount of any individual policy issued to the Employee pursuant to the Conversion Privilege of this Policy unless that individual policy is exchanged for a full refund of premiums paid.

Sun Life has the right to designate a Physician to examine the Employee when and as often as may be reasonably required.

The Waiver of Premium for an Employee ceases on the earliest of:
- the date he ceases to be Totally Disabled.
- the date he fails to furnish any required Proof that he continues to be Totally Disabled.
- the date he fails to submit to any required Examinations.
- any period the Employee is not under the regular and continuing care of a Physician providing appropriate treatment by means of examination and testing in accordance with the disabling condition.
- the date he retires.
- the date he attains age 65 or 12 months, whichever is later, for Total Disabilities beginning before age 65.
- the first anniversary of the beginning of Total Disability for Total Disabilities beginning on or after age 65.

An Employee is deemed to be retired when he receives any compensation from a Retirement Plan of the Employer or when the Employee attains age 70, whichever occurs first.

An Employee's rights to continued benefits pursuant to this Waiver of Premium Provision are determined on the date Total Disability begins.  These rights are subject to the terms of this Policy and will not be affected by subsequent amendment or termination of this Waiver of Premium Provision.

**Accelerated Benefit**

Sun Life will pay an Accelerated Benefit to the Employee at the Employee's request, if Sun Life receives satisfactory proof of the Employee's Terminal Illness.

To be eligible for the Accelerated Benefit an Employee must:

 (Applicable to Employees employed on or before January 1, 2014)

**Section IV**
**Benefit Provisions**

**Employee Life Insurance**

- have been Actively at Work on January 1, 2014 and insured under the Life Insurance Benefit Provision for at least 60 days.  Any period of time the Employee was insured for similar benefits under the previous insurer's group life policy will be used to satisfy this requirement;

 (Applicable to Employees employed after January 1, 2014 )

- have been insured under the Life Insurance Benefit Provision for at least 60 days;

(Applicable to All Employees)

- be certified as Terminally Ill with a life expectancy of twelve months or less;
- submit a written request to Sun Life while the Employee's Life Insurance is in force;
- be insured for at least $20,000 of Life Insurance;
- have a signed acknowledgment and agreement to pay the Accelerated Benefit from any applicable absolute assignee, irrevocable beneficiary, or former spouse if the former spouse was required to be the beneficiary as part of a divorce decree.

Sun Life may confirm the diagnosis of a Terminal Illness with a medical examination performed by a Physician of Sun Life's choice.

The Accelerated Benefit is an amount up to 75% of the applicable amount of Life Insurance in force as of the date Sun Life receives a written request to provide an Accelerated Benefit.

The Accelerated Benefit will be paid as a single lump sum.  The maximum amount of the Accelerated Benefit is $500,000.  The minimum amount of the Accelerated Benefit that can be requested is $10,000.  The Accelerated Benefit may be elected only once during the lifetime of the Employee.

If the Employee has received accelerated life insurance benefits under any other group insurance policy, that Employee is precluded from receiving up to that amount from Sun Life, as an Accelerated Benefit or as a Death Benefit.

If an Employee receives an Accelerated Benefit payment, the amount of Life Insurance remaining in force will be reduced by an amount equal to the Accelerated Benefit paid.  The remaining amount of life insurance is subject to the same Policy terms and conditions including subsequent reductions and terminations at specified ages and/or at retirement as would have been applicable had the Employee not received an Accelerated Benefit.

If the Employee is eligible for Waiver of Premium, the amount of life insurance remaining in force on which premiums are waived will be based on the reduced amount of life insurance.

**Section IV**
**Benefit Provisions**

**Employee Life Insurance**

If the Employee subsequently converts his amount of life insurance, the amount eligible for conversion will be based on the reduced amount of life insurance.

**Conversion Privilege**

**Benefit**

1.  If all or part of an Employee's Life Insurance ceases or reduces due to:
    - termination of his employment; or
    - termination of his membership in an Eligible Class; or
    - the Employee's retirement; or
    - the Employee reaching a specified age; or
    - the Employee changing to a different Eligible Class; or
    - termination of the Employee's Waiver of Premium continuation; or
    - the Employee's continuation period ending during layoff or an approved leave of absence;

    then the Employee may apply for an individual policy on his own life up to the amount that ceased.  If the amount of Life Insurance that ceased is $10,000 or more, the minimum amount of the individual policy must be $10,000.

2.  If the Employee has been continuously insured for five or more years under this Policy's Life Benefit Provision and all or part of the Employee's Life Insurance ceases or reduces due to:
    - reduction of the amount of Life Insurance in an Eligible Class by an amendment to the Life Insurance Benefit Provision; or
    - termination of the Life Insurance Benefit Provision; or
    - termination of this Policy; or
    - termination of an Eligible Class by an amendment to the Life Insurance Benefit Provision;

    then the Employee may apply for an individual policy on his own life.  The maximum amount of the policy will be the lesser of:
    - $2,000; or
    - the amount that ceased, reduced by the amount of any life insurance the Employee is eligible for under any group policy within 31 days after his Life Insurance ceased.

The Employee will be issued an individual policy without Evidence of Insurability.

**Application for the Individual Policy**

1.  written application must be made to Sun Life along with payment of the first premium, within the 31 day period (the 31 day conversion period) following the date the insurance ceases or reduces.  If the Employee is not given notice of this conversion privilege within 15 days following the date his insurance ceases or reduces, the Employee shall have an additional 15 days to exercise this conversion privilege.  In no event will this conversion privilege be extended beyond 60 days following the 31 day conversion period.

2.  the individual policy may be any plan of permanent life insurance available for conversion by Sun Life at the attained age and amount requested, but without disability or other supplemental benefits.

3.  the premium will be the rate Sun Life charges for the standard class of risk and age to which the Employee belongs on the effective date of the individual policy.

4.  the effective date of the individual policy will be the day after the 31 day conversion period.

**Section IV**
**Benefit Provisions**

**Employee Life Insurance**

**Death Within 31 Days**

If the Employee dies during the 31 day conversion period, a benefit will be paid upon receipt of Notice and Proof of Claim, whether or not application for the individual policy or payment of the first premium has been made.  The benefit is the amount of Life Insurance the Employee would have been eligible to convert.

**Section IV**
**Benefit Provisions**

**Employee Life Insurance**

**Continuity of Coverage**

In order to prevent loss of coverage for an Employee when this Policy replaces a group Life policy the Employer had in force with another insurer immediately prior to January 1, 2014, Sun Life will provide the following coverage.

**Employees not Actively at Work on January 1, 2014**

An Employee may become insured under this Policy on January 1, 2014, subject to all of the following conditions:

1.  he was insured under the prior insurer's group Life policy immediately prior to January 1, 2014; and
2.  he is not Actively at Work on January 1, 2014; and
3.  he is a member of an Eligible Class under this Policy; and
4.  premiums for the Employee are paid up to date; and
5.  he is not receiving or eligible to receive benefits under the prior insurer's group Life policy.

Any Life benefit payable will be the lesser of:
-   the Life benefit payable under this Policy; or
-   the Life benefit payable under the prior insurer's group Life policy had it remained in force.

All other provisions of Sun Life's Policy will apply.

**Section IV**
**Benefit Provisions**

**Dependent Optional Life Insurance**

**Death Benefit**

If Sun Life receives Notice and Proof of Claim that a Dependent dies while insured, then subject to the Exclusions, Sun Life will pay the amount of Optional Life Insurance in force on the Dependent's date of death.

Optional Life Insurance

The amount of Dependent Optional Life Insurance is the lesser of:

1.    the Dependent's amount of Optional Life Insurance elected by the Employee in the Schedule (as determined in Section I, Schedule of Benefits); or
2.    the Guaranteed Issue Amount (shown in Section I, Schedule of Benefits), plus any amount of insurance that Evidence of the Dependent's Insurability has been approved by Sun Life in excess of the Dependent's Guaranteed Issue Amount.

In no event shall a Dependent's Optional Life Insurance exceed the Optional Maximum Benefit shown in Section I, Schedule of Benefits.

The amount of Dependent Optional Life Insurance is subject to any Evidence of Insurability requirements or age reductions shown in Section I, Schedule of Benefits.

If a Dependent had previously converted his Optional Life Insurance under the Conversion Privilege of this Policy, his amount of Dependent Optional Life Insurance will be reduced by the amount of any insurance remaining in force under that individual policy.

**Exclusions**

If the Dependent Spouse's cause of death is suicide:

1.    No amount of Dependent Spouse Optional Life Insurance is payable if the suicide occurs within 24 months after the Dependent Spouse's Optional Life Insurance is effective.  Any period of time the Dependent Spouse was insured for the same amount of Dependent Spouse Optional Life Insurance under the previous insurer's group Life policy will count towards completion of the 24 months.

2.    No increased or additional amount of Dependent Spouse Optional Life Insurance is payable if the suicide occurs within 24 months after the increased or additional amount of Dependent Spouse Optional Life Insurance is effective.

3.    No amount of Dependent Spouse Optional Life Insurance in excess of the Guaranteed Issue Amount is payable if the suicide occurs within 24 months after the amount in excess of the Guaranteed Issue Amount is effective.

**Conversion Privilege**

**Benefit**

1.    If all or part of a Dependent's Optional Life Insurance ceases or reduces due to:
       -    termination of the Employee's employment; or
       -    termination of the Employee's membership in an Eligible Class; or
       -    the Employee's retirement; or
       -    the Employee reaching a specified age; or
       -    the Employee's death; or
       -    the Employee changing to a different Eligible Class; or

**Section IV**
**Benefit Provisions**

**Dependent Optional Life Insurance**

- the Dependent no longer meeting the definition of a Dependent;

then the Employee or Dependent may apply for an individual policy on the Dependent's life up to the amount that ceased. If the amount of Optional Life Insurance that ceased is $10,000 or more, the minimum amount of the individual policy must be $10,000.

2.   If the Dependent has been continuously insured for five or more years under this Policy's Dependent Optional Life Insurance Benefit Provision and the Dependent's Optional Life Insurance ceases due to:

- termination of the Dependent Optional Life Insurance Benefit Provision; or
- termination of this Policy; or
- termination of an Eligible Class by an amendment to the Dependent Optional Life Insurance Benefit Provision;

then the Employee or Dependent may apply for an individual policy on the Dependent's life. The maximum amount of the policy will be the lesser of:
- $2,000; or
- the amount that ceased, reduced by the amount of any life insurance the Dependent is eligible for under any group policy within 31 days after his Optional Life Insurance ceased.

The Dependent will be issued an individual policy without Evidence of Insurability.

**Application for the Individual Policy**

1.   written application must be made to Sun Life along with payment of the first premium, within the 31 day period (the 31 day conversion period) following the date the insurance ceases or reduces. If the Dependent is not given notice of this conversion privilege within 15 days following the date his insurance ceases or reduces, the Dependent shall have an additional 15 days to exercise this conversion privilege. In no event will this conversion privilege be extended beyond 60 days following the 31 day conversion period.

2.   the individual policy may be any plan of permanent life insurance available for conversion by Sun Life at the attained age and amount requested, but without disability or other supplemental benefits.

3.   the premium will be the rate Sun Life charges for the standard class of risk and age to which the Dependent belongs on the effective date of the individual policy.

4.   the effective date of the individual policy will be the day after the 31 day conversion period.

**Death Within 31 Days**

If the Dependent dies during the 31 day conversion period, a benefit will be paid upon receipt of Notice and Proof of Claim, whether or not application for the individual policy or payment of the first premium has been made. The benefit is the amount of Optional Life Insurance the Dependent would have been eligible to convert.

**Section IV**
**Benefit Provisions**

**Dependent Optional Life Insurance**

**Continuity of Coverage**

In order to prevent loss of coverage for an Employee's Dependent when this Policy replaces a group Life policy the Employer had in force with another insurer immediately prior to January 1, 2014, Sun Life will provide the following coverage.

**Dependents subject to the Delayed Effective Date of Insurance on January 1, 2014**

An Employee's Dependent may become insured under this Policy on January 1, 2014, subject to all of the following conditions:

1.    the Dependent was insured under the prior insurer's group Life policy immediately prior to January 1, 2014; and
2.    the Dependent is subject to the Delayed Effective Date of Insurance on January 1, 2014; and
3.    the Employee is a member of an Eligible Class under this Policy; and
4.    premiums for the Dependent are paid up to date; and
5.    the Dependent is not receiving or eligible to receive benefits under the prior insurer's group Life policy.

Any Dependent Optional Life benefit payable will be the lesser of:
- the Dependent Optional Life benefit payable under this Policy; or
- the Dependent Optional Life benefit payable under the prior insurer's group Life policy had it remained in force.

All other provisions of Sun Life's Policy will apply.

**Section IV**
**Benefit Provisions**

**Employee and Dependent Accidental Death and Dismemberment Insurance**

If Sun Life receives Notice and Proof of Claim that an Insured Person:
-   dies from accidental drowning while insured; or
-   sustains an Accidental Bodily Injury while insured, which results in loss of life, sight or limb within 365 days of the date of that injury; or
-   sustains a loss of life, sight or limb within 365 days due to an accidental exposure to the elements while insured;

Sun Life will pay, subject to the Exclusions, the following percentage of Accidental Death and Dismemberment Insurance shown in Section I, Schedule of Benefits that was in force on the date of the Accidental Bodily Injury for the following losses:

Life.................................................................................................................................100%

Sight of one eye...............................................................................................................50%

One limb..........................................................................................................................50%

Speech and hearing.........................................................................................................100%

Speech or hearing............................................................................................................50%

Thumb and index finger
of the same hand.............................................................................................................25%

Quadriplegia....................................................................................................................100%

Paraplegia........................................................................................................................75%

Hemiplegia......................................................................................................................50%

The maximum amount of Accidental Death and Dismemberment Benefit payable for losses resulting from any one accident is 100%.

Loss of limb means severance of hand or foot at or above the wrist or ankle joint.  Loss of sight, speech or hearing must be total and irrecoverable.  Loss of thumb and index finger means severance through or above the metacarpophalangeal joints.

Quadriplegia means the total and permanent paralysis of both upper and lower limbs.  Paraplegia means the total and permanent paralysis of both lower limbs.  Hemiplegia means the total and permanent paralysis of the upper and lower limbs on one side of the body.

**Common Carrier Benefit**

Sun Life will pay an additional Common Carrier Benefit if an Insured Person's loss of life occurs while traveling as a fare-paying passenger on a public conveyance operated by a common carrier.

The Common Carrier Benefit is 100% of the amount of Basic Accidental Death Benefit payable.

The Common Carrier Benefit is 100% of the amount of Optional Accidental Death Benefit payable.

**Business Travel Benefit**

93P-LH-AD&D.2

Page No. 34

Accidental Death and
Dismemberment Benefit Provision
January 1, 2014

AR 116

**Section IV**
**Benefit Provisions**

**Employee and Dependent Accidental Death and Dismemberment Insurance**

Sun Life will pay an additional Business Travel Benefit if an Employee's loss of life occurs while traveling on business for the Employer.

The Business Travel Benefit for Basic Accidental Death and Dismemberment Insurance is the lesser of:
- $25,000; or
- 25% of the amount of Basic Accidental Death Benefit payable;
reduced by any benefit payable under the Common Carrier Benefit.

The Business Travel Benefit for Optional Accidental Death and Dismemberment Insurance is the lesser of:
- $25,000; or
- 25% of the amount of Optional Accidental Death Benefit payable;
reduced by any benefit payable under the Common Carrier Benefit.

Business Travel means traveling to another location to conduct the Employer's business other than the Employee's normal workplace. Business Travel starts from the time the Employee leaves his place of residence to commence the Employer's business until the Employee returns to his place of residence. Business Travel does not include personal deviations; nor Employee vacations.

Personal Deviation means an activity that is not reasonably related to the Employer's business and not incidental to the business trip.

An Employee's place of residence will change to the location of the Business Travel if an Employee's stay at that location exceeds 60 days.

**Seat Belt/Air Bag Benefit**

Sun Life will pay an additional Seat Belt/Air Bag Benefit if an Insured Person dies as a result of an automobile accident and an Accidental Death Benefit is payable under this Policy.

**Seat Belt Benefit**

The Seat Belt Benefit is payable if the Insured Person was wearing a seat belt at the time of the accident.

The Seat Belt Benefit is 100% of the amount of Basic Accidental Death Benefit payable or $25,000, whichever is less.

The Seat Belt Benefit is 100% of the amount of Optional Accidental Death Benefit payable or $25,000, whichever is less.

Sun Life must receive satisfactory written proof that the Insured Person's death resulted from an automobile accident and that the Insured Person was wearing a seat belt at the time of the accident. A copy of the police report is required.

**Air Bag Benefit**

The Air Bag Benefit is payable if a Seat Belt Benefit is payable and the Insured Person was positioned in a seat protected by a Supplemental Restraint System which inflated on impact.

The Air Bag Benefit is 10% of the amount of Basic Accidental Death Benefit payable or $5,000, whichever is less.

The Air Bag Benefit is 10% of the amount of Optional Accidental Death Benefit payable or $5,000, whichever is less.

Sun Life must receive satisfactory written proof that the Insured Person's death resulted from an automobile accident and that the Supplemental Restraint System properly inflated. A copy of the police report is required.

93P-LH-AD&D.2

Page No. 35

Accidental Death and
Dismemberment Benefit Provision
January 1, 2014

AR 117

**Section IV**
**Benefit Provisions**

**Employee and Dependent Accidental Death and Dismemberment Insurance**

Seat Belt means a properly installed seat belt, lap and shoulder restraint, or other restraint approved by the National Highway Traffic Safety Administration.

Supplemental Restraint System means a factory installed air bag which inflates for added protection to the head and chest areas.

Automobile means a motor vehicle licensed for use on public highways.

**Helmet Benefit**

Sun Life will pay an additional Helmet Benefit if an Insured Person dies as a result of a Motorcycle accident and an Accidental Death Benefit is payable under this Policy.

The Helmet Benefit is payable if the Insured Person was wearing a Helmet at the time of the accident and the driver of the Motorcycle held a valid drivers license with a Motorcycle endorsement.

The Helmet Benefit is 50% of the amount of Basic Accidental Death Benefit payable or $25,000, whichever is less.

The Helmet Benefit is 50% of the amount of Optional Accidental Death Benefit payable or $25,000, whichever is less.

Sun Life must receive satisfactory written proof that the Insured Person's death resulted from a Motorcycle accident and that the Insured Person was wearing a Helmet at the time of the accident.  A copy of the police report is required.

Helmet means a protective head covering made of a hard material to resist impact and which is approved by the American National Safety Institute (ANSI) and/or Snell.

Motorcycle means a motor vehicle licensed for use on public highways which requires a Motorcycle endorsement on a drivers license to operate the vehicle.

**Disappearance**

Sun Life will presume, subject to no objective evidence to the contrary, that an Insured Person is dead and has died as a result of an Accidental Bodily Injury if:

1.  an Insured Person disappears as a result of an accidental wrecking, sinking or disappearance of a conveyance in which the Insured Person was known to be a passenger; and
2.  the body of the Insured Person is not found within 365 days after the date of the conveyance's disappearance.

**Felonious Assault Benefit**

Sun Life will pay an additional Felonious Assault Benefit if an Accidental Death or Accidental Dismemberment Benefit is payable as a result of an Employee sustaining a felonious assault while the Employee was at work or while traveling on business for the Employer.

The Felonious Assault Benefit is 25% of the Basic Accidental Death and Dismemberment Benefit payable or $25,000, whichever is less.

The Felonious Assault Benefit is 25% of the Optional Accidental Death and Dismemberment Benefit payable or $5,000, whichever is less.

93P-LH-AD&D.2

Page No. 36

Accidental Death and
Dismemberment Benefit Provision
January 1, 2014

AR 118

**Section IV**
**Benefit Provisions**

**Employee and Dependent Accidental Death and Dismemberment Insurance**

The Felonious Assault cannot be inflicted by an Employee of the Employer or a member of the Employee's family or household.

An Employee's family includes spouse, child, parent, brother, sister, an Employee spouse's child, parent, brother or sister or the Employee's current or previous spouse, girlfriend or boyfriend.

An Employee's household includes any person residing with the Employee whether or not related by blood or marriage.

Felonious Assault means an action that would be characterized as a felony in the jurisdiction where it occurred.

**Repatriation Benefit**

If an Accidental Death Benefit is payable and the Insured Person's loss of life occurs at least 100 miles from the Insured Person's permanent place of residence, Sun Life will reimburse the Executor or Administrator of the Insured Person's estate for the reasonable and customary expenses incurred for the preparation of the body and its transportation to the place of burial or cremation up to a maximum benefit of $5,000 or $10,000 if the Insured Person is insured for Optional AD&D Insurance. Written Proof of the expenses incurred must be submitted to Sun Life prior to payment.

**Bereavement Counseling Benefit**

If an Accidental Death Benefit is payable, Sun Life will pay a Bereavement Counseling Benefit during an Insured Person's Immediate Family Member's period of bereavement for up to 12 months after an Insured Person's death.

The Bereavement Counseling Benefit equals the Immediate Family Member's incurred expenses reduced by any reimbursement the Immediate Family Member receives from other sources.

The Maximum Bereavement Counseling Benefit payable is $250 per Immediate Family Member, to a maximum of $1,000 or $2,000 if the Insured Person is insured for Optional AD&D Insurance and is per insured's death.

Immediate Family Member means an Employee, an Employee's spouse or an Employee's child under age 26.

Written Proof of the actual out of pocket counseling expenses incurred must be submitted to Sun Life prior to payment.

**Dependent Education Benefit**

If an Employee Accidental Death Benefit is payable under this Policy, an Employee's Dependent may be eligible for a Dependent Education Benefit.

A Dependent Child is eligible for an Education Benefit if the Dependent Child enrolls as a full-time student at a post-secondary school before reaching age 26 and within 1 year after the Employee's date of death.

The annual Dependent Child's Education Benefit is the lesser of:
- Incurred Expenses; or
- $2,500 or $5,000 if the Employee is insured for Optional AD&D Insurance; or
- 5% of the Employee's amount of Basic Accidental Death Benefit payable plus 5% of the Employee's amount of Optional Accidental Death Benefit payable.

The Dependent Child Education Benefit is payable at the end of each semester per dependent child, for a maximum of four consecutive years per child. Proof of the child's enrollment and Incurred Expenses are required each semester prior to payment of the benefit.

93P-LH-AD&D.2

Page No. 37

Accidental Death and
Dismemberment Benefit Provision
January 1, 2014

AR 119

**Section IV**
**Benefit Provisions**

**Employee and Dependent Accidental Death and Dismemberment Insurance**

Incurred Expenses include tuition, fees, cost of books, room and board, transportation and any other costs paid directly to the school.

A Dependent Spouse is eligible for an Education Benefit if the Dependent Spouse enrolls in any school for the purpose of retraining or developing skills needed for employment within 1 year after the Employee's date of death.

The Dependent Spouse's Education Benefit is equal to the expenses paid directly to such school or $3,000 or $6,000, if the Employee is insured for Optional AD&D Insurance, whichever is less. Proof of enrollment and expenses are required prior to payment of the benefit.

**Child Care Benefit**

Sun Life will pay a Child Care Benefit if an Employee or Dependent Spouse Accidental Death Benefit is payable and:
- an Employee's Dependent Child is enrolled in a legally licensed Child Care Center on the date of the accident; or
- an Employee's Dependent Child enrolls in a legally licensed Child Care Center within 365 days after the date of the Employee's or Dependent Spouse's death; and
- the Employee's Dependent Child is under age 13.

The Child Care Benefit is the lesser of:
- the actual cost charged by the Child Care Center per year; or
- $5,000 or $6,000 if the Employee is insured for Optional AD&D Insurance; or
- 3% of the Employee's amount of Basic Accidental Death Benefit payable plus 3% of the Employee's or Dependent Spouse's amount of Optional Accidental Death Benefit payable.

The Child Care Benefit is payable each year for a maximum of 4 years per Dependent Child or until the child attains age 13, whichever is less. The Child Care Benefit is payable immediately upon receipt of satisfactory proof of paid expenses and that the Employee's Dependent child is enrolled in a legally licensed Child Care Center.

Child Care expenses do not include:
- expenses incurred prior to the Employee's or Dependent Spouse's death; or
- charges for room and board; or
- charges for ordinary living, traveling or clothing expenses.

Child Care Center means a provider which is duly licensed, certified or accredited by the jurisdiction in which it is located, is run according to the laws and regulations applicable to child care facilities and which provides child care and supervision for children in a group setting on a regular basis. Child Care Center does not include a hospital, the child's home or care provided during the child's normal school hours.

**Exclusions**

No Accidental Death or Accidental Dismemberment payment will be made for a loss which is due to or results from:
- suicide while sane or insane.
- intentionally self-inflicted injuries.
- bodily or mental infirmity or disease of any kind, or infection unless due to an accidental cut or wound.
- committing or attempting to commit an assault, felony or other criminal act.
- active participation in a war (declared or undeclared) or active duty in any armed service during a time of war.
- active participation in a riot, rebellion, or insurrection.
- the Insured Person's voluntary use of any controlled substance as defined in Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970, as now or hereafter amended, unless administered on the advice of a Physician.

93P-LH-AD&D.2

Page No. 38

Accidental Death and
Dismemberment Benefit Provision
January 1, 2014

AR 120

**Section IV**
**Benefit Provisions**

**Employee and Dependent Accidental Death and Dismemberment Insurance**

**Continuity of Coverage**

In order to prevent loss of coverage for an Employee when this Policy replaces a group AD&D policy the Employer had in force with another insurer immediately prior to January 1, 2014, Sun Life will provide the following coverage.

**Employees not Actively at Work on January 1, 2014**

An Employee may become insured under this Policy on January 1, 2014, subject to all of the following conditions:

1.  he was insured under the prior insurer's group AD&D policy immediately prior to January 1, 2014; and
2.  he is not Actively at Work on January 1, 2014; and
3.  he is a member of an Eligible Class under this Policy; and
4.  premiums for the Employee are paid up to date; and
5.  he is not receiving or eligible to receive benefits under the prior insurer's group AD&D policy.

Any AD&D benefit payable will be the lesser of:
-   the AD&D benefit payable under this Policy; or
-   the AD&D benefit payable under the prior insurer's group AD&D policy had it remained in force.

All other provisions of Sun Life's Policy will apply.

93P-LH-AD&D.2

Page No. 39

Accidental Death and
Dismemberment Benefit Provision
January 1, 2014

AR 121

**Section IV**
**Benefit Provisions**

**Short Term Disability Income Benefits**

If Sun Life receives Notice and Proof of Claim that an Employee is Totally or Partially Disabled, a Net Weekly Benefit will be payable, subject to the Limitations and Exclusions.

To be eligible to receive a Net Weekly Benefit, the Employee must:

1. satisfy the Elimination Period with the required days of Total Disability; and
2. provide proof of continued Total or Partial Disability; and
3. have regular and continuing care by a Physician who provides appropriate treatment by means of examination and testing in accordance with the disabling condition; and
4. not be engaged in any occupation or employment for wage or profit other than Partial Disability employment with the Employer.

Proof of Total or Partial Disability must be given to Sun Life upon request and at the Employee's expense.

A Net Weekly Benefit will:

1. be payable at the end of each week for that week;
2. include reductions described as Other Income Benefits;
3. be paid on a pro-rata basis. An amount equal to 1/7 of the Net Weekly Benefit is payable for each day of Total or Partial Disability that is less than a full week.

**Total Disability Benefit**

If an Employee is Totally Disabled, the Net Weekly Benefit will be calculated based on the Total Disability Benefit formula. An Employee qualifies for this benefit if, after completion of the Elimination Period, the Employee, because of Injury or Sickness, is unable to perform all of the material and substantial duties of his own occupation and is not engaged in any occupation for wage or profit.

To determine the Total Disability Benefit:

1. Take the lesser of:

    a. the Employee's Total Weekly Earnings multiplied by the Benefit Percentage (shown in Section I, Schedule of Benefits); or

    b. the Maximum Weekly Benefit (shown in Section I, Schedule of Benefits); then

2. Subtract Other Income Benefits from the amount determined in Step 1.

**Partial Disability Benefit**

If an Employee is Partially Disabled, the Net Weekly Benefit will be calculated based on the Partial Disability Benefit formula. An Employee qualifies for this benefit if, within 14 days after Total Disability Benefits cease, the Employee, because of that same Injury or Sickness, continues to be unable to perform all of the material and substantial duties of his own occupation on a full-time basis, but he is:

1. performing at least one of the material and substantial duties of his own occupation or another occupation on a part-time or full-time basis; and

2. earning less than 80% of his Total Weekly Earnings due to the same Injury or Sickness that caused Total Disability.

## Section IV
## Benefit Provisions

### Short Term Disability Income Benefits

Partial Disability employment must be for the Employer defined under this Policy.  Partial Disability employment cannot be for any other employer or self-employment.

If an Employee returns to work, in his own occupation or another occupation, and is earning more than 20% of his Total Weekly Earnings, a Partial Disability Benefit will be paid.

To determine the Partial Disability Benefit:

1.  add the Employee's earnings from employment and income received from Other Income Benefits to the Total Disability Benefit.

2.  if this sum is in excess of 100% of the Employee's Total Weekly Earnings, subtract the amount in excess of 100% from the Total Disability Benefit.  This result is the Partial Disability Benefit; or

    if the sum is less than 100% of the Employee's Total Weekly Earnings, the Partial Disability Benefit is the Total Disability Benefit.

If the Employee is earning 20% or less of his Total Weekly Earnings, a Total Disability Benefit will be paid.

### Other Income Benefits

Other Income Benefits are those benefits provided or available to an Employee while a Short Term Disability Benefit is payable.  These Other Income Benefits, other than retirement benefits, must be provided as a result of the same Total or Partial Disability payable under this Policy.  Other Income Benefits include:

1.  The amount the Employee is eligible for under:
    a.  Unemployment Compensation Law; or
    b.  Compulsory Benefit Act or Law; or
    c.  any other act or law of like intent.

2.  Any labor management trustee, union or employee benefit plans that are funded in whole or in part by the Employer.

3.  Any disability income benefits the Employee is eligible for under:
    a.  any other group insurance plan of the Employer;
    b.  any governmental retirement system as a result of the Employee's job with his Employer.

Other Income Benefits will include any amount described above which would have been available to the Employee had he applied for that benefit.

### Lump Sum Payment

If an Employee receives a lump sum payment for any Other Income Benefits, Sun Life will prorate the lump sum on a weekly basis over the time period specified for the lump sum payment.  If no time period is stated, the lump sum payment will be prorated on a weekly basis over the Employee's expected lifetime as determined by Sun Life.

**Section IV**
**Benefit Provisions**

**Short Term Disability Income Benefits**

**Estimated Other Income**

If, at the time of calculating any STD benefit payments, the benefit an Employee is entitled to apply for and receive under any Other Income Benefits has not been awarded or denied or if they have been denied and are being appealed, Sun Life will estimate the amount of that Other Income Benefit.  The estimate will be used to reduce the amount of the STD benefit payments until the Other Income Benefit has been awarded or denied.  However, the estimate will not be used if, within 15 days of becoming Totally or Partially Disabled, the Employee meets both of the following conditions:

1.  the Employee has applied for the Other Income Benefits; and
2.  the Employee completes and signs a Reimbursement Agreement.  This Agreement states that the Employee promises to reimburse Sun Life any overpayment caused by an award of Other Income Benefits.

**Adjustment of Benefits**

The Employee must notify Sun Life of the amount of Other Income Benefits when it is approved or adjusted (other than cost of living increases).  Sun Life will make an adjustment to the Net Weekly Benefit payment when Sun Life receives written notice of the amount of the Other Income Benefit.  Written Notice must be sent within 31 days after receipt of the Other Income Benefit award.

If after Sun Life makes an adjustment to the Net Weekly Benefit the Employee has been underpaid, Sun Life will make a lump sum refund of the amount that has been underpaid to the Employee.

If after Sun Life makes an adjustment to the Net Weekly Benefit the Employee has been overpaid, the Employee must reimburse Sun Life the amount of the overpayment within 31 days of the award.  Sun Life has the option to reduce or eliminate future STD benefit payments instead of requiring reimbursement in a lump sum.  During the overpayment reimbursement period the minimum weekly benefit will not apply.

**Cost of Living Freeze**

After the first deduction for each of the Other Income Benefits, Sun Life will not reduce the STD benefit payments due to cost of living increases an Employee receives from any of the sources described as Other Income Benefits.  This increase does not apply to any increase in earnings the Employee receives from employment.

**Termination of Short Term Disability Benefits**

Total or Partial Disability Benefits will cease on the earliest of:

1.  the date the Employee is no longer Totally or Partially Disabled.
2.  the date the Employee dies.
3.  the end of the Maximum Benefit Period.
4.  the date the Employee fails to provide adequate employment earnings information or proof of continuing Total or Partial Disability as requested.
5.  the date the Employee's Partial Disability employment earnings exceed 80% of his Total Weekly Earnings.
6.  the date Sun Life determines the Employee is able to perform all of the material and substantial duties of his own occupation, even if the Employee chooses not to work.

**Successive Periods**

Successive periods of Total Disability after a Net Weekly Benefit was payable will be considered a single period if the Employee, in the time between the successive periods, was Actively at Work for less than:

1.  30 days, if due to the same or related causes;

**Section IV**
**Benefit Provisions**

**Short Term Disability Income Benefits**

2.  one day, if due to an entirely unrelated cause.

The Employee will not have to complete a new Elimination Period.  The STD benefit will continue to be calculated based on the Employee's Total Weekly Earnings in effect at the time the initial period of Total Disability began.  The STD benefit will be payable, in total, for no longer than the Maximum Benefit Period at the time of the initial period of Total Disability.

This successive periods provision will cease to apply on the earliest of the following dates:

1.  the date the Employee becomes eligible for benefits under any other group STD policy; or
2.  the date this Policy is terminated.

**Limitations**

No STD benefit will be payable for any Total or Partial Disability during any of the following periods:

1.  any period the Employee is not under the regular and continuing care of a Physician providing appropriate treatment by means of examination and testing in accordance with the disabling condition.

2.  any period the Employee fails to submit to any medical examination requested by Sun Life.

3.  any period the Employee engages in any occupation or employment for wage or profit other than Partial Disability employment for the Employer.

4.  any period of Total or Partial Disability due to Mental Illness, unless the Employee is under the continuing care of a specialist in psychiatric care.

5.  any period of Total or Partial Disability due to Drug and Alcohol Illness, unless the Employee is actively supervised by a Physician or Rehabilitation Counselor and is receiving continuing treatment from a rehabilitation center or a designated institution approved by Sun Life.

**Exclusions**

No STD benefit will be payable for any Total or Partial Disability that is due to:

1.  intentionally self-inflicted injury.
2.  war, declared or undeclared, or any act of war.
3.  active participation in a riot, rebellion or insurrection.
4.  committing or attempting to commit an assault, felony or other criminal act.
5.  Injury or Sickness for which the Employee is entitled to benefits under any Workers' Compensation, Occupational Disease or similar law.
6.  Injury or Sickness sustained while doing any act or thing pertaining to any occupation for wage or profit.

**Section IV**
**Benefit Provisions**

**Short Term Disability Income Benefits**

**Continuity of Coverage**

In order to prevent loss of coverage for an Employee when this Policy replaces a group STD policy the Employer had in force with another insurer immediately prior to January 1, 2014, Sun Life will provide the following coverage.

**Employees not Actively at Work on January 1, 2014**

An Employee may become insured under this Policy on January 1, 2014, subject to all of the following conditions:

1.  he was insured under the prior insurer's group STD policy immediately prior to January 1, 2014; and
2.  he is not Actively at Work on January 1, 2014; and
3.  he is a member of an Eligible Class under this Policy; and
4.  premiums for the Employee are paid up to date; and
5.  he is not receiving or eligible to receive benefits under the prior insurer's group STD policy.

If an Employee becomes Totally or Partially Disabled on or after January 1, 2014, any STD benefit payable will be based on the prior insurer's definition of disability and will not exceed the prior insurer's maximum weekly benefit. All other provisions of Sun Life's Policy will apply.

**Section IV**
**Benefit Provisions**

**Long Term Disability Income Benefits**

If Sun Life receives Notice and Proof of Claim that an Employee is Totally or Partially Disabled, a Net Monthly Benefit will be payable, subject to the Limitations and Exclusions.

To be eligible to receive a Net Monthly Benefit, the Employee must:

1.    satisfy the Elimination Period with the required days of Total or Partial Disability;
2.    provide proof of continued Total or Partial Disability; and
3.    have regular and continuing care by a Physician who provides appropriate treatment and regular examination and testing in accordance with the disabling condition.

Proof of Total or Partial Disability must be given to Sun Life upon request and at the Employee's expense.

A Net Monthly Benefit will:
1.    be payable at the end of each month for that month.
2.    include reductions described as Other Income Benefits.
3.    include reductions for Disability Earnings (if applicable).
4.    be paid on a pro-rata basis.  An amount equal to 1/30 of the Net Monthly Benefit is payable for each day of Total or Partial Disability that is less than a full month.
5.    not be less than the Minimum Monthly Benefit specified in the Schedule of Benefits.

**Total Disability Benefit**

**All Eligible Salaried Exempt Employees**

If an Employee is Totally Disabled, the Net Monthly Benefit will be calculated based on the Total Disability Benefit formula.  An Employee qualifies for this benefit if:
-    the Employee is not working or is earning less than 20% of his Indexed Total Monthly Earnings; and
-    the Employee, because of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation.

**All Other Eligible Employees**

If an Employee is Totally Disabled, the Net Monthly Benefit will be calculated based on the Total Disability Benefit formula.  An Employee qualifies for this benefit if:
-    the Employee is not working or is earning less than 20% of his Indexed Total Monthly Earnings; and
-    during the Elimination Period and the next 24 months, the Employee, because of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation.

After Total or Partial Disability benefits combined have been paid for 24 months, the Employee will continue to qualify for this benefit if he is unable to perform with reasonable continuity any Gainful Occupation for which he is, or becomes, reasonably qualified for by education, training or experience.

To determine the Total Disability Benefit:

1.    Take the lesser of:
   a.    the Employee's Total Monthly Earnings multiplied by the Benefit Percentage (shown in Section I, Schedule of Benefits); or

   b.    the Maximum Monthly Benefit (shown in Section I, Schedule of Benefits); then

2.    Subtract Other Income Benefits from the amount determined in Step 1.

**Section IV**
**Benefit Provisions**

**Long Term Disability Income Benefits**

**Partial Disability Benefit**

**All Eligible Salaried Exempt Employees**

If an Employee is Partially Disabled, the Net Monthly Benefit will be calculated based on the Partial Disability Benefit formula. An Employee qualifies for this benefit if:
- the Employee is working and has Disability Earnings of more than 20% but less than 80% of his Indexed Total Monthly Earnings; and
- the Employee, because of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation.

**All Other Eligible Employees**

If an Employee is Partially Disabled, the Net Monthly Benefit will be calculated based on the Partial Disability Benefit formula. An Employee qualifies for this benefit if:
- the Employee is working and has Disability Earnings of more than 20% but less than 80% of his Indexed Total Monthly Earnings; and
- during the Elimination Period and the next 24 months, the Employee, because of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation.

After Total or Partial Disability benefits combined have been paid for 24 months, the Employee will continue to qualify for this benefit if he is unable to perform with reasonable continuity any Gainful Occupation for which he is, or becomes, reasonably qualified for by education, training or experience and has Disability Earnings of less than 60% of his Indexed Total Monthly Earnings.

To determine the Partial Disability Benefit for the first 12 months of the Employee's Partial Disability:

1.    add the Employee's Disability Earnings and income received from Other Income Benefits to the Total Disability Benefit.

2.    if this sum is in excess of 100% of the Employee's Indexed Total Monthly Earnings, subtract the amount in excess of 100% of the Employee's Indexed Total Monthly Earnings from the Total Disability Benefit. This result is the Partial Disability Benefit; or

      if the sum is less than 100% of the Employee's Indexed Total Monthly Earnings, the Partial Disability Benefit is the Total Disability Benefit.

After Partial Disability benefits have been paid for 12 months and the Employee continues to be Partially Disabled, the following proportionate loss formula will be used to determine the Net Monthly Benefit:

$$(A \text{ divided by } B) \text{ multiplied by } C$$

where:

A =   The Employee's Indexed Total Monthly Earnings minus the Employee's monthly Disability Earnings.

B =   The Employee's Indexed Total Monthly Earnings

C =   The Total Disability Benefit.

**Section IV**
**Benefit Provisions**

**Long Term Disability Income Benefits**

**Other Income Benefits**

Other Income Benefits are those benefits provided or available to the Employee while a Long Term Disability Benefit is payable.  These Other Income Benefits, other than retirement benefits, must be provided as a result of the same Total or Partial Disability payable under this Policy.  Other Income Benefits include:

1.  The amount the Employee is eligible for under:
    a.  Workers' Compensation Law; or
    b.  Occupational Disease Law; or
    c.  Unemployment Compensation Law; or
    d.  Compulsory Benefit Act or Law; or
    e.  an automobile no-fault insurance plan; or
    f.  any other act or law of like intent.

2.  The Railroad Retirement Act (including any dependent benefits).

3.  Any labor management trustee, union or employee benefit plans that are funded in whole or in part by the Employer.

4.  Any disability income benefits the Employee is eligible for under:
    a.  any other group insurance plan of the Employer;
    b.  any governmental retirement system as a result of the Employee's job with his Employer.

5.  The benefits the Employee receives under his Employer's Retirement Plan as follows:
    a.  any disability benefits;
    b.  the Employer-paid portion of any retirement benefits.
    (Disability benefits that reduce the Employee's accrued retirement benefit will be treated as a retirement benefit. Retirement benefits do not include any amount rolled over or transferred to any other retirement plan as defined in Section 402 of the Internal Revenue Code.)

6.  The disability or retirement benefits under the United States Social Security Act, or any similar plan or act, as follows:
    a.  Disability benefits the Employee is eligible to receive.
    b.  Disability benefits the Employee's spouse, child or children are eligible to receive because of the Employee's Total or Partial Disability unless the dependent benefits are paid directly to the divorced spouse or to the children in custody of the divorced spouse.
    c.  Retirement benefits received by the Employee.
    d.  Retirement benefits the Employee's spouse, child or children receive because of the Employee's receipt of retirement benefits unless the dependent benefits are paid directly to the divorced spouse or to the children in custody of the divorced spouse.

    If an Employee's Total or Partial Disability begins after Social Security Normal Retirement Age, Social Security Retirement Benefits will not be offset if, prior to his Total or Partial Disability, he was already receiving Social Security Retirement Benefits.

7.  The amount the Employee receives from any accumulated sick leave.

8.  Any salary continuation paid to the Employee by his Employer which causes the Net Monthly Benefit, plus Other Income Benefits and any salary continuation to exceed 100% of the Employee's Total Monthly Earnings.  The amount in excess of 100% of the Employee's Total Monthly Earnings will be used to reduce the Net Monthly Benefit.

Section IV
Benefit Provisions

**Long Term Disability Income Benefits**

9.      Any amount due to income replacement or lost wages the Employee receives by compromise, settlement or other method as a result of a claim for any Other Income Benefit.

10.     Any amount the Employee receives from a voluntary separation of employment agreement from the Employer including severance pay or any other income in settlement of an employment contract.

Other Income Benefits will include any amount described above which would have been available to the Employee had he applied for that benefit.

**Lump Sum Payment**

If an Employee receives a lump sum payment for any Other Income Benefits, Sun Life will prorate the lump sum on a monthly basis over the time period specified for the lump sum payment. If no time period is stated, the lump sum payment will be prorated on a monthly basis over a reasonable period of time as determined by Sun Life.

**Required Application for Other Income**

An Employee must apply for any Other Income Benefits for which the Employee may be eligible. If such benefits are denied, the Employee must appeal the denial to all administrative levels Sun Life deems necessary. Sun Life has the right to receive from the Employee written documentation of the Employee's pursuit of Other Income Benefits.

**Social Security Disability Income Assistance Program**

Sun Life, at the Employee's request, will assist the Employee (if appropriate) through the various levels of the Social Security claim process. Sun Life will assist an Employee with his application and through the appeals process.

**Estimated Other Income**

Sun Life has the right to estimate the amount of Other Income Benefits the Employee is eligible to receive during an Employee's Total or Partial Disability and reduce the LTD benefit payment by the estimated amount. Sun Life will estimate the amount if, at the time of calculating any LTD benefit payments, the Other Income Benefit an Employee may be eligible to receive has not been awarded nor denied or if the Other Income Benefit has been denied and is being appealed. The estimate will be used to reduce the amount of the LTD benefit payments until the Other Income Benefit has been awarded or denied. However, the estimate will not be used if the Employee meets the following conditions:
1.      the Employee has applied for the Other Income Benefits; and
2.      the Employee agrees to appeal any denials of Other Income Benefits to all administrative levels Sun Life deems necessary; and
3.      the Employee completes and signs the Sun Life Reimbursement Agreement.

**Adjustment of Benefits**

The Employee must notify Sun Life in writing, within 31 days of receipt of notice, of the amount of Other Income Benefits when it is approved or if the amount is adjusted (other than for cost of living increases). Sun Life will make an adjustment to the Net Monthly Benefit payment when Sun Life receives the written notice of the amount of the Other Income Benefit.

If after Sun Life makes an adjustment to the Net Monthly Benefit the Employee has been underpaid, Sun Life will immediately make a lump sum refund of the amount that has been underpaid to the Employee.

If after Sun Life makes an adjustment to the Net Monthly Benefit the Employee has been overpaid, the Employee must reimburse Sun Life the amount of the overpayment within 31 days of the award. Sun Life has the right to reduce or

**Section IV**
**Benefit Provisions**

**Long Term Disability Income Benefits**

eliminate future LTD benefit payments until the amount of the overpayment has been repaid. During the overpayment reimbursement period, the Minimum Monthly Benefit will not apply.

**Cost of Living Freeze**

After the first deduction for each of the Other Income Benefits, Sun Life will not reduce LTD benefit payments due to cost of living increases an Employee receives from any of the sources described as Other Income Benefits. This does not apply to any increase in earnings the Employee receives from employment.

**Waiver of Premium for Totally or Partially Disabled Employees**

LTD premium payments for a Totally or Partially Disabled Employee are waived during any period LTD benefits are payable under this Policy. If this Policy is in force when the Employee's Total or Partial Disability ends, the Employee will remain insured if he returns to an Actively at Work status in an Eligible Class and premium payments for the Employee are resumed.

**Termination of Long Term Disability Benefits**

Total or Partial Disability Benefits will cease on the earliest of:

1. the date the Employee is no longer Totally or Partially Disabled.

2. the date the Employee dies.

3. the end of the Maximum Benefit Period.

4. the date the Employee fails to provide adequate employment earnings information or proof of continuing Total or Partial Disability as requested.

5. the date the Employee refuses to complete a rehabilitative assessment or the date the Employee ceases to participate in the Sun Life approved Rehabilitation Program without Good Cause.

**All Eligible Salaried Exempt Employees**

6. the date the Employee's Disability Earnings exceed 80% of his Indexed Total Monthly Earnings.

7. the date Sun Life determines the Employee is able to perform on a full-time basis, the Material and Substantial Duties of his Own Occupation, even if the Employee chooses not to work.

**Full-time basis** means the Employee is able or has the capacity to perform the Material and Substantial Duties of his Own Occupation for the number of hours the Employee normally performed his Own Occupation prior to his Total or Partial Disability.

**All Other Eligible Employees**

6. during the first 24 months of Partial Disability, the date the Employee's Disability Earnings exceed 80% of his Indexed Total Monthly Earnings.

7. after 24 months of Partial Disability, the date the Employee's Disability Earnings exceed 60% of his Indexed Total Monthly Earnings.

**Section IV**
**Benefit Provisions**

**Long Term Disability Income Benefits**

8.    for the first 24 months of Total or Partial Disability, the date Sun Life determines the Employee is able to perform on a full-time basis, the Material and Substantial Duties of his Own Occupation, even if the Employee chooses not to work.

9.    after the first 24 months of Total or Partial Disability, the date Sun Life determines the Employee is able to perform on a full-time basis, any Gainful Occupation for which he is or becomes reasonably qualified for by education, training or experience, even if the Employee chooses not to work.

**Full-time basis** means for the first 24 months of Total or Partial Disability, the Employee is able or has the capacity to perform the Material and Substantial Duties of his Own Occupation for the number of hours the Employee normally performed his Own Occupation prior to his Total or Partial Disability.  After 24 months of Total or Partial Disability, the Employee is able or has the capacity to perform any Gainful Occupation for the number of hours the Employee normally performed his Own Occupation prior to his Total or Partial Disability.

However, if the Employee normally performed his Own Occupation on an average in excess of 40 hours per week, Sun Life will consider the Employee able to perform that requirement if the Employee works or has the capacity to work 40 hours per week.

**Successive Periods**

Successive periods of Total or Partial Disability after a Net Monthly Benefit was payable will be considered a single period if the Employee, in the time between the successive periods, was Actively at Work for less than:

1.    six months, if due to the same or related causes;
2.    one day, if due to an entirely unrelated cause.

The Employee will not have to complete a new Elimination Period.  The LTD benefit will continue to be calculated based on the Employee's Total Monthly Earnings in effect at the time the initial period of Total or Partial Disability began.  The LTD benefit will be payable, in total, for no longer than the Maximum Benefit Period at the time of the initial period of Total or Partial Disability.

This successive periods provision will cease to apply on the earliest of the following dates:

1.    the date the Employee becomes eligible for coverage under any other group LTD policy; or
2.    the date this Policy is terminated; or
3.    the date the Employee refuses to complete a rehabilitative assessment or the date the Employee ceases to participate in the Sun Life approved Rehabilitation Program without Good Cause.

**Rehabilitation Services**

If an Employee is Totally or Partially Disabled, Sun Life may determine that the Employee is a suitable candidate to receive vocational Rehabilitation Services.  In order for the Employee to be eligible for such services, the Employee must have the functional capacity to successfully complete a Rehabilitation Program.  These services include, but are not limited to:

      a.    job modification;
      b.    job placement;
      c.    retraining;
      d.    other activities reasonably necessary to help the Employee return to work.

Sun Life may require an Employee to participate in a rehabilitation assessment or a Rehabilitation Program at Sun Life's expense.  Sun Life will work with the Employee, the Employer and the Employee's Physician and others, as appropriate,

**Section IV**
**Benefit Provisions**

**Long Term Disability Income Benefits**

to develop a Rehabilitation Program.  If the Employee refuses to participate in the rehabilitation efforts, Long Term Disability Income Benefits will cease to be payable.

Eligibility for vocational Rehabilitation Services is based on the Employee's education, training, experience and physical/mental capabilities.  Sun Life determines whether an Employee is eligible for vocational Rehabilitation Services.

The Rehabilitation Program may, at Sun Life's sole discretion, allow for payment of the Employee's medical expense, education expense, moving expense, accommodation expense or family care expense while the Employee participates in the Rehabilitation Program.

**Rehabilitation Program** means a written agreement between the Employee and Sun Life in which Sun Life agrees to provide, arrange or authorize vocational, physical or psychiatric rehabilitation services and the Employee agrees to participate in the Rehabilitation Program.

If the Employee participates in a Sun Life approved Rehabilitation Program, the Employee will receive the greater of:
- the Employee's Benefit Percentage (as shown in Section I, Schedule of Benefits) multiplied by 1.10; or
- the Employee's Net Monthly Benefit payable multiplied by 1.10.

To calculate the increased benefit:
1. Take the current Benefit Percentage and multiply by 1.10.  Then calculate the Total or Partial Disability benefit including any deductions for Disability Earnings or Other Income Benefits.
2. Take the current Net Monthly Benefit payable and multiply by 1.10.

The greater of 1 or 2 is the Rehabilitation increased amount.

The increased amount will cease on the earliest of:
1. the date the Employee completes his Rehabilitation Program; or
2. the date the Employee ceases to participate in his Rehabilitation Program without Good Cause; or
3. the date his LTD benefits cease; or
4. 12 months after his Rehabilitation Program began.

**Good Cause** means documented physical or mental impairments which prevent the Employee from participating in, or completing, the Rehabilitation Program.  Good Cause may also mean a necessary medical program which prevents or interferes with the Employee's participation in, or completion of, the Rehabilitation Program.

**Reasonable Accommodation Benefit**

If an Employee would be able to return to part-time or full-time work with the Employer with a modification to the Employer's workplace, Sun Life may reimburse the Employer (if appropriate) for the reasonable expenses to modify the Employer's workplace up to a maximum of $2,000 unless Sun Life otherwise approves in writing.

**Reasonable Accommodation** means expenses the Employer incurs to accommodate an Employee's Total or Partial Disability.  This includes expenses for tools, equipment, furniture, or any other changes to an Employee's work environment that Sun Life agrees will allow the Employee to return to work.

Sun Life may pay (if appropriate) a Reasonable Accommodation Benefit if:
1. Sun Life approves, in writing, the workplace modification; and
2. the Employer incurs expenses to make the modification to the Employer's workplace; and
3. the Employee returns to work for the Employer on a part-time or full-time basis; and
4. the Employee was insured under this Policy on the date Total or Partial Disability began.

**Survivor Benefit**

**Section IV**
**Benefit Provisions**

**Long Term Disability Income Benefits**

Sun Life will pay a benefit to the Employee's Eligible Survivor when satisfactory proof is received that the Employee died:

1.    after Total or Partial Disability had continued for 180 or more consecutive days; and
2.    while eligible to receive a Net Monthly Benefit.

The benefit will be 3 times the Employee's last Gross Monthly Benefit.

**Eligible Survivor** means the Employee's spouse, if living, otherwise the Employee's children under age 25.  If there are no Eligible Survivors, payment will be made to the Employee's estate.

**Limitations**

No LTD benefit will be payable for any Total or Partial Disability during any of the following periods:

1.    any period the Employee is not under the regular and continuing care of a Physician providing appropriate treatment and regular examination and testing in accordance with the disabling condition, unless the Employee has reached his maximum point of recovery and is still Totally or Partially Disabled.

2.    any period the Employee fails to submit to any medical examination or clinical assessment requested by Sun Life.

3.    any period of Total or Partial Disability due to Mental Illness, unless the Employee is under the continuing care of a specialist in psychiatric care.

Benefits will be payable for the first 24 months after the Employee completes his Elimination Period.

Benefits after the first 24 months will only be payable if the Employee is confined in a Hospital or Institution licensed to provide psychiatric treatment.

If the Employee continues to be Totally or Partially Disabled when discharged from a Hospital or Institution licensed to provide psychiatric treatment, Sun Life will continue an Employee's LTD benefit payment for up to 90 days.  If the Employee becomes reconfined in a Hospital or Institution during the 90 day period and remains confined for at least 14 consecutive days, Sun Life will continue LTD benefit payments during the reconfinement. Upon discharge, the Employee will be eligible for up to an additional 90 days of LTD benefit payments, if the Employee continues to be Totally or Partially Disabled.

4.    any period of Total or Partial Disability due to Drug and Alcohol Illness, unless the Employee is actively supervised by a Physician or rehabilitation counselor and is receiving continuing treatment from a rehabilitation center or a designated institution approved by Sun Life.

Benefits will be payable for the first 24 months after the Employee completes his Elimination Period if, during the Elimination Period the Employee:

a)    becomes confined in a Hospital or Institution licensed to provide Drug and Alcohol treatment; or
b)    begins participation in a drug or alcohol rehabilitation program acceptable to Sun Life.

Benefits after the first 24 months will only be payable if the Employee is confined in a Hospital or Institution licensed to provide Drug and Alcohol treatment.

5.    any period the Employee is incarcerated.

**Section IV**
**Benefit Provisions**

**Long Term Disability Income Benefits**

6.    any period of Total or Partial Disability due to Chemical and Environmental Illness, unless the Employee is under the continuing care of a Physician providing appropriate treatment and regular examination and testing in accordance with the disabling condition.

Benefits will be payable for the first 24 months after the Employee completes his Elimination Period.

Benefits after the first 24 months will only be payable if the Employee is confined in a Hospital or Institution.

7.    any period of Total or Partial Disability due to Chronic Fatigue Illness, unless the Employee is under the continuing care of a Physician providing appropriate treatment and regular examination and testing in accordance with the disabling condition.

Benefits will be payable for the first 24 months after the Employee completes his Elimination Period.

Benefits after the first 24 months will only be payable if the Employee is confined in a Hospital or Institution.

8.    any period of Total or Partial Disability due to Musculoskeletal and Connective Tissue Illness, unless the Employee is under the continuing care of a Physician providing appropriate treatment and regular examination and testing in accordance with the disabling condition.

Benefits will be payable for the first 24 months after the Employee completes his Elimination Period.

Benefits after the first 24 months will only be payable if the Employee is confined in a Hospital or Institution.

**Exclusions**

No LTD benefit will be payable for any Total or Partial Disability that is due to:

1.    intentionally self-inflicted injury.
2.    war, declared or undeclared, or any act of war.
3.    active participation in a riot, rebellion or insurrection.
4.    committing or attempting to commit an assault, felony or other criminal act.
5.    the Employee's operation of any motorized vehicle while intoxicated.

**Intoxicated** means the minimum blood alcohol level required to be considered operating an automobile under the influence of alcohol in the jurisdiction where the accident occurred. For the purposes of this Exclusion, "Motorized Vehicle" includes, but is not limited to, automobiles, motorcycles, boats and snowmobiles.

6.    a Pre-Existing Condition.

**Pre-Existing Condition** means during the 3 months prior to the Employee's Effective Date of Insurance the Employee received medical treatment, consultation, care or services, including diagnostic measures, or took prescribed drugs or medicines for the disabling condition.

**Pre-Existing Condition for increases in amounts of insurance** means during the 3 months prior to the Effective Date of any increase in an Employee's amount of insurance the Employee received medical treatment, consultation, care or services, including diagnostic measures, or took prescribed drugs or medicines for the disabling condition.

**Pre-Existing Condition Exclusion Exception**

**Section IV**
**Benefit Provisions**

**Long Term Disability Income Benefits**

The Pre-Existing Condition Exclusion will not apply if the Employee's Total or Partial Disability begins later than 12 months after the Employee's Effective Date of Insurance or later than 12 months after the Effective Date of any increase in an Employee's amount of insurance.

However, the Pre-Existing Condition Exclusion for increases does not apply to cost of living, contract or periodic salary review increases.